JS 44 (Rev 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

CIGNA HEALTH & LIFE INSURANCE COMPANY

**(b)** County of Residence of First Listed Plaintiff    Hartford County, CT
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Matthew J. Hank, PA #86086 and Wendy Buckingham, PA #320259;
Littler Mendelson, P.C., Three Parkway, 1601 Cherry Street, Suite 1400,
Philadelphia, PA 19102.1321; (267) 402-3000

## DEFENDANTS

KAREN E. KOCHER

County of Residence of First Listed Defendant    King County, WA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U S Government
Plaintiff

☐ 2  U S Government
Defendant

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(a)

Brief description of cause:
Breach of Contract

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE                                DOCKET NUMBER

DATE                              SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #           AMOUNT           APPLYING IFP           JUDGE           MAG JUDGE

| Print | Save As... | | Reset |

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 2720 3rd Avenue, PH#4, Seattle, WA 98121

Address of Defendant: Bloomfield, CT

Place of Accident, Incident or Transaction: Pennsylvania

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when **Yes** is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☐

I certify that, to my knowledge, the within case ☐ **is** / ☐ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____  _____  _____
*Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

☑ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
    *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
    *(Please specify):* Breach of Non-Solicitation & Confidentiality

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Wendy Buckingham _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 11/02/2018  *Wendy Buckingham*  320259
*Attorney-At-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 2720 3rd Avenue, PH#4, Seattle, WA 98121 _____

Address of Defendant: _____ Bloomfield, CT _____

Place of Accident, Incident or Transaction: _____ Pennsylvania _____

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes ☐     No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes ☐     No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?     Yes ☐     No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes ☐     No ☐

I certify that, to my knowledge, the within case ☐ **is** / ☐ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____     _____     _____
                           *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**     *Federal Question Cases:*

☑ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
      *(Please specify):* _____

**B.**     *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
      *(Please specify):* Breach of Non-Solicitation & Confidentiality

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Wendy Buckingham _____, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 11/02/2018     *Wendy Buckingham*     320259
                         *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |  |
|---|---|---|
| CIGNA Health & Life Insurance Company | : | CIVIL ACTION |
| v. | : | |
| Karen E. Kocher | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( xx )

| 11/2/2018 | *Wendy Buckingham* | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 267-402-3000 | | wbuckingham@littler.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CIGNA HEALTH & LIFE INSURANCE COMPANY**, | : : : | Case No. |
| Plaintiff, | : : | |
| v. | : : : | |
| **KAREN E. KOCHER**, | : : | |
| Defendant. | : : | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COMES NOW Plaintiff Cigna Health and Life Insurance Company ("Cigna") with its Complaint for Damages and Injunctive Relief against Defendant Karen E. Kocher ("Kocher" or "Defendant"), and hereby alleges and states as follows:

### I.     NATURE OF THE ACTION

1.     This is an action to redress the deliberate and unlawful conduct of Cigna's former employee, Kocher.  Kocher breached and is continuing to breach the non-solicitation and confidentiality terms of her agreements with Cigna.  Cigna seeks damages caused by Defendant's unlawful conduct, as well as injunctive relief that prohibit Defendant's unlawful conduct from continuing.

### II.     PARTIES AND JURISDICTION

2.     The Court has jurisdiction over the claims under 28 U.S.C. § 1332(a).  Under Section 1332(a), federal courts have original jurisdiction over actions in which the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

3.     Plaintiff Cigna is a Delaware corporation with its principal place of business in Bloomfield, Connecticut.  Cigna is licensed to do business in the State of Pennsylvania.

Accordingly, Cigna is a citizen of Delaware and Connecticut for diversity purposes.

4.    Kocher is a citizen of the State of Washington and resides in Seattle, King County, Washington. Kocher is a former Chief Learning Officer of Cigna.

5.    Cigna seeks damages arising out of Kocher's breach of her equity grant agreements in an amount that exceeds $75,000.

6.    Venue is proper in this jurisdiction because each equity grant agreement Kocher breached has a forum selection clause that mandates this dispute be resolved exclusively in a federal or state court in the Commonwealth of Pennsylvania and has a choice of law provision calling for the application of Pennsylvania law.

7.    The Court has personal jurisdiction over Cigna and Kocher because both parties consented to the exercise of personal jurisdiction over them by a Pennsylvania Court in relation to this dispute.

### III.    GENERAL BACKGROUND

8.    Cigna is a global health service company and sells various insurances products, including dental, health, and life insurance to customers throughout the world.

9.    On or about September 9, 2002, Kocher began her employment with Cigna as the Director of Learning.

10.    In 2007, Kocher was promoted to the position of Chief Learning Officer.

11.    In this position, Kocher was responsible for system-wide development and on-going management of Cigna's Talent Management and Learning strategies, initiative, policies and practices, and programs. As the Chief Learning Officer, Kocher was required to partner with Cigna's senior leadership team to ensure alignment with the changing competitive landscape and strategic direction, focusing on inspiring and developing the capability of Cigna's entire workforce.

12.    Because of the key role that the Chief Learning Officer plays in Cigna's system-wide development, Kocher had access to Cigna's confidential and proprietary information, including but not limited to, information related to the operation of Cigna University, Cigna's

learning organization models, Cigna's performance management processes, supplier specific information, and Company strategic plans regarding Cigna University that are not generally known outside of Cigna.

13.     Cigna intended to keep this information confidential and has made reasonable efforts under the circumstances to maintain the secrecy of this information.

14.     Cigna has a legitimate and protectable interest in maintaining the confidentiality of its information and its employee relationships.

## KOCHER'S EQUITY GRANT AGREEMENTS

15.     Beginning in 2013, as part of Cigna's Long-Term Incentive Plan, Cigna granted Kocher certain equity awards and, as a material inducement for Cigna's granting Kocher equity and a pre-condition of her eligibility to exercise any rights associates with the equity awards, each equity grant was subject to substantially identical terms and conditions in which Kocher promised to refrain from engaging in certain conduct.

16.     More specifically, on or about March 5, 2013, in conjunction with and as consideration for Cigna's grant of a number of shares of restricted stock of Cigna to Kocher, Kocher entered into a Restricted Stock Grant Agreement.

17.     A true and correct copy of the March 5, 2013 Restrict Stock Grant Agreement accompanies this Complaint as "Exhibit A."

18.     On or about February 26, 2014, in conjunction with and as consideration for Cigna's grant of a number of shares of restricted stock of Cigna to Kocher, Kocher entered into a Restricted Stock Grant Agreement.

19.     A true and correct copy of the February 26, 2014 Restricted Stock Grant Agreement accompanies this Complaint as "Exhibit B."

20.     On or about March 22, 2015, in conjunction with and as consideration for Cigna's grant of a number of shares of restricted stock of Cigna to Kocher, Kocher entered into a Restricted Stock Grant Agreement.

21.     A true and correct copy of the March 22, 2015 Restricted Stock Grant Agreement

accompanies this Complaint as "Exhibit C."

22.     On or about March 22, 2015, in conjunction with and as consideration for Cigna's grant of the option to purchase a number of Cigna Common Stock to Kocher, Kocher entered into a Nonqualified Stock Option Grant Agreement.

23.     A true and correct copy of the March 22, 2015 Nonqualified Stock Option Grant Agreement accompanies the Complaint as "Exhibit D."

24.     On or about March 22, 2015, in conjunction with and as consideration for Cigna's grant of a number of strategic performance shares to Kocher, Kocher entered into a Strategic Performance Share Grant Agreement.

25.     A true and correct copy of the March 22, 2015 Strategic Performance Share Grant Agreement accompanies the Complaint as "Exhibit E."

26.     On or about April 4, 2016, in conjunction with and as consideration for Cigna's grant of a number of shares of restricted stock of Cigna to Kocher, Kocher entered into a Restricted Stock Grant Agreement.

27.     A true and correct copy of the April 4, 2016 Restrict Stock Grant Agreement accompanies this Complaint as "Exhibit F."

28.     On or about March 19, 2016, in conjunction with and as consideration for Cigna's grant of the option to purchase a number of Cigna Common Stock to Kocher, Kocher entered into a Nonqualified Stock Option Grant Agreement.

29.     A true and correct copy of the March 19, 2016 Nonqualified Stock Option Grant Agreement accompanies the Complaint as "Exhibit G."

30.     On or about March 19, 2016, in conjunction with and as consideration for Cigna's grant of a number of strategic performance shares to Kocher, Kocher entered into a Strategic Performance Share Grant Agreement.

31.     A true and correct copy of the March 19, 2016 Strategic Performance Share Grant Agreement accompanies the Complaint as "Exhibit H."

32.     On or about March 21, 2017, in conjunction with and as consideration for Cigna's

grant of a number of shares of restricted stock of Cigna to Kocher, Kocher entered into a Restricted Stock Grant Agreement.

33.     A true and correct copy of the March 21, 2017 Restrict Stock Grant Agreement accompanies this Complaint as "Exhibit I."

34.     On or about March 21, 2017, in conjunction with and as consideration for Cigna's grant of the option to purchase a number of Cigna Common Stock to Kocher, Kocher entered into a Nonqualified Stock Option Grant Agreement.

35.     A true and correct copy of the March 21, 2017 Nonqualified Stock Option Grant Agreement accompanies the Complaint as "Exhibit J."

36.     On or about March 21, 2017, in conjunction with and as consideration for Cigna's grant of a number of strategic performance shares to Kocher, Kocher entered into a Strategic Performance Share Grant Agreement.

37.     A true and correct copy of the March 21, 2017 Strategic Performance Share Grant Agreement accompanies the Complaint as "Exhibit K."

38.     The eleven agreements attached to this Complaint as Exhibit A-K shall be collectively referred to herein, collectively, as the "Equity Grant Agreements", and individually, as "Equity Grant Agreement."

39.     In each Equity Grant Agreement, Kocher agreed that during, her employment with Cigna and for a period of twelve (12) months following the termination of her employment with Cigna, she would not solicit any Cigna employee to terminate his or her employment or hire any Cigna employee.

40.     More specifically, each Equity Grant Agreement contains the following non-solicitation agreement, or one in substantially the same form:

**Promise Not To Solicit or Hire Cigna Company Employees**:

(A) You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

> (i)    Solicit any employee of any Cigna company to terminate his/her employment with, or otherwise cease his/her relationship, contractual or otherwise, with that Cigna company; or
>
> (ii)   Hire any Cigna company employee.
>
> (B)    This paragraph 8(c)(3) will not apply to applications for employment submitted voluntarily by any Cigna employee, in response to a general advertisement or otherwise, so long as neither you, nor anyone acting on your behalf or in response to information provided by you, otherwise Solicits the employees to leave Cigna.
>
> (C)    To "Solicit" means to entice, encourage, persuade, or solicit, or to attempt entice, encourage, persuade or solicit.

41.    In each Equity Grant Agreement, Kocher also agreed to maintain the confidentiality of, and that she would not disclose or use without permission, all non-public information that she obtained in the course of her employment.

42.    More specifically, each Equity Grant Agreement contains the following non-disclosure agreement, or one in substantially the same form:

> **Promise Not To Disclose Cigna Companies' Confidential Information**:
>
> (A)     You Promise not to disclose any Confidential Information to any third party at any time, whether during or after your employment, without the prior written consent of Cigna (except to the extent required by an order of a court having competent jurisdiction or a properly issued subpoena) unless that Confidential Information was previously disclosed publicly by Cigna or has become public knowledge (other than by your disclosure). Nothing in this Confidentiality provision prohibits you or your counsel from initiating communications directly with, or responding to any inquiry from, or providing testimony before any self-regulatory organization or any state or federal regulatory authority. In the event that you are required to disclose Confidential Information pursuant to a subpoena or other law or regulation, you shall notify Cigna promptly upon learning that you have been subpoenaed or are otherwise required or compelled to divulge Confidential Information.
>
> (B)    "Confidential Information" means any Cigna company trade secrets, confidential information, or proprietary materials, including but not limited to customer lists, financial records, marketing plans and sales plans.

43.    In each Equity Grant Agreement, Kocher expressly agreed that if she engaged in any conduct in violation of the restrictive covenants set forth therein, Kocher would be required

to immediately make a payment to Cigna in the amount calculated pursuant to the formula described in the "***Consequences of a Violation: Payment to Cigna***" provision of each Equity Grant Agreement.

44.     In each Equity Grant Agreement, Kocher also expressly agreed that for any violation of the restrictive covenants set forth therein, damages would include monetary damages, injunctive relief, and other relief.

45.     In each Equity Grant Agreement entered into by Kocher in 2013, 2014, 2015, and 2016, Kocher also expressly agreed to the following choice-of-law and forum selection clause, or one in substantially the same form:

> ***Applicable Law***
>
> You understand and agree that:
>
> (a) The terms and conditions of this Strategic Performance Share grant (including any Violation and the consequences of any Violation) and all determinations made under the Strategic Performance Share Grant Agreement, the Plan, and these Terms and Conditions will be interpreted under the laws of the Commonwealth of Pennsylvania, without regard to its conflict of laws rule;
>
> (b) Any dispute about any of the Promises (described in paragraph 8(c)), if not resolved by agreement between you and Cigna, will be resolved exclusively in a federal or state court in the Commonwealth of Pennsylvania where venue is appropriate and that has subject matter jurisdiction over the dispute (collectively, "Pennsylvania Courts");
>
> (c) Pennsylvania is a convenient forum for resolving any dispute about the Promises; and
>
> (d) You and Cigna consent to the exercise of personal jurisdiction over the parties by a Pennsylvania Court in any dispute related to the Promises.

## KOCHER'S SEPARATION AGREEMENT

46.     On or about June 2, 2017, Kocher's position at Cigna was eliminated and her employment ended.

47.     In connection with her separation from employment, Kocher entered into an Agreement and Release on or about May 5, 2017 (the "Separation Agreement").

48.    In consideration for the payment of severance benefits, Kocher agreed (i) to maintain the confidentiality of, and that she would not disclose or use without permission, all non-public information that she obtained in the course of her employment; (ii) to return all material and information containing Confidential Information to Cigna; and, (iii) for a period of twelve (12) months following the termination of her employment with Cigna, to refrain from soliciting any Cigna employee to terminate his or her employment or hire any Cigna employee.

**KOCHER'S CONDUCT AFTER HER SEPARATION FROM CIGNA**

49.    After Kocher's employment with Cigna ended, she accepted a position with Microsoft, Inc. as General Manager, 21st Century Jobs, Skills and Employability.

50.    After starting employment with Microsoft, Kocher intentionally engaged in a conduct that violates her contractual obligations in her Equity Grant Agreements and her Separation Agreement.

51.    Upon information and belief, once employed by Microsoft, Kocher directly or indirectly solicited at least two employees of Cigna, Shweta Srivastava, Cigna's former Global Head – Career Development and Competency Framework, and David Hooton, Cigna's former Enterprise Lead: Foresight to Insight and Innovation Capability Development, to terminate their employment with Cigna and join Microsoft.

52.    Upon information and belief, in or around the fall of 2017, Kocher approached Ms. Srivastava at a conference to discuss a job opportunity at Microsoft.

53.    In or around September 2017, Kocher provided Ms. Srivastava feedback regarding revisions to Ms. Srivastava's resume and Ms. Srivastava thanked Kocher for recommending her to a position.

54.    On or about February 7, 2018, Ms. Srivastava submitted her resignation, effective February 26, 2018, and informed Cigna that she accepted a position with another company.

55.    Upon information and belief, Ms. Srivastava accepted the Director of Employability Development Partnerships at Microsoft.

56.    Upon information and belief, on or around February 2018, Kocher approached

Mr. Hooton to review a job description she was writing for a new role at Microsoft. In reviewing the position, he expressed interest and she told him to look of the job posting.

57. On or about March 15, 2018, Mr. Hooton submitted his resignation and informed Cigna that he accepted a position with another company.

58. Upon information and belief, Mr. Hooton accepted the Director of Foresight, Insights, Competitive and Collaborative Landscape position at Microsoft, the same position that Kocher asked Mr. Hooton to review and apply for.

59. In addition, upon information and belief, on the last day of her employment with Cigna as well in the months following, Kocher requested, at times through David Hooton, that a Cigna vendor, GP Strategies Corporation, forward certain documents and presentation containing confidential, proprietary, and copyrightable information belonging to Cigna to her personal e-mail account.

60. The presentations forwarded to Kocher's personal email account by individuals at GP Strategies Corporation were not previously disclosed publicly and were labeled as follows: "Confidential, unpublished property of Cigna. Do not duplicate or distribute. Use and distribution are limited solely to authorized personnel."

61. Upon information and belief, Kocher knew that GP Strategies was only authorized to disclose confidential and proprietary information belonging to Cigna in the performance of services for Cigna and was not authorized to provide Kocher access to these documents and presentations after her employment with Cigna terminated.

62. Upon information and belief, Kocher has used or will use the confidential, proprietary information belonging to Cigna contained in the documents and presentations forwarded to Kocher's personal email account for her personal benefit or for the benefit of a third party.

63. On or about April 4, 2018, Cigna sent a letter to Kocher demanding that Kocher (i) immediately cease and desist from violating the terms of the Equity Grant Agreements and the Separation Agreement and, (ii) pursuant to the "Consequences of a Violation: Payment to

Cigna" in each Equity Grant Agreement, make the requisite payment to Cigna for her violations. Kocher has failed to do either.

64.     At the time of the filing of this Complaint, as a result of Kocher's violation of the terms of each Equity Grant Agreement, Kocher is required to pay Cigna an amount of at least $306,000.00 pursuant to its terms.

## COUNT I – BREACH OF CONTRACT - CONFIDENTIALITY
### (*2013, 2014, 2015, and 2016 Equity Grant Agreements*)

65.     Cigna incorporates and re-alleges preceding paragraphs of this Complaint as if those allegations were fully set forth in this paragraph.

66.      All conditions precedent necessary for the enforcement of the 2013, 2014, 2015, and 2016 Equity Grant Agreements have been satisfied.

67.     The 2013, 2014, 2015, and 2016 Equity Grant Agreements were and are reasonably necessary to protect Cigna's legitimate business interests, including its confidential information and its employee relationships.

68.     Kocher entered into valid and enforceable restrictive covenants with Cigna by entering into the 2013, 2014, 2015, and 2016 Equity Grant Agreements.

69.     Kocher received consideration for signing and entering into the 2013, 2014, 2015, and 2016 Equity Grant Agreements.

70.     Kocher breached her obligations under the 2013, 2014, 2015, and 2016 Equity Grant Agreements by using now and/or in the future, Cigna's confidential information for her benefit and/or the benefit of a third party.

71.     Kocher's wrongful actions have proximately damaged Cigna's legitimate business interests, goodwill, and reputation, and have denied Cigna the benefit of its bargain with respect to the 2013, 2014, 2015, and 2016 Equity Grant Agreements.

72.     Cigna has been injured irreparably and otherwise, as a direct and proximate result of the breach of contract by Kocher, and has suffered damages in an amount to be proved at trial.

## COUNT II – BREACH OF CONTRACT – NON-SOLICITATION
### (2013, 2014, 2015, and 2016 Equity Grant Agreements)

73.     Cigna incorporates and re-alleges paragraphs 1-64 of this Complaint as if those allegations were fully set forth in this paragraph.

74.     All conditions precedent necessary for the enforcement of the 2013, 2014, 2015, and 2016 Equity Grant Agreements have been satisfied.

75.     The 2013, 2014, 2015, and 2016 Equity Grant Agreements were and are reasonably necessary to protect Cigna's legitimate business interests, including its confidential information and its employee relationships.

76.     Kocher entered into valid and enforceable restrictive covenants with Cigna by entering into the 2013, 2014, 2015, and 2016 Equity Grant Agreements.

77.     Kocher received consideration for signing and entering into the 2013, 2014, 2015, and 2016 Equity Grant Agreements.

78.     Kocher breached her obligations under the 2013, 2014, 2015, and 2016 Equity Grant Agreements by directly or indirectly wrongfully soliciting at least two Cigna employees for the purpose of inducing those employees to terminate their employment with Cigna and hiring them to work with Kocher at Microsoft.

79.     Kocher's wrongful actions have proximately damaged Cigna's legitimate business interests, goodwill, and reputation, and have denied Cigna the benefit of its bargain with respect to the 2013, 2014, 2015, and 2016 Equity Grant Agreements.

80.     Cigna has been injured irreparably and otherwise, as a direct and proximate result of the breach of contract by Kocher, and has suffered damages in an amount to be proved at trial.

## IV.     PRAYER FOR RELIEF

WHEREFORE, Cigna requests relief as follows:

a.      For injunctive relief prohibiting Kocher from breaching the obligations in the 2013, 2014, 2015, and 2016 Equity Grant Agreements;

b.      For actual damages based on Counts I through IV to be proved at trial, including

specific damages provided for in the 2013, 2014, 2015, and 2016 Equity Grant Agreements;

      c.      For an award of reasonable attorney's fees and costs as recoverable by applicable law; and

      d.      For such other and further relief as this Court deems just and proper.

Dated: November 2, 2018

Matthew J. Hank, (PA #86086)
Wendy Buckingham (PA #320259)
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321

*Attorneys for Plaintiff*
*Cigna Health & Life Insurance Company*

## CERTIFICATE OF SERVICE

I, Wendy Buckingham, hereby certify that I caused the foregoing Summons, Complaint

and accompanying documents to be served via courier hand delivery.

Karen E. Kocher
2720 3rd Avenue, PH #4
Seattle, WA 98121

Dated: November 2, 2018

*Wendy Buckingham*
Wendy Buckingham

# EXHIBIT A

Cigna Corporation

Cigna Long-Term Incentive Plan:  Restricted Stock Grant Agreement

Cigna Corporation ("Cigna") has granted you the number of shares of restricted stock of Cigna set forth below in this Restricted Stock Grant Agreement ("Restricted Stock Grant" or "Grant") under the Cigna Long-Term Incentive Plan ("Plan").  The award is subject to the provisions of the Plan and the Terms and Conditions below.

You should carefully read all the terms and conditions of this Restricted Stock Grant and be sure you understand what they say and what your responsibilities and obligations are before you click on the ACCEPT button to acknowledge and agree to this Grant.

If you are not willing to agree to all of the Grant terms and conditions, do not accept the Grant and do not click the ACCEPT button for the Restricted Stock Grant Acknowledgment and Agreement.  If you do not accept the Grant, you will not receive the benefits of the Grant.

If you do click on the ACCEPT button, you are accepting and agreeing to all of the terms and conditions of this Restricted Stock Grant.

Participant: Karen Kocher
Global ID: Global ID: 000282701
Award Type: Restricted Stock Award
Plan Name: Cigna Long-Term Incentive Plan 51 (RSG)

Award Date: 05-Mar-2013
Award Expiration Date: N/A

Total Granted: 390.0000
Award Price: USD $0.0000

Vesting Schedule

| Shares/Options Awarded | Vest Date |
| --- | --- |
| 195.0000 | 05-Mar-2016 |
| 97.0000 | 05-Mar-2017 |
| 98.0000 | 05-Mar-2018 |

You should also read the Key Contacts and Reference Materials document attached to your grant by clicking the REVIEW button.  The Key Contacts and Reference Materials document contains

information on how to get important stock award information (such as the Plan document, Plan Prospectus, Tax Considerations and Cigna's Securities Transactions and Insider Trading Policy) and whom to contact if you have questions.

Please be aware that the Cigna Securities Transactions and Insider Trading Policy places restrictions on your transactions in Cigna securities and requires certain Cigna employees to obtain advance permission from the Corporate Secretary before executing transactions in Cigna securities.

If you have questions about your award, please contact the Cigna Shareholder Services by email at shareholderservices@cigna.com or by phone at 215.761.3516.

Important Notice:  Restricted Stock Grant Acknowledgment and Agreement

By clicking on the ACCEPT button, I:
1. Acknowledge and represent to Cigna that I have:
a. received the Restricted Stock Grant;
b. read and understand its terms and conditions, which include, among other things, restrictive covenants such as non-competition, customer and employee non-solicitation and non-disclosure provisions and a litigation cooperation provision; and
c. received answers to any questions I had about the Grant and its terms and conditions, including the restrictive covenants.

2. Understand and agree that:
a. Pennsylvania law governs the interpretation and construction of the Grant; and
b. any controversy or proceeding arising out of or relating to the restrictive covenants in the Grant will be brought exclusively before a federal or state court in the Commonwealth of Pennsylvania where venue is appropriate and that has subject matter jurisdiction (collectively, "Pennsylvania Courts").

3. Consent to Pennsylvania Courts exercising personal jurisdiction over me in any dispute about the restrictive covenants.

Scroll down for the TERMS AND CONDITIONS of the Restricted Stock Grant.

# TERMS AND CONDITIONS OF MARCH 2013 GRANTS
## OF RESTRICTED STOCK

These Terms and Conditions are an important part of your March 5, 2013 grant of Restricted Stock from Cigna Corporation (Cigna). The terms of your Restricted Stock grant are in: (a) the electronic Restricted Stock Grant Agreement, (b) these Terms and Conditions, and (c) the applicable Plan provisions.

Certain words in this document with first letters capitalized are defined in the Restricted Stock Grant Agreement, these Terms and Conditions or Article 2 of the Plan. This grant is void if you are not an employee of Cigna or a Subsidiary (a Cigna company) on March 5, 2013.

## 1.    *Restricted Stock; Restrictions*

Shares of Restricted Stock (Shares) are regular shares of Cigna Common Stock, but they are subject to certain Restrictions. The Restrictions are:

(a)    You cannot sell or transfer the Shares to anyone during the Restricted Period; and

(b)    Unless an exception applies, you will forfeit (lose your right to) the Shares if you have a Termination of Employment during the Restricted Period.

Article 7 of the Plan describes these Restrictions in more detail. In addition, you must also comply with all the other terms and conditions of this grant, including those contained in this document.

## 2.    *Restricted Period; Vesting*

The Restricted Period starts on March 5, 2013 and ends on the Vesting Date. The Restrictions on the Shares will end (your Shares will vest) on the Vesting Date only if you remain continuously employed by a Cigna company from the grant date to the Vesting Date and comply with all the terms and conditions of this grant, including those contained in this document.

You have three separate Vesting Dates under this grant because the Shares will vest in three stages: 50% on March 5, 2016; an additional 25% on March 5, 2017; and the remaining 25% on March 5, 2018. Your Vesting Date may be earlier (see paragraph 3).

## 3.    *Early Vesting*

In certain situations your Vesting Date may be earlier than the Vesting Dates listed under paragraph 2:

(a)    The Shares will vest upon your Termination of Employment if it is Upon a Change of Control (of Cigna Corporation) or due to your death or Disability.

(b)    The Shares *may* vest upon your Termination of Employment if:

   (1)    It is due to your Early Retirement or Retirement; and

   (2)    The People Resources Committee or its designee (including Cigna's senior human resources officer) approves the early vesting before your Termination of Employment.

   If you want to be considered for early vesting when you retire, you must ask your manager or human resources representative far enough in advance of your retirement so there is time to process your request.

**4.** *Voting Rights; Dividends*

(a)     You have the right to vote the Shares. If you forfeit a Share, you will also forfeit the right to vote the Share.

(b)     You have the right to receive dividends on the Shares. Dividends paid on the Shares during the Restricted Period will be held by Cigna. Subject to the forfeiture provisions of paragraph 4(c), your right to receive accumulated dividends on a Share will vest on the scheduled Vesting Date for the Share described in paragraph 2 (Scheduled Vesting Date). Once a Share vests, your right to future dividends on the Share, and the method of payment, will be the same as for any other Cigna shareholder.

(c)     If you forfeit a Share, you will also forfeit the right to any accumulated and future dividends related to the Share. Even if you do not forfeit a Share, you will forfeit the right to any accumulated dividends on the Share if:

    (1)     You have a Termination of Employment before the Scheduled Vesting Date for a Share (even if the Share vests under paragraph 3);

    (2)     The Scheduled Vesting Date for a Share occurs before the Share vests (because vesting is delayed); or

    (3)     You are on a leave of absence when the Share vests.

(d)     Vested accumulated dividends, less applicable taxes withheld, will be paid to you in a lump sum within 70 days after the Scheduled Vesting Date. Cigna will not pay any interest on the accumulated dividends.

**5.** *Taxes at Vesting*

When the Shares vest, you must satisfy any required tax withholding obligation. Cigna reserves the right to withhold enough newly-vested Shares to cover all or part of any applicable tax withholding. However, if section 83(b) of the U.S. Internal Revenue Code of 1986, as amended, applies to you and you make a timely election under that provision, you must make an immediate cash payment to satisfy any required tax withholding obligation.

**6.** *Book-Entry Shares; Sale of Shares*

(a)     Cigna (or a custodian appointed by Cigna) will hold your Shares before and after vesting in book-entry form in your Stock Account. That is, a record of your Share ownership will be kept electronically, and you will not risk losing any Share certificates. A certificate for vested Shares will be issued to you only if you ask for one, but not if you have engaged in a Violation (described in paragraph 7(b)).

(b)     You may generally sell or transfer vested Shares at any time, but your right to sell the Shares after they vest may be limited by Cigna. This right is subject to the terms of Cigna's Securities Transactions and Insider Trading Policy, and Cigna reserves the right, for any reason at any time, to suspend or delay action on any request you make to sell the Shares.

**7.** *Conditions of Grant*

(a) By accepting the grant, you are agreeing not to engage in any Violation described in paragraph 7(b). You understand and agree that your agreement not to engage in any Violation is a material part of the inducement for Cigna's granting you the Shares and an essential pre-condition to your eligibility to exercise any rights associated with the Shares and retain any benefit from the vesting of the Shares.

(b) You will engage in a "Violation" if, directly or indirectly, you engage in any misconduct described in subparagraph (1) below or you break any of the "Promises" in paragraphs 7(b)(2) through (6) below:

    (1) **Misconduct**:

        (A) You have a Termination of Employment initiated by a Cigna company because of your misconduct, as that term is defined in Cigna's Code of Ethics, Standards of Conduct or other employment policies.

        (B) You do anything else while an employee of any Cigna company that is not discovered by the company until after your Termination of Employment and that would, if you had still been employed at the time of the discovery, be reason for your Termination of Employment for misconduct, as described above.

    (2) **Promise Not To Compete against Cigna Companies**:

        The Promise in this paragraph 7(b)(2) will remain in effect after your Termination of Employment only if you resign for any reason or a Cigna company terminates your employment for your misconduct, as described in paragraph 7(b)(1)(A). The Promise will <u>not</u> remain in effect, for example, if your Termination of Employment is due to the elimination of your job.

        (A) If you are in **Career Band 6 or higher** on your Termination of Employment date:

            You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 7(b)(2)(C) below) at any time during the period that starts on the grant date and ends 12 months after your Termination of Employment.

            You acknowledge and agree that:

            (i) Cigna's business competes on a global basis;

            (ii) Cigna's sales and marketing plans are for continued expansion throughout the United States of America and globally;

            (iii) You have had access to and received Confidential Information (described in paragraph 7(b)(5)(B) below); and

            (iv) The time restrictions and global nature of this non-competition restriction are reasonable and necessary to protect Cigna's business and Confidential Information.

        (B) If you are in **Career Band 5 or below** on your Termination of Employment date:

            You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to

any Cigna Competitor (defined in paragraph 7(b)(2)(C) below) at any time during the period that starts on the grant date and ends 12 months after your Termination of Employment, if that work is similar to, and within the same geographic area as, the work you performed, or for which you had responsibility, at any Cigna company at any time during the six-month period that ends on your Termination of Employment date.

For example:

(i)   If you are a sales employee and your sales territory at any time during your last six months of Cigna company employment is Pennsylvania, New Jersey, and New York, this paragraph 7(b)(2)(B) would apply to you only if you work in a sales position for a Cigna Competitor and only to the extent your new sales territory is Pennsylvania, New Jersey, and/or New York;

(ii)  If you are an underwriter with nationwide responsibilities at any time during your last six months of Cigna company employment, and you seek a job with a Cigna Competitor as an underwriter, the restrictions in paragraph 7(b)(2)(B) would be nationwide in scope; or

(iii) If you work in a particular division or segment of Cigna, you would not be permitted to work in a similar division or segment for a Cigna Competitor where the work you are expected to perform for the competitor is similar to the work you performed for any Cigna company.

You acknowledge and agree that you have had access to and received Confidential Information (described in paragraph 7(b)(5)(B) below) and the above time and geographic restrictions are reasonable and necessary to protect Cigna's business and Confidential Information.

(C)   "Cigna Competitor" means any business that competes directly or indirectly with any Cigna company's product or service.

(3)   **Promise Not To Solicit or Hire Cigna Company Employees**:

(A)   You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i)   Solicit any employee of any Cigna company to terminate his/her employment with, or otherwise cease his/her relationship, contractual or otherwise, with that Cigna company; or

(ii)  Hire any Cigna company employee.

(B)   This paragraph 7(b)(3) will not apply to applications for employment submitted voluntarily by any Cigna employee, in response to a general advertisement or otherwise, so long as neither you, nor anyone acting on your behalf or in response to information provided by you, otherwise Solicits the employees to leave Cigna.

(C)   To "Solicit" means to entice, encourage, persuade, or solicit, or to attempt to entice, encourage, persuade or solicit.

4

(4)     **Promise Not To Solicit Cigna Company Customers**:

(A)     You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i)     Solicit any Cigna company customer to end an existing relationship, contractual or otherwise, with that Cigna company;

(ii)     Solicit any Cigna company customer to reduce the volume of their business dealings with Cigna; or

(iii)     Solicit any potential Cigna company customer to enter into any business arrangements with you or any business which you may become employed by, or affiliated in any way with, after leaving any Cigna company, if such business arrangements would compete in any way with any business that Cigna company has conducted, or has been planning to conduct, during the 12-month period ending on the date of the Violation.

(B)     The Promise in paragraph 7(b)(4)(A) above applies only to a customer or potential customer with whom you had any Material Contact while employed by any Cigna company.  "Material Contact" means you:

(i)     Had business dealings with the customer on behalf of any Cigna company within the three-year period ending on the date of the Solicitation;

(ii)     Were responsible for supervising or coordinating the dealings between any Cigna company and the customer or potential customer anytime during the three-year period ending on the date of the Solicitation; or

(iii)     Obtained**,** at any time**,** trade secrets or confidential information about a customer or potential customer with whom you had contact as a result of your employment by any Cigna company.

(C)     "Solicit" is defined in paragraph 7(b)(3)(C).

(5)     **Promise Not To Disclose Cigna Companies' Confidential Information**:

(A)     You Promise not to disclose any Confidential Information to any third-party at any time, whether during or after your employment, without the prior written consent of Cigna (except to the extent required by an order of a court having competent jurisdiction or a properly issued subpoena) unless that Confidential Information was previously disclosed publicly by Cigna or has become public knowledge (other than by your disclosure).

(B)     "Confidential Information" means any Cigna company trade secrets, confidential information, or proprietary materials, including but not limited to customer lists, financial records, marketing plans and sales plans.

(6)  **Promise to Cooperate With Cigna in Investigations or Litigation**:

(A)  You Promise that, at any time after your Termination of Employment, you will cooperate with Cigna in (i) all investigations of any kind, (ii) helping to prepare and review documents and meeting with Cigna attorneys, and (iii) providing truthful testimony as a witness or a declarant during discovery and/or trial in connection with any present or future court, administrative, agency, or arbitration proceeding involving any Cigna company and with respect to which you have relevant information.

(B)  Cigna agrees that it will reimburse you, upon production of appropriate receipts and in accordance with Cigna's then existing Business Travel Reimbursement Policy, the reasonable business expenses (including air transportation, hotel, and similar expenses) incurred by you in connection with such assistance. You must present to Cigna for reimbursement all receipts for those expenses within 45 days after you incur the expenses.

(c)  (1)  If you were an Executive Officer at any time during the 24-month period before the date of the Violation, the People Resources Committee will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment (described in paragraph 8) and to impose conditions on any waiver.

(2)  Otherwise, Cigna's Senior Human Resources Officer, or his or her designee, will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment and to impose conditions on any waiver.

(3)  Determinations of the People Resources Committee, Cigna's Senior Human Resources Officer, or his or her designee, will be final and binding on all parties.

## 8.  *Consequences of a Violation: Payment to Cigna*

**Important: This paragraph 8 is not Cigna's only remedy for a Violation. Cigna may seek any additional legal or equitable remedy, including an injunction described in paragraph 9, for a Violation.**

(a)  You will immediately forfeit all unvested Shares if you engage in any Violation at any time.

(b)  You must immediately make the Payment described in paragraph 8(c) to Cigna in the manner described in paragraph 8(d) if:

(1)  You engage in a Violation described in paragraph 7(b)(2) (compete against Cigna), 7(b)(3) (Solicit or hire Cigna employees) or 7(b)(4) (Solicit Cigna customers), either while you are a Cigna company employee or within 12 months after your Termination of Employment; or

(2)  You engage in a Violation described in paragraph 7(b)(1) (misconduct), 7(b)(5) (disclose Confidential Information) or 7(b)(6) (fail to cooperate) **at any time**.

(c)     "Payment" is the value you realize from any Shares that vest during the 12-month period ending on the date of the Violation.  The Payment will equal:

(1)     The number of Shares that vest during that 12-month period;

multiplied by

(2)     The Fair Market Value of those Shares on their Vesting Date;

plus

(3)     The total amount of all dividends, if any, paid to you on those Shares through the date of the Payment.

(d)     Cigna will recover the Payment from you by any means permitted by applicable law, at the sole discretion of Cigna management, including but not limited to any or all of the following methods:

(1)     If you have any Shares in your Stock Account or in any other account in book-entry form when a Violation occurs, Cigna will take back from you the whole number of Shares that has a total Fair Market Value as of the date of the Violation up to, but not more than, the Payment amount.

(2)     Cigna will, to the extent permitted by applicable law, reduce:

(A)     The amount of any payments that any Cigna company owes you for any reason (including without limit any payments owed to you under any nonqualified retirement, deferred compensation or other plan or arrangement) by

(B)     The Payment amount.

This reduction will not occur until the date a future payment to you is due.

(3)     Cigna will send you a written notice and demand for all or part of any Payment amount.  Within 30 days after you receive that notice and demand, you must make the Payment to Cigna.

## 9.     *Consequences of a Violation: Injunction*

You agree that:

(a)     Cigna will be entitled to ask a court of competent jurisdiction to issue an order (an injunction) that requires you to take action and/or that prohibits you from taking action, as needed to ensure that you keep all of the Promises described in paragraph 7(b)(2) through (6), and Cigna will not be required to post a bond in order to seek or obtain the injunction;

(b)     Any breach or threatened breach of any of the Promises would cause irreparable injury to Cigna, and monetary damages alone would not provide an adequate remedy; and

(c)     The remedies described in paragraph 9(a) are in addition to any other rights and remedies Cigna may have at law or in equity.

**10.**    *Agreeing to Assume Risks*

Cigna and its transfer agent will try to process your stock transaction requests in a timely manner; however, Cigna makes no promises or guarantees to you relating to the market price of the Shares or to the time it may take to act on your request to sell the Shares or deliver stock certificates.  By accepting this Restricted Stock grant:

(a)    You acknowledge that the action you request may not be completed until several days (or in the case of delivery of stock certificates, several weeks) after you submit it.

(b)    You agree to assume the risks, including the risk that the market price of the Shares may change, related to delays described in paragraph 10(a):

   (1)    Between the time you ask for any Shares to be sold and the time your Shares are actually sold; and

   (2)    Between the time you ask for stock certificates to be delivered to you or your broker and the time the certificates are delivered.

**11.**    *Applicable Law*

You understand and agree that:

(a)    The terms and conditions of this Restricted Stock grant (including any Violation and the consequences of any Violation) and all determinations made under the Restricted Stock Grant Agreement, the Plan, and these Terms and Conditions will be interpreted under the laws of the Commonwealth of Pennsylvania, without regard to its conflict of laws rule;

(b)    Any dispute about any of the Promises (described in paragraph 7(b)), if not resolved by agreement between you and Cigna, will be resolved exclusively in a federal or state court in the Commonwealth of Pennsylvania where venue is appropriate and that has subject matter jurisdiction over the dispute (collectively, "Pennsylvania Courts");

(c)    Pennsylvania is a convenient forum for resolving any dispute about the Promises; and

(d)    You and Cigna consent to the exercise of personal jurisdiction over the parties by a Pennsylvania Court in any dispute related to the Promises.

**12.**    *Arbitration*

You agree and understand that:

(a)    Any dispute over any of the terms and conditions that apply to this Restricted Stock grant will be resolved exclusively under the Cigna Employment Dispute Arbitration Policy and its Rules and Procedures as may be in effect when the dispute arises;

(b)    You are waiving your right to have those disputes decided by a judge or jury in a court of law, and instead you are agreeing to submit those disputes exclusively to mandatory and binding final arbitration;

(c)    While you or Cigna may seek emergency, temporary or permanent injunctive relief from a court in accordance with applicable law, after the court has issued a decision about that relief, you and Cigna will submit the dispute to final and binding arbitration under the Cigna Employment Dispute Arbitration Policy; and

(d)    This arbitration provision will not apply to any dispute related to the Promises.

13. *Miscellaneous*

(a)     If a court of competent jurisdiction determines that any provision of these Terms and Conditions is unenforceable as written, that provision will be enforceable to the maximum extent permitted by law and will be reformed by the court to make the provision enforceable in accordance with Cigna's intent and applicable law.

(b)     Cigna's failure to enforce any provision of this Restricted Stock grant will not be interpreted as a waiver of its right to enforce that provision in the future.

14.     *Acceptance*

**If you disagree with any of these Terms and Conditions, including those in paragraphs 7, 8 and 9, YOU MUST NOT ACCEPT THE RESTRICTED STOCK GRANT.** If you sign the Restricted Stock grant, or acknowledge your acceptance electronically or otherwise, you will be:

(a)     Agreeing to all the terms and conditions of the Restricted Stock grant including the Promises in paragraph 7(b);

(b)     Warranting and representing to Cigna that you are, and will remain, in full compliance with those terms and conditions; and

(c)     Authorizing Cigna to recover the Payment described in paragraph 8 and seek an injunction described in paragraph 9, if you engage in a Violation.

March 5, 2013 RSG Terms and Conditions

# EXHIBIT B

Cigna Corporation

Cigna Long-Term Incentive Plan:  Restricted Stock Grant Agreement

Cigna Corporation ("Cigna") has granted you the number of shares of restricted stock of Cigna set forth below in this Restricted Stock Grant Agreement ("Restricted Stock Grant" or "Grant") under the Cigna Long-Term Incentive Plan ("Plan").  The award is subject to the provisions of the Plan and the Terms and Conditions below.

You should carefully read all the terms and conditions of this Restricted Stock Grant and be sure you understand what they say and what your responsibilities and obligations are before you click on the ACCEPT button to acknowledge and agree to this Grant.

If you are not willing to agree to all of the Grant terms and conditions, do not accept the Grant and do not click the ACCEPT button for the Restricted Stock Grant Acknowledgment and Agreement.  If you do not accept the Grant, you will not receive the benefits of the Grant.

If you do click on the ACCEPT button, you are accepting and agreeing to all of the terms and conditions of this Restricted Stock Grant.

Participant: Karen Kocher
Global ID: Global ID: 000282701
Award Type: Restricted Stock Award
Plan Name: Cigna Long-Term Incentive Plan 51 (RSG)

Award Date: 26-Feb-2014
Award Expiration Date: N/A

Total Granted: 321.0000
Award Price: USD $0.0000

Vesting Schedule

| Shares/Options Awarded | Vest Date |
|---|---|
| 160.0000 | 26-Feb-2017 |
| 80.0000 | 26-Feb-2018 |
| 81.0000 | 26-Feb-2019 |

You should also read the Key Contacts and Reference Materials document attached to your grant by clicking the REVIEW button.  The Key Contacts and Reference Materials document contains

information on how to get important stock award information (such as the Plan document, Plan Prospectus, Tax Considerations and Cigna's Securities Transactions and Insider Trading Policy) and whom to contact if you have questions.

Please be aware that the Cigna Securities Transactions and Insider Trading Policy places restrictions on your transactions in Cigna securities and requires certain Cigna employees to obtain advance permission from the Corporate Secretary before executing transactions in Cigna securities.

If you have questions about your award, please contact Cigna Shareholder Services by email at shareholderservices@cigna.com or by phone at 215.761.3516.

Important Notice: Restricted Stock Grant Acknowledgment and Agreement

By clicking on the ACCEPT button, I:
1. Acknowledge and represent to Cigna that I have:
a. received the Restricted Stock Grant;
b. read and understand its terms and conditions, which include, among other things, restrictive covenants such as non-competition, customer and employee non-solicitation and non-disclosure provisions and litigation cooperation and intellectual property assignment and assistance provisions; and
c. received answers to any questions I had about the Grant and its terms and conditions, including the restrictive covenants.

2. Understand and agree that:
a. Pennsylvania law governs the interpretation and construction of the Grant; and
b. any controversy or proceeding arising out of or relating to the restrictive covenants in the Grant will be brought exclusively before a federal or state court in the Commonwealth of Pennsylvania where venue is appropriate and that has subject matter jurisdiction (collectively, "Pennsylvania Courts").

3. Consent to Pennsylvania Courts exercising personal jurisdiction over me in any dispute about the restrictive covenants.

Scroll down for the TERMS AND CONDITIONS of the Restricted Stock Grant.

## TERMS AND CONDITIONS OF FEBRUARY 2014 GRANTS
## OF RESTRICTED STOCK

These Terms and Conditions are an important part of your February 26, 2014 grant of Restricted Stock from Cigna Corporation (Cigna).  The terms of your Restricted Stock grant are in: (a) the electronic Restricted Stock Grant Agreement, (b) these Terms and Conditions, and (c) the applicable Plan provisions.

Certain words in this document with first letters capitalized are defined in the Restricted Stock Grant Agreement, these Terms and Conditions or Article 2 of the Plan.  This grant is void if you are not an employee of Cigna or a Subsidiary (a Cigna company) on February 26, 2014.

**1.**      *Restricted Stock; Restrictions*

Shares of Restricted Stock (Shares) are regular shares of Cigna Common Stock, but they are subject to certain Restrictions.  The Restrictions are:

(a)      You cannot sell or transfer the Shares to anyone during the Restricted Period; and

(b)      Unless an exception applies, you will forfeit (lose your right to) the Shares if you have a Termination of Employment during the Restricted Period.

Article 7 of the Plan describes these Restrictions in more detail.  In addition, you must also comply with all the other terms and conditions of this grant, including those contained in this document.

**2.**      *Restricted Period; Vesting*

The Restricted Period starts on February 26, 2014 and ends on the Vesting Date.  The Restrictions on the Shares will end (your Shares will vest) on the Vesting Date only if you remain continuously employed by a Cigna company from the grant date to the Vesting Date and comply with all the terms and conditions of this grant, including those contained in this document.

You have three separate Vesting Dates under this grant because the Shares will vest in three stages: 50% on February 26, 2017; an additional 25% on February 26, 2018; and the remaining 25% on February 26, 2019.  Your Vesting Date may be earlier (see paragraph 3).

**3.**      *Early Vesting*

In certain situations your Vesting Date may be earlier than the Vesting Dates listed under paragraph 2:

(a)      The Shares will vest upon your Termination of Employment if it is Upon a Change of Control (of Cigna Corporation) or due to your death or Disability.

(b)      The Shares *may* vest upon your Termination of Employment if:

    (1)      It is due to your Early Retirement or Retirement; and

    (2)      The People Resources Committee or its designee (including Cigna's senior human resources officer) approves the early vesting before your Termination of Employment.

If you want to be considered for early vesting when you retire, you must ask your manager or human resources representative far enough in advance of your retirement so there is time to process your request.

**4.** *Voting Rights; Dividends*

(a)    You have the right to vote the Shares.  If you forfeit a Share, you will also forfeit the right to vote the Share.

(b)    You have the right to receive dividends on the Shares.  Dividends paid on the Shares during the Restricted Period will be held by Cigna.  Subject to the forfeiture provisions of paragraph 4(c), your right to receive accumulated dividends on a Share will vest on the scheduled Vesting Date for the Share described in paragraph 2 (Scheduled Vesting Date).  Once a Share vests, your right to future dividends on the Share, and the method of payment, will be the same as for any other Cigna shareholder.

(c)    If you forfeit a Share, you will also forfeit the right to any accumulated and future dividends related to the Share.  Even if you do not forfeit a Share, you will forfeit the right to any accumulated dividends on the Share if:

    (1)    You have a Termination of Employment before the Scheduled Vesting Date for a Share (even if the Share vests under paragraph 3);

    (2)    The Scheduled Vesting Date for a Share occurs before the Share vests (because vesting is delayed); or

    (3)    You are on a leave of absence when the Share vests.

(d)    Vested accumulated dividends, less applicable taxes withheld, will be paid to you in a lump sum within 70 days after the Scheduled Vesting Date.  Cigna will not pay any interest on the accumulated dividends.

**5.** *Taxes at Vesting*

When the Shares vest, you must satisfy any required tax withholding obligation.  Cigna reserves the right to withhold enough newly-vested Shares to cover all or part of any applicable tax withholding.  However, if section 83(b) of the U.S. Internal Revenue Code of 1986, as amended, applies to you and you make a timely election under that provision, you must make an immediate cash payment to satisfy any required tax withholding obligation.

**6.** *Book-Entry Shares; Sale of Shares*

(a)    Cigna (or a custodian appointed by Cigna) will hold your Shares before and after vesting in book-entry form in your Stock Account.  That is, a record of your Share ownership will be kept electronically, and you will not risk losing any Share certificates.  A certificate for vested Shares will be issued to you only if you ask for one, but not if you have engaged in a Violation (described in paragraph 7(c)).

(b)    You may generally sell or transfer vested Shares at any time, but your right to sell the Shares after they vest may be limited by Cigna.  This right is subject to the terms of Cigna's Securities Transactions and Insider Trading Policy, and Cigna reserves the right, for any reason at any time, to suspend or delay action on any request you make to sell the Shares.

**7.**  **_Conditions of Grant_**

(a)     By accepting the grant, you are agreeing:

      (1)      to the Inventions provision in paragraph 7(b); and

      (2)     not to engage in any Violation described in paragraph 7(c).

You understand and agree that your agreement to the Inventions provision and not to engage in any Violation are a material part of the inducement for Cigna's granting you the Shares and essential pre-conditions to your eligibility to exercise any rights associated with the Shares and retain any benefit from the vesting of the Shares.

(b)     **_Inventions_**

      (1)     You hereby assign and promise to assign to Cigna companies or their designee, all your right, title, and interest in and to any and all current and future Inventions.  You acknowledge that all original works of authorship which you make (whether alone or jointly with others) within the scope of your Cigna company employment and which are protectable by copyright are "works made for hire," as defined in the United States Copyright Act.

      (2)     You agree to (i) maintain and make available adequate current records, including electronic records, notes, sketches and drawings, of all Inventions you make, and (ii) disclose such Inventions in writing upon request. These records will remain the property of Cigna companies.

      (3)     If in the course of your Cigna company employment, you incorporate a Prior Invention into any Cigna company work product, you grant Cigna companies a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to use the Prior Invention as part of or in connection with the work product. Within 45 days after the date of this grant, you agree to notify Cigna Shareholder Services (shareholderservices@Cigna.com) of any Prior Inventions that you are not assigning under this paragraph 7(b).

      (4)     "Inventions" means any and all inventions, original works of authorship, developments, concepts, sales methods, improvements, trade secrets, or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you have or will solely or jointly conceive, develop, reduce to practice, or fix during your Cigna company employment.

      (5)     "Prior Inventions" means all inventions, original works of authorship, developments, concepts, sales methods, improvements, trade secrets or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you conceived, developed, reduced to practice or fixed before your Cigna company employment and which belong to you.

(c)     **_Violation_**

You will engage in a "Violation" if, directly or indirectly, you engage in any misconduct described in paragraph 7(c)(1) below or you break any of the "Promises" in paragraphs 7(c)(2) through (7) below:

(1) **Misconduct**:

    (A)    You have a Termination of Employment initiated by a Cigna company because of your misconduct, as that term is defined in Cigna's Code of Ethics, Standards of Conduct or other employment policies.

    (B)    You do anything else while an employee of any Cigna company that is not discovered by the company until after your Termination of Employment and that would, if you had still been employed at the time of the discovery, be reason for your Termination of Employment for misconduct, as described above.

(2) **Promise Not To Compete against Cigna Companies**:

The Promise in this paragraph 7(c)(2) will remain in effect after your Termination of Employment only if you resign for any reason or a Cigna company terminates your employment for your misconduct, as described in paragraph 7(c)(1)(A). The Promise will <u>not</u> remain in effect, for example, if your Termination of Employment is due to the elimination of your job.

    (A)    If you are in **Career Band 6 or higher** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 7(c)(2)(C) below) at any time during the period that starts on the grant date and ends 12 months after your Termination of Employment.

You acknowledge and agree that:

    (i)    Cigna's business competes on a global basis;

    (ii)    Cigna's sales and marketing plans are for continued expansion throughout the United States of America and globally;

    (iii)    You have had access to and received Confidential Information (described in paragraph 7(c)(5)(B) below); and

    (iv)    The time restrictions and global nature of this non-competition restriction are reasonable and necessary to protect Cigna's business and Confidential Information.

    (B)    If you are in **Career Band 5 or below** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 7(c)(2)(C) below) at any time during the period that starts on the grant date and ends 12 months after your Termination of Employment, if that work is similar to, and within the same geographic area as, the work you performed, or for which you had responsibility, at any Cigna company at any time during the six-month period that ends on your Termination of Employment date.

For example:

(i)     If you are a sales employee and your sales territory at any time during your last six months of Cigna company employment is Pennsylvania, New Jersey, and New York, this paragraph 7(c)(2)(B) would apply to you only if you work in a sales position for a Cigna Competitor and only to the extent your new sales territory is Pennsylvania, New Jersey, and/or New York;

(ii)    If you are an underwriter with nationwide responsibilities at any time during your last six months of Cigna company employment, and you seek a job with a Cigna Competitor as an underwriter, the restrictions in paragraph 7(c)(2)(B) would be nationwide in scope; or

(iii)   If you work in a particular division or segment of Cigna, you would not be permitted to work in a similar division or segment for a Cigna Competitor where the work you are expected to perform for the competitor is similar to the work you performed for any Cigna company.

You acknowledge and agree that you have had access to and received Confidential Information (described in paragraph 7(c)(5)(B) below) and the above time and geographic restrictions are reasonable and necessary to protect Cigna's business and Confidential Information.

(C)     "Cigna Competitor" means any business that competes directly or indirectly with any Cigna company's product or service.

(3)     **Promise Not To Solicit or Hire Cigna Company Employees**:

(A)     You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i)     Solicit any employee of any Cigna company to terminate his/her employment with, or otherwise cease his/her relationship, contractual or otherwise, with that Cigna company; or

(ii)    Hire any Cigna company employee.

(B)     This paragraph 7(c)(3) will not apply to applications for employment submitted voluntarily by any Cigna employee, in response to a general advertisement or otherwise, so long as neither you, nor anyone acting on your behalf or in response to information provided by you, otherwise Solicits the employees to leave Cigna.

(C)     To "Solicit" means to entice, encourage, persuade, or solicit, or to attempt to entice, encourage, persuade or solicit.

(4)     **Promise Not To Solicit Cigna Company Customers**:

(A)     You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i)     Solicit any Cigna company customer to end an existing relationship, contractual or otherwise, with that Cigna company;

(ii)      Solicit any Cigna company customer to reduce the volume of their business dealings with Cigna; or

(iii)     Solicit any potential Cigna company customer to enter into any business arrangements with you or any business which you may become employed by, or affiliated in any way with, after leaving any Cigna company, if such business arrangements would compete in any way with any business that Cigna company has conducted, or has been planning to conduct, during the 12-month period ending on the date of the Violation.

(B)     The Promise in paragraph 7(c)(4)(A) above applies only to a customer or potential customer with whom you had any Material Contact while employed by any Cigna company. "Material Contact" means you:

(i)     Had business dealings with the customer on behalf of any Cigna company within the three-year period ending on the date of the Solicitation;

(ii)     Were responsible for supervising or coordinating the dealings between any Cigna company and the customer or potential customer anytime during the three-year period ending on the date of the Solicitation; or

(iii)     Obtained, at any time, trade secrets or confidential information about a customer or potential customer with whom you had contact as a result of your employment by any Cigna company.

(C)     "Solicit" is defined in paragraph 7(c)(3)(C).

**(5)     Promise Not To Disclose Cigna Companies' Confidential Information**:

(A)     You Promise not to disclose any Confidential Information to any third-party at any time, whether during or after your employment, without the prior written consent of Cigna (except to the extent required by an order of a court having competent jurisdiction or a properly issued subpoena) unless that Confidential Information was previously disclosed publicly by Cigna or has become public knowledge (other than by your disclosure).

(B)     "Confidential Information" means any Cigna company trade secrets, confidential information, or proprietary materials, including but not limited to customer lists, financial records, marketing plans and sales plans.

**(6)     Promise to Cooperate With Cigna in Investigations or Litigation**:

(A)     You Promise that, at any time after your Termination of Employment, you will cooperate with Cigna in (i) all investigations of any kind, (ii) helping to prepare and review documents and meeting with Cigna attorneys, and (iii) providing truthful testimony as a witness or a declarant during discovery and/or trial in connection with any present or future court, administrative, agency, or arbitration proceeding involving any Cigna company and with respect to which you have relevant information.

(B)     Cigna agrees that it will reimburse you, upon production of appropriate receipts and in accordance with Cigna's then existing Business Travel Reimbursement Policy, the reasonable business expenses (including air transportation, hotel, and similar expenses) incurred by you in connection with such assistance. You must present to Cigna for reimbursement all receipts for those expenses within 45 days after you incur the expenses.

(7)     **Promise to Assist with Patent and Copyright Registrations**:

(A)     You Promise that, during your Cigna company employment and after your Termination of Employment, you will assist Cigna companies, should they request and at Cigna's expense, to secure their rights (including any copyrights, patents, trademarks or other intellectual property rights) in or relating to the Inventions in any and all countries, including by:

(i)     disclosing to Cigna Companies all pertinent information and data; and

(ii)     executing all applications, assignments or other instruments necessary to apply for and obtain these rights and assign them to Cigna companies.

(d)     (1)     If you were an Executive Officer at any time during the 24-month period before the date of the Violation, the People Resources Committee will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment (described in paragraph 8) and to impose conditions on any waiver.

(2)     Otherwise, Cigna's Senior Human Resources Officer, or his or her designee, will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment and to impose conditions on any waiver.

(3)     Determinations of the People Resources Committee, Cigna's Senior Human Resources Officer, or his or her designee, will be final and binding on all parties.

## 8.     *Consequences of a Violation: Payment to Cigna*

**Important: This paragraph 8 is not Cigna's only remedy for a Violation. Cigna may seek any additional legal or equitable remedy, including an injunction described in paragraph 9, for a Violation.**

(a)     You will immediately forfeit all unvested Shares if you engage in any Violation at any time.

(b)     You must immediately make the Payment described in paragraph 8(c) to Cigna in the manner described in paragraph 8(d) if:

(1)     You engage in a Violation described in paragraph 7(c)(2) (compete against Cigna), 7(c)(3) (Solicit or hire Cigna employees) or 7(c)(4) (Solicit Cigna customers), either while you are a Cigna company employee or within 12 months after your Termination of Employment; or

<ol type="2" start="2">
<li>You engage in a Violation described in paragraph 7(c)(1) (misconduct), 7(c)(5) (disclose Confidential Information) 7(c)(6) (fail to cooperate) or 7(c)(7) (fail to assist) **at any time**.</li>
</ol>

(c)     "Payment" is the value you realize from any Shares that vest during the 12-month period ending on the date of the Violation.  The Payment will equal:

       (1)     The number of Shares that vest during that 12-month period;

               multiplied by

       (2)     The Fair Market Value of those Shares on their Vesting Date;

               plus

       (3)     The total amount of all dividends, if any, paid to you on those Shares through the date of the Payment.

(d)     Cigna will recover the Payment from you by any means permitted by applicable law, at the sole discretion of Cigna management, including but not limited to any or all of the following methods:

       (1)     If you have any Shares in your Stock Account or in any other account in book-entry form when a Violation occurs, Cigna will take back from you the whole number of Shares that has a total Fair Market Value as of the date of the Violation up to, but not more than, the Payment amount.

       (2)     Cigna will, to the extent permitted by applicable law, reduce:

              (A)     The amount of any payments that any Cigna company owes you for any reason (including without limit any payments owed to you under any nonqualified retirement, deferred compensation or other plan or arrangement) by

              (B)     The Payment amount.

           This reduction will not occur until the date a future payment to you is due.

       (3)     Cigna will send you a written notice and demand for all or part of any Payment amount.  Within 30 days after you receive that notice and demand, you must make the Payment to Cigna.

## 9.     *Consequences of a Violation: Injunction*

You agree that:

(a)     Cigna will be entitled to ask a court of competent jurisdiction to issue an order (an injunction) that requires you to take action and/or that prohibits you from taking action, as needed to ensure that you keep all of the Promises described in paragraph 7(c)(2) through (7), and Cigna will not be required to post a bond in order to seek or obtain the injunction;

(b)     Any breach or threatened breach of any of the Promises would cause irreparable injury to Cigna, and monetary damages alone would not provide an adequate remedy; and

(c)     The remedies described in paragraph 9(a) are in addition to any other rights and remedies Cigna may have at law or in equity.

**10.** *Consequences of a Violation: Designation of Cigna as Agent and Attorney-in-Fact for Inventions*

You agree that:

(a)    If Cigna Companies are unable to obtain your signature on any instruments needed to secure their rights in or relating to the Inventions pursuant to paragraph 7(c)(7)(A); then

(b)    You hereby appoint Cigna companies and their duly authorized officers as your agents and attorneys in fact to act for and on your behalf to execute and file any documents and take other actions as may be necessary for Cigna companies to secure those rights.

**11.** *Agreeing to Assume Risks*

Cigna and its transfer agent will try to process your stock transaction requests in a timely manner; however, Cigna makes no promises or guarantees to you relating to the market price of the Shares or to the time it may take to act on your request to sell the Shares or deliver stock certificates.  By accepting this Restricted Stock grant:

(a)    You acknowledge that the action you request may not be completed until several days (or in the case of delivery of stock certificates, several weeks) after you submit it.

(b)    You agree to assume the risks, including the risk that the market price of the Shares may change, related to delays described in paragraph 11(a):

(1)    Between the time you ask for any Shares to be sold and the time your Shares are actually sold; and

(2)    Between the time you ask for stock certificates to be delivered to you or your broker and the time the certificates are delivered.

**12.** *Applicable Law*

You understand and agree that:

(a)    The terms and conditions of this Restricted Stock grant (including any Violation and the consequences of any Violation) and all determinations made under the Restricted Stock Grant Agreement, the Plan, and these Terms and Conditions will be interpreted under the laws of the Commonwealth of Pennsylvania, without regard to its conflict of laws rule;

(b)    Any dispute about any of the Promises (described in paragraph 7(c)), if not resolved by agreement between you and Cigna, will be resolved exclusively in a federal or state court in the Commonwealth of Pennsylvania where venue is appropriate and that has subject matter jurisdiction over the dispute (collectively, "Pennsylvania Courts");

(c)    Pennsylvania is a convenient forum for resolving any dispute about the Promises; and

(d)    You and Cigna consent to the exercise of personal jurisdiction over the parties by a Pennsylvania Court in any dispute related to the Promises.

**13.** *Arbitration*

You agree and understand that:

(a)    Any dispute over any of the terms and conditions that apply to this Restricted Stock grant will be resolved exclusively under the Cigna Employment Dispute Arbitration Policy and its Rules and Procedures as may be in effect when the dispute arises;

(b)      You are waiving your right to have those disputes decided by a judge or jury in a court of law, and instead you are agreeing to submit those disputes exclusively to mandatory and binding final arbitration;

(c)      While you or Cigna may seek emergency, temporary or permanent injunctive relief from a court in accordance with applicable law, after the court has issued a decision about that relief, you and Cigna will submit the dispute to final and binding arbitration under the Cigna Employment Dispute Arbitration Policy; and

(d)      This arbitration provision will not apply to any dispute related to the Promises.

**14.**    *Miscellaneous*

(a)      If a court of competent jurisdiction determines that any provision of these Terms and Conditions is unenforceable as written, that provision will be enforceable to the maximum extent permitted by law and will be reformed by the court to make the provision enforceable in accordance with Cigna's intent and applicable law.

(b)      Cigna's failure to enforce any provision of this Restricted Stock grant will not be interpreted as a waiver of its right to enforce that provision in the future.

**15.**    *Acceptance*

**If you disagree with any of these Terms and Conditions, including those in paragraphs 7, 8, 9 and 10 YOU MUST NOT ACCEPT THE RESTRICTED STOCK GRANT.**  If you sign the Restricted Stock grant, or acknowledge your acceptance electronically or otherwise, you will be:

(a)      Agreeing to all the terms and conditions of the Restricted Stock grant including the Inventions provision in paragraph 7(b) and the Promises in paragraph 7(c);

(b)      Warranting and representing to Cigna that you are, and will remain, in full compliance with those terms and conditions;

(c)      Authorizing Cigna to recover the Payment described in paragraph 8 and seek an injunction described in paragraph 9, if you engage in a Violation; and

(d)      Appointing Cigna as your agent and attorney-in-fact to secure rights with respect to Inventions if unable to obtain your signature as described in paragraph 10.

February 26, 2014 RSG Terms and Conditions

# EXHIBIT C

Cigna Corporation

Cigna Long-Term Incentive Plan:  Restricted Stock Grant Agreement

Cigna Corporation ("Cigna") has granted you the number of shares of restricted stock of Cigna set forth below in this Restricted Stock Grant Agreement ("Restricted Stock Grant" or "Grant") under the Cigna Long-Term Incentive Plan ("Plan").  The date of your Restricted Stock Grant ("Grant Date") and the date on which your Grant is scheduled to vest ("Vesting Date") are also indicated below. The award is subject to the provisions of the Plan and the Terms and Conditions below.

You should carefully read all the terms and conditions of this Restricted Stock Grant and be sure you understand what they say and what your responsibilities and obligations are before you click on the ACCEPT button to acknowledge and agree to this Grant.

If you are not willing to agree to all of the Grant terms and conditions, do not accept the Grant and do not click the ACCEPT button for the Restricted Stock Grant Acknowledgment and Agreement. If you do not accept the Grant, you will not receive the benefits of the Grant.

If you do click on the ACCEPT button, you are accepting and agreeing to all of the terms and conditions of this Restricted Stock Grant.

Participant: **KAREN    KOCHER**
Grant Type:  RSA
Plan Name:  Cigna Long-Term Incentive Plan

Grant Date: **02/25/2015**
Total Granted: **193**
Grant Price: **$0.00**          (USD)

Vesting Schedule

| Shares Granted | Vesting Date |
|---|---|
| 100% of shares granted | The Third Anniversary of the Grant Date |

You should also read the Plan Document and Key Contacts and Reference Materials document (attached to the Plan) and indicate that you have done so and agree to the terms by checking the appropriate box in the online grant acceptance process.  The Key Contacts and Reference Materials document contains information on how to get important stock award information (such as the Plan Prospectus, Tax Considerations and Cigna's Securities Transactions and Insider Trading Policy) and whom to contact if you have questions.

Please be aware that the Cigna Securities Transactions and Insider Trading Policy places restrictions on your transactions in Cigna securities and requires certain Cigna employees to obtain advance permission from the Corporate Secretary before executing transactions in Cigna securities.

If you have questions about your award, please contact Cigna Shareholder Services by email at shareholderservices@cigna.com or by phone at 215.761.3516.

Important Notice:  Restricted Stock Grant Acknowledgment and Agreement

By clicking on the ACCEPT button, I:
1.  Acknowledge and represent to Cigna that I have:
    a.  received the Restricted Stock Grant;
    b.  read and understand its terms and conditions, which include, among other things, restrictive covenants such as non-competition, customer and employee non-solicitation and non-disclosure provisions and  litigation cooperation and intellectual property assignment and assistance provisions; and
    c.  received answers to any questions I had about the Grant and its terms and conditions, including the restrictive covenants.

2.  Understand and agree that:
    a.  Pennsylvania law governs the interpretation and construction of the Grant; and
    b.  any controversy or proceeding arising out of or relating to the restrictive covenants in the Grant will be brought exclusively before a federal or state court in the Commonwealth of Pennsylvania where venue is appropriate and that has subject matter jurisdiction (collectively, "Pennsylvania Courts").

3.  Consent to Pennsylvania Courts exercising personal jurisdiction over me in any dispute about the restrictive covenants.

Scroll down for the TERMS AND CONDITIONS of the Restricted Stock Grant.

# TERMS AND CONDITIONS OF YOUR 2015
## RESTRICTED STOCK GRANT

These Terms and Conditions are an important part of your grant of Restricted Stock from Cigna Corporation (Cigna).  The terms of your Restricted Stock grant are in: (a) the electronic Restricted Stock Grant Agreement above, (b) these Terms and Conditions, and (c) the applicable Plan provisions.

Certain words in this document with first letters capitalized are defined in the Restricted Stock Grant Agreement above, these Terms and Conditions or Article 2 of the Plan.  This grant is void if you are not an employee of Cigna or a Subsidiary (a Cigna company) on the Grant Date.

**1.**   *Restricted Stock; Restrictions*

Shares of Restricted Stock (Shares) are regular shares of Cigna Common Stock, but they are subject to certain Restrictions.  The Restrictions are:

(a)   You cannot sell or transfer the Shares to anyone during the Restricted Period; and

(b)   Unless an exception applies, you will forfeit (lose your right to) the Shares if you have a Termination of Employment during the Restricted Period.

Article 7 of the Plan describes these Restrictions in more detail.  In addition, you must also comply with all the other terms and conditions of this grant, including those contained in this document.

**2.**   *Restricted Period; Vesting*

The Restricted Period starts on the Grant Date and ends on the Vesting Date.  The Restrictions on the Shares will end (your Shares will vest) on the Vesting Date only if you remain continuously employed by a Cigna company from the Grant Date to the Vesting Date and comply with all the terms and conditions of this grant, including those contained in this document.

Your vesting date may be earlier (see paragraph 3).

**3.**   *Early Vesting*

In certain situations your vesting date may be earlier than the Vesting Date described in paragraph 2:

(a)   The Shares will vest upon your Termination of Employment if it is Upon a Change of Control (of Cigna Corporation) or due to your death or Disability.

(b)   The Shares *may* vest upon your Termination of Employment if:

   (1)   It is due to your Early Retirement or Retirement; and

   (2)   The People Resources Committee or its designee (including Cigna's senior human resources officer) approves the early vesting before your Termination of Employment.

   If you want to be considered for early vesting when you retire, you must ask your manager or human resources representative far enough in advance of your retirement so there is time to process your request.

**4.**  *Voting Rights; Dividends*

(a)  You have the right to vote the Shares.  If you forfeit a Share, you will also forfeit the right to vote the Share.

(b)  You have the right to receive dividends on the Shares.  Dividends paid on the Shares during the Restricted Period will be held by Cigna.  Subject to the forfeiture provisions of paragraph 4(c), your right to receive accumulated dividends on a Share will vest on the scheduled Vesting Date for the Share described in paragraph 2 (Scheduled Vesting Date).  Once a Share vests, your right to future dividends on the Share, and the method of payment, will be the same as for any other Cigna shareholder.

(c)  If you forfeit a Share, you will also forfeit the right to any accumulated and future dividends related to the Share.  Even if you do not forfeit a Share, you will forfeit the right to any accumulated dividends on the Share if:

    (1)  You have a Termination of Employment before the Scheduled Vesting Date for a Share (even if the Share vests under paragraph 3);

    (2)  The Scheduled Vesting Date for a Share occurs before the Share vests (because vesting is delayed); or

    (3)  You are on a leave of absence when the Share vests.

(d)  Vested accumulated dividends, less applicable taxes withheld, will be paid to you in a lump sum within 70 days after the Scheduled Vesting Date.  Cigna will not pay any interest on the accumulated dividends.

**5.**  *Taxes at Vesting*

When the Shares vest, you must satisfy any required tax withholding obligation.  Cigna reserves the right to withhold enough newly-vested Shares to cover all or part of any applicable tax withholding.  However, if section 83(b) of the U.S. Internal Revenue Code of 1986, as amended, applies to you and you make a timely election under that provision, you must make an immediate cash payment to satisfy any required tax withholding obligation.

**6.**  *Book-Entry Shares; Sale of Shares*

(a)  Cigna (or a custodian appointed by Cigna) will hold your Shares before and after vesting in book-entry form in a Stock Account.  That is, a record of your Share ownership will be kept electronically, and you will not risk losing any Share certificates.  A certificate for vested Shares will be issued to you only if you ask for one, but not if you have engaged in a Violation (described in paragraph 7(c)).

(b)  You may generally sell or transfer vested Shares at any time, but your right to sell the Shares after they vest may be limited by Cigna.  This right is subject to the terms of Cigna's Securities Transactions and Insider Trading Policy, and Cigna reserves the right, for any reason at any time, to suspend or delay action on any request you make to sell the Shares.

**7.**  *Conditions of Grant*

(a)  By accepting the grant, you are agreeing:

    (1)  to the Inventions provision in paragraph 7(b); and

    (2)  not to engage in any Violation described in paragraph 7(c).

You understand and agree that your agreement to the Inventions provision and not to engage in any Violation are a material part of the inducement for Cigna's granting you the Shares and essential pre-conditions to your eligibility to exercise any rights associated with the Shares and retain any benefit from the vesting of the Shares.

(b)     ***Inventions***

(1)     You hereby assign and promise to assign to Cigna companies or their designee, all your right, title, and interest in and to any and all current and future Inventions.  You acknowledge that all original works of authorship which you make (whether alone or jointly with others) within the scope of your Cigna company employment and which are protectable by copyright are "works made for hire," as defined in the United States Copyright Act.

(2)     You agree to (i) maintain and make available adequate current records, including electronic records, notes, sketches and drawings, of all Inventions you make, and (ii) disclose such Inventions in writing upon request. These records will remain the property of Cigna companies.

(3)     If in the course of your Cigna company employment, you incorporate a Prior Invention into any Cigna company work product, you grant Cigna companies a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to use the Prior Invention as part of or in connection with the work product. Within 45 days after the date of this grant, you agree to notify Cigna Shareholder Services (shareholderservices@Cigna.com) of any Prior Inventions that you are not assigning under this paragraph 7(b).

(4)     "Inventions" means any and all inventions, original works of authorship, developments, concepts, sales methods, improvements, trade secrets, or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you have or will solely or jointly conceive, develop, reduce to practice, or fix during your Cigna company employment.

(5)     "Prior Inventions" means all inventions, original works of authorship, developments, concepts, sales methods, improvements, trade secrets or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you conceived, developed, reduced to practice or fixed before your Cigna company employment and which belong to you.


(c)     ***Violation***

You will engage in a "Violation" if, directly or indirectly, you engage in any misconduct described in paragraph 7(c)(1) below or you break any of the "Promises" in paragraphs 7(c)(2) through (7) below:

(1)     **Misconduct**:

(A)     You have a Termination of Employment initiated by a Cigna company because of your misconduct, as that term is defined in Cigna's Code of Ethics, Standards of Conduct or other employment policies.

(B)     You do anything else while an employee of any Cigna company that is not discovered by the company until after your Termination of Employment and that would, if you had still been employed at the time of the discovery, be reason for your Termination of Employment for misconduct, as described above.

(2)     **Promise Not To Compete against Cigna Companies**:

(A)     If you are in **Career Band 6 or higher** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 7(c)(2)(C) below) at any time during the period that starts on the Grant Date and ends 12 months after your Termination of Employment.

You acknowledge and agree that:

(i)     Cigna's business competes on a global basis;

(ii)    Cigna's sales and marketing plans are for continued expansion throughout the United States of America and globally;

(iii)   You have had access to and received Confidential Information (described in paragraph 7(c)(5)(B) below); and

(iv)    The time restrictions and global nature of this non-competition restriction are reasonable and necessary to protect Cigna's business and Confidential Information.

(B)     If you are in **Career Band 5 or below** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 7(c)(2)(C) below) at any time during the period that starts on the Grant Date and ends 12 months after your Termination of Employment, if that work is similar to, and within the same geographic area as, the work you performed, or for which you had responsibility, at any Cigna company at any time during the six-month period that ends on your Termination of Employment date.

For example:

(i)     If you are a sales employee and your sales territory at any time during your last six months of Cigna company employment is Pennsylvania, New Jersey, and New York, this paragraph 7(c)(2)(B) would apply to you only if you work in a sales position for a Cigna Competitor and only to the extent your new sales territory is Pennsylvania, New Jersey, and/or New York;

(ii)    If you are an underwriter with nationwide responsibilities at any time during your last six months of Cigna company employment, and you seek a job with a Cigna Competitor as an underwriter, the restrictions in paragraph 7(c)(2)(B) would be nationwide in scope; or

(iii)     If you work in a particular division or segment of Cigna, you would not be permitted to work in a similar division or segment for a Cigna Competitor where the work you are expected to perform for the competitor is similar to the work you performed for any Cigna company.

You acknowledge and agree that you have had access to and received Confidential Information (described in paragraph 7(c)(5)(B) below) and the above time and geographic restrictions are reasonable and necessary to protect Cigna's business and Confidential Information.

(C)     "Cigna Competitor" means any business that competes directly or indirectly with any Cigna company's product or service.

(D)     The Promise in paragraph 7(c)(2) not to compete against Cigna companies after  Termination of Employment will not apply and Cigna will not enforce it with respect to Cigna company employment in California.


(3)     **Promise Not To Solicit or Hire Cigna Company Employees**:

(A)     You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i)     Solicit any employee of any Cigna company to terminate his/her employment with, or otherwise cease his/her relationship, contractual or otherwise, with that Cigna company; or

(ii)     Hire any Cigna company employee.

(B)     This paragraph 7(c)(3) will not apply to applications for employment submitted voluntarily by any Cigna employee, in response to a general advertisement or otherwise, so long as neither you, nor anyone acting on your behalf or in response to information provided by you, otherwise Solicits the employees to leave Cigna.

(C)     To "Solicit" means to entice, encourage, persuade, or solicit, or to attempt to entice, encourage, persuade or solicit.

(4)     **Promise Not To Solicit Cigna Company Customers**:

(A)     You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i)     Solicit any Cigna company customer to end an existing relationship, contractual or otherwise, with that Cigna company;

(ii)     Solicit any Cigna company customer to reduce the volume of their business dealings with Cigna; or

(iii)     Solicit any potential Cigna company customer to enter into any business arrangements with you or any business which you may become employed by, or affiliated in any way with, after leaving any Cigna company, if such business arrangements would compete in any way with any business that Cigna company has

conducted, or has been planning to conduct, during the 12-month period ending on the date of the Violation.

(B) The Promise in paragraph 7(c)(4)(A) above applies only to a customer or potential customer with whom you had any Material Contact while employed by any Cigna company. "Material Contact" means you:

(i) Had business dealings with the customer on behalf of any Cigna company within the three-year period ending on the date of the Solicitation;

(ii) Were responsible for supervising or coordinating the dealings between any Cigna company and the customer or potential customer anytime during the three-year period ending on the date of the Solicitation; or

(iii) Obtained, at any time, trade secrets or confidential information about a customer or potential customer with whom you had contact as a result of your employment by any Cigna company.

(C) "Solicit" is defined in paragraph 7(c)(3)(C).

(D) The Promise in paragraph 7(c)(4) not to solicit Cigna company customers after  Termination of Employment will not apply and Cigna will not enforce it with respect to Cigna company employment in California unless the activity involves the use of Confidential Information.

(5) **Promise Not To Disclose Cigna Companies' Confidential Information**:

(A) You Promise not to disclose any Confidential Information to any third-party at any time, whether during or after your employment, without the prior written consent of Cigna (except to the extent required by an order of a court having competent jurisdiction or a properly issued subpoena) unless that Confidential Information was previously disclosed publicly by Cigna or has become public knowledge (other than by your disclosure). Nothing in this Confidentiality provision prohibits you or your counsel from initiating communications directly with, or responding to any inquiry from, or providing testimony before any self-regulatory organization or any state or federal regulatory authority. In the event that you are required to disclose Confidential Information pursuant to a subpoena or other law or regulation, you shall notify Cigna promptly upon learning that you have been subpoenaed or are otherwise required or compelled to divulge Confidential Information.

(B) "Confidential Information" means any Cigna company trade secrets, confidential information, or proprietary materials, including but not limited to customer lists, financial records, marketing plans and sales plans.

(6) **Promise to Cooperate With Cigna in Investigations or Litigation**:

   (A) You Promise that, at any time after your Termination of Employment, you will cooperate with Cigna in (i) all investigations of any kind, (ii) helping to prepare and review documents and meeting with Cigna attorneys, and (iii) providing truthful testimony as a witness or a declarant during discovery and/or trial in connection with any present or future court, administrative, agency, or arbitration proceeding involving any Cigna company and with respect to which you have relevant information.

   (B) Cigna agrees that it will reimburse you, upon production of appropriate receipts and in accordance with Cigna's then existing Business Travel Reimbursement Policy, the reasonable business expenses (including air transportation, hotel, and similar expenses) incurred by you in connection with such assistance. You must present to Cigna for reimbursement all receipts for those expenses within 45 days after you incur the expenses.

(7) **Promise to Assist with Patent and Copyright Registrations**:

   (A) You Promise that, during your Cigna company employment and after your Termination of Employment, you will assist Cigna companies, should they request and at Cigna's expense, to secure their rights (including any copyrights, patents, trademarks or other intellectual property rights) in or relating to the Inventions in any and all countries, including by:

      (i) disclosing to Cigna Companies all pertinent information and data; and

      (ii) executing all applications, assignments or other instruments necessary to apply for and obtain these rights and assign them to Cigna companies.

(d) (1) If you were an Executive Officer at any time during the 24-month period before the date of the Violation, the People Resources Committee will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment (described in paragraph 8) and to impose conditions on any waiver.

   (2) Otherwise, Cigna's Senior Human Resources Officer, or his or her designee, will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment and to impose conditions on any waiver.

   (3) Determinations of the People Resources Committee, Cigna's Senior Human Resources Officer, or his or her designee, will be final and binding on all parties.

**8.**     *Consequences of a Violation: Payment to Cigna*

**Important: This paragraph 8 is not Cigna's only remedy for a Violation.  Cigna may seek any additional legal or equitable remedy, including an injunction described in paragraph 9, for a Violation.**

(a)     You will immediately forfeit all unvested Shares if you engage in any Violation at any time.

(b)     You must immediately make the Payment described in paragraph 8(c) to Cigna in the manner described in paragraph 8(d) if:

   (1)     You engage in a Violation described in paragraph 7(c)(2) (compete against Cigna), 7(c)(3) (Solicit or hire Cigna employees) or 7(c)(4) (Solicit Cigna customers), either while you are a Cigna company employee or within 12 months after your Termination of Employment; or

   (2)     You engage in a Violation described in paragraph 7(c)(1) (misconduct), 7(c)(5) (disclose Confidential Information) 7(c)(6) (fail to cooperate) or 7(c)(7) (fail to assist) **at any time**.

(c)     "Payment" is the value you realize from any Shares that vest during the 12-month period ending on the date of the Violation.  The Payment will equal:

   (1)     The number of Shares that vest during that 12-month period;

            multiplied by

   (2)     The Fair Market Value of those Shares on their Vesting Date;

            plus

   (3)     The total amount of all dividends, if any, paid to you on those Shares through the date of the Payment.

(d)     Cigna will recover the Payment from you by any means permitted by applicable law, at the sole discretion of Cigna management, including but not limited to any or all of the following methods:

   (1)     If you have any Shares in a Stock Account or in any other account in book-entry form when a Violation occurs, Cigna will take back from you the whole number of Shares that has a total Fair Market Value as of the date of the Violation up to, but not more than, the Payment amount.

   (2)     Cigna will, to the extent permitted by applicable law, reduce:

      (A)     The amount of any payments that any Cigna company owes you for any reason (including without limit any payments owed to you under any nonqualified retirement, deferred compensation or other plan or arrangement) by

      (B)     The Payment amount.

      This reduction will not occur until the date a future payment to you is due.

   (3)     Cigna will send you a written notice and demand for all or part of any Payment amount.  Within 30 days after you receive that notice and demand, you must make the Payment to Cigna.

**9.** *Consequences of a Violation: Injunction*

You agree that:

(a)     Cigna will be entitled to ask a court of competent jurisdiction to issue an order (an injunction) that requires you to take action and/or that prohibits you from taking action, as needed to ensure that you keep all of the Promises described in paragraph 7(c)(2) through (7), and Cigna will not be required to post a bond in order to seek or obtain the injunction;

(b)     Any breach or threatened breach of any of the Promises would cause irreparable injury to Cigna, and monetary damages alone would not provide an adequate remedy; and

(c)     The remedies described in paragraph 9(a) are in addition to any other rights and remedies Cigna may have at law or in equity.

**10.**    *Consequences of a Violation: Designation of Cigna as Agent and Attorney-in-Fact for Inventions*

You agree that:

(a)     If Cigna Companies are unable to obtain your signature on any instruments needed to secure their rights in or relating to the Inventions pursuant to paragraph 7(c)(7)(A); then

(b)     You hereby appoint Cigna companies and their duly authorized officers as your agents and attorneys in fact to act for and on your behalf to execute and file any documents and take other actions as may be necessary for Cigna companies to secure those rights.

**11.**    *Agreeing to Assume Risks*

Cigna, its stock plan administrator and its transfer agent will try to process your stock transaction requests in a timely manner; however, Cigna makes no promises or guarantees to you relating to the market price of the Shares or to the time it may take to act on your request to sell the Shares or deliver stock certificates. By accepting this Restricted Stock grant:

(a)     You acknowledge that the action you request may not be completed until several days (or in the case of delivery of stock certificates, several weeks) after you submit it.

(b)     You agree to assume the risks, including the risk that the market price of the Shares may change, related to delays described in paragraph 11(a):

(1)     Between the time you ask for any Shares to be sold and the time your Shares are actually sold; and

(2)     Between the time you ask for stock certificates to be delivered to you or your broker and the time the certificates are delivered.

**12.**    *Applicable Law*

You understand and agree that:

(a)     The terms and conditions of this Restricted Stock grant (including any Violation and the consequences of any Violation) and all determinations made under the Restricted Stock Grant Agreement, the Plan, and these Terms and Conditions will be interpreted under the laws of the Commonwealth of Pennsylvania, without regard to its conflict of laws rule;

(b)     Any dispute about any of the Promises (described in paragraph 7(c)), if not resolved by agreement between you and Cigna, will be resolved exclusively in a federal or state court in the Commonwealth of Pennsylvania where venue is appropriate and that has subject matter jurisdiction over the dispute (collectively, "Pennsylvania Courts");

(c)     Pennsylvania is a convenient forum for resolving any dispute about the Promises; and

(d) You and Cigna consent to the exercise of personal jurisdiction over the parties by a Pennsylvania Court in any dispute related to the Promises.

**13.** *Arbitration*

You agree and understand that:

(a) Except as provided in paragraph 12, any dispute over any of the terms and conditions that apply to this Restricted Stock grant will be resolved exclusively under the Cigna Employment Dispute Arbitration Policy and its Rules and Procedures as may be in effect when the dispute arises;

(b) You are waiving your right to have those disputes decided by a judge or jury in a court of law, and instead you are agreeing to submit those disputes exclusively to mandatory and binding final arbitration;

(c) While you or Cigna may seek emergency, temporary or permanent injunctive relief from a court in accordance with applicable law, after the court has issued a decision about that relief, you and Cigna will submit the dispute to final and binding arbitration under the Cigna Employment Dispute Arbitration Policy; and

(d) This arbitration provision will not apply to any dispute related to the Promises.

**14.** *Miscellaneous*

(a) If a court of competent jurisdiction determines that any provision of these Terms and Conditions is unenforceable as written, that provision will be enforceable to the maximum extent permitted by law and will be reformed by the court to make the provision enforceable in accordance with Cigna's intent and applicable law.

(b) Cigna's failure to enforce any provision of this Restricted Stock grant will not be interpreted as a waiver of its right to enforce that provision in the future.

**15.** *Acceptance*

**If you disagree with any of these Terms and Conditions, including those in paragraphs 7, 8, 9 and 10 YOU MUST NOT ACCEPT THE RESTRICTED STOCK GRANT.** If you sign the Restricted Stock grant, or acknowledge your acceptance electronically or otherwise, you will be:

(a) Agreeing to all the terms and conditions of the Restricted Stock grant including the Inventions provision in paragraph 7(b) and the Promises in paragraph 7(c);

(b) Warranting and representing to Cigna that you are, and will remain, in full compliance with those terms and conditions;

(c) Authorizing Cigna to recover the Payment described in paragraph 8 and seek an injunction described in paragraph 9, if you engage in a Violation; and

(d) Appointing Cigna as your agent and attorney-in-fact to secure rights with respect to Inventions if unable to obtain your signature as described in paragraph 10.

2015 RSG Grant Agreement (3 Year cliff) including Terms and Conditions

`F8YA850J`
`03/22/2015 05:18 pm U.S. Eastern Standard Time`
`ACCEPTED`

# EXHIBIT D

Cigna Corporation

Cigna Long-Term Incentive Plan:  Nonqualified Stock Option Grant Agreement

Cigna Corporation ("Cigna") has granted you the option to purchase the number of shares of Cigna Common Stock set forth below in this Option Grant Agreement ("Option Grant") under the Cigna Long-Term Incentive Plan ("Plan").  The date of your Option Grant ("Grant Date"), the dates on which your Option Grant is scheduled to vest ("Vesting Dates") and the date on which it is scheduled to expire ("Expiration Date") are also indicated below. The award is subject to the provisions of the Plan and the Terms and Conditions below.

You should carefully read all the terms and conditions of this Option Grant and be sure you understand what they say and what your responsibilities and obligations are before you click on the ACCEPT button to acknowledge and agree to this Option Grant.

If you are not willing to agree to all of the Option Grant terms and conditions, do not accept the Option Grant and do not click the ACCEPT button for the Option Grant Acknowledgment and Agreement.  If you do not accept the Option Grant, you will not receive the benefits of the Option Grant.

If you do click on the ACCEPT button, you are accepting and agreeing to all of the terms and conditions of this Option Grant.

Participant: **KAREN   KOCHER**
Grant Type:  NQSO
Plan Name:  Cigna Long-Term Incentive Plan

Grant Date:  **02/25/2015**
Grant Expiration Date: **02/25/2025**
Total Granted:  **1282**
Option Price: **$120.90**     (USD)

Vesting Schedule

| Options Granted | Vesting Date |
| --- | --- |
| 1/3 of the Shares Granted | The First Anniversary of the Grant Date |
| 1/3 of the Shares Granted | The Second Anniversary of the Grant Date |
| 1/3 of the Shares Granted | The Third Anniversary of the Grant Date |

You should also read the Plan Document and Key Contacts and Reference Materials document (attached to the Plan) and indicate that you have done so and agree to the terms by checking the appropriate box in the online grant acceptance process.  The Key Contacts and Reference Materials document contains information on how to get important stock award information (such as the Plan Prospectus, Tax Considerations and Cigna's Securities Transactions and Insider Trading Policy) and whom to contact if you have questions.

Please be aware that the Cigna Securities Transactions and Insider Trading Policy places restrictions on your transactions in Cigna securities and requires certain Cigna employees to obtain advance permission from the Corporate Secretary before executing transactions in Cigna securities.

If you have questions about your award, please contact Cigna Shareholder Services by email at shareholderservices@cigna.com or by phone at 215.761.3516.

**Important Notice**:  Option Grant Acknowledgment and Agreement

By clicking on the ACCEPT button, I:
1.  Acknowledge and represent to Cigna that I have:
    a.  received the Option Grant;
    b.  read and understand its terms and conditions, which include, among other things, restrictive covenants such as non-competition, customer and employee non-solicitation and non-disclosure provisions and  litigation cooperation and intellectual property assignment and assistance provisions; and
    c.  received answers to any questions I had about the Option Grant and its terms and conditions, including the restrictive covenants.

2.  Understand and agree that:
    a.  Pennsylvania law governs the interpretation and construction of the Option Grant; and
    b.  any controversy or proceeding arising out of or relating to the restrictive covenants in the Option Grant will be brought exclusively before a federal or state court in the Commonwealth of Pennsylvania where venue is appropriate and that has subject matter jurisdiction (collectively, "Pennsylvania Courts").

3.  Consent to Pennsylvania Courts exercising personal jurisdiction over me in any dispute about the restrictive covenants.

Scroll down for the TERMS AND CONDITIONS of the Option Grant.

# TERMS AND CONDITIONS OF YOUR 2015 GRANT
# OF A NONQUALIFIED STOCK OPTION

These Terms and Conditions are an important part of your grant of a nonqualified stock option (Option) from Cigna Corporation (Cigna). The terms of your Option are in (a) the electronic Option Grant Agreement above, (b) these Terms and Conditions and (c) the applicable Plan provisions.

Certain words in this document with first letters capitalized are defined in the Option Grant Agreement above, these Terms and Conditions or Article 2 of the Plan. This grant is void if you are not an employee of Cigna or a Subsidiary (a Cigna company) on the Grant Date.

## 1.      *The Option*

The Option gives you the right to buy a certain number of shares of Cigna Corporation Common Stock (Shares) during the Option Period (described in paragraph 2) at the Option Price. Your Option Grant Agreement lists the number of Shares and your Option Price. To buy the Shares at the Option Price, you must exercise the Option.

## 2.      *Option Period; Vesting*

(a)      You can exercise the Option only during the Option Period. The Option becomes exercisable, or "vests," on the first day of the Option Period and expires on the last day of the Option Period.

(b)      The Option Period for one-third of the Shares starts on the first (1st) anniversary of the Grant Date; for another third of the Shares on the second (2nd) anniversary of the Grant Date; and for the final third of the Shares on the third (3rd) anniversary of the Grant Date. This is the vesting schedule for the Option.

(c)      The Option Period for all the Shares ends, and the Option will expire, the earlier of (1) 5:00 p.m. Philadelphia time on the Expiration Date or (2) upon your Termination of Employment as described under *Early Expiration* in paragraph 4.

## 3.      *Early Vesting*

The Option may vest earlier than the dates listed under paragraph 2(b) as described here. If your Termination of Employment occurs before the Option vests under paragraph 2, the Option will vest on your Termination of Employment date, but only if your Termination of Employment is:

(a)      Because of your death, Disability, Early Retirement or Retirement *and* you have not received or will not be receiving severance pay from any Cigna company (whether under any severance benefit plan or any contract, agreement or arrangement); or

(b)      Upon a Change of Control.

## 4.      *Early Expiration upon Termination of Employment; Exceptions*

(a)      The Option will expire immediately upon your Termination of Employment (including a termination during an approved leave of absence) *unless* one of the exceptions described in paragraph 4(b) through (d) applies.

(b)      If (1) your Termination of Employment is because of your death, Disability or Retirement, and (2) you will not be receiving severance pay from any Cigna company (whether under any severance benefit plan or any contract, agreement or arrangement), then the Option will expire at 5:00 p.m. Philadelphia time on the Expiration Date.

(c)      If your Termination of Employment is because of your Early Retirement, and you will not be receiving severance pay from any Cigna company (whether under any severance benefit plan or any contract, agreement or arrangement), the Option will expire at 5:00 p.m. Philadelphia time on:

        (1)      The earlier of the Expiration Date or the third anniversary of your Termination of Employment date; or

        (2)      The Expiration Date if, within six months before your Termination of Employment date, you were an Executive Officer subject to the requirements of Section 16(a) of the Securities Exchange Act of 1934 ("Executive Officer").

(d)      If your Termination of Employment is Upon a Change of Control (of Cigna Corporation), the Option will expire on the earlier of the Expiration Date or three months after your Termination of Employment date.

## 5.    *Exercising the Option; Tax Withholding*

(a)      Cigna may limit your rights to exercise the Option and to sell any Shares you acquire by exercising the Option.  Your rights are subject to the terms of Cigna's Securities Transactions and Insider Trading Policy, and Cigna reserves the right, for any reason at any time, to suspend or delay action on any request you make to exercise the Option or sell the Shares.  To comply with legal requirements, Cigna may restrict the method by which you exercise the Option.

(b)      If, because of limitations imposed by applicable law, you cannot exercise the Option before it expires, then the Option will not expire on the date described in paragraph 4.  Instead, the Option Period will be extended temporarily until the earlier of (1) ten business days after the first date on which the Option again becomes exercisable without the limitations or (2) 5:00 p.m. Philadelphia time on the Expiration Date.

(c)      To exercise all or part of the Option, you must (1) complete and submit any required Option exercise form or electronic exercise instructions and (2) pay the Option Price and any required tax withholding.

(d)      You may pay the Option Price with cash.  If you pay with cash, you must also pay any applicable withholding tax liability in cash before Shares will be deposited in your Stock Account or delivered to you.

(e)      If you are a Cigna company employee when you exercise the Option, you may pay the Option Price with shares of Cigna Common Stock that are in your Stock Account if:

        (1)      you first purchased the shares on the open market; or

        (2)      at least six months have elapsed after the:

            (A)      grant date, if you received the shares as a grant of unrestricted Shares;

            (B)      vesting date, if you received them as a grant of Restricted Stock; or

            (C)      purchase date, if you bought them through a previous option exercise.

You will not be allowed to pay the Option Price with shares of Cigna Common Stock if Cigna in its sole discretion determines that it would risk adverse tax or accounting consequences as a result. If you are not a Cigna company employee when you exercise the Option, or if your beneficiary or estate exercises the Option, the Option Price cannot be paid in shares of stock.

(f)      If you pay the Option Price in shares of Cigna Common Stock:

        (1)      You must exercise the Option for at least 50 Shares.

            If there are not at least 50 Shares underlying the Option, you must exercise the Option for all the Shares.

        (2)      You must pay any applicable tax-withholding obligation.

Cigna reserves the right to withhold from the Shares you purchase enough Shares to meet all or part of any applicable tax-withholding obligation.

If you are an Executive Officer when you exercise the Option, you may satisfy part of the withholding obligation by remitting to Cigna shares of Common Stock you have owned for at least six months as of the date the withholding obligation arises.

(g)     You may pay the Option Price through a cashless exercise of the Option.  Cigna reserves the right to change the rules that apply to cashless exercises, or end your ability to do a cashless exercise, at any time.

**6.      *Book-Entry Shares***

Cigna (or a custodian appointed by Cigna) will hold any Shares you, your beneficiary or estate acquire upon exercise of the Option in book-entry form in a Stock Account.  That is, a record of Share ownership will be kept electronically, and you will not risk losing any Share certificates.  A Share certificate will be issued to you only if you ask for one, but not if you have engaged in a Violation (described in paragraph 7(c)).

**7.      *Conditions of Grant***

(a)     By accepting the grant, you are agreeing:

(1)     to the Inventions provision in paragraph 7(b); and

(2)     not to engage in any Violation described in paragraph 7(c)

You understand and agree that your agreement not to engage in any Violation and to the Inventions provision are a material part of the inducement for Cigna's granting you the Option and essential pre-conditions to your eligibility to exercise any rights associated with the Option and retain any benefit from exercising the Option.

(b)     ***Inventions***

(1)     You hereby assign and promise to assign to Cigna companies or their designee, all your right, title, and interest in and to any and all current and future Inventions.  You acknowledge that all original works of authorship which you make (whether alone or jointly with others) within the scope of your Cigna company employment and which are protectable by copyright are "works made for hire," as defined in the United States Copyright Act.

(2)     You agree to (i) maintain and make available adequate current records, including electronic records, notes, sketches and drawings, of all Inventions you make, and (ii) disclose such Inventions in writing upon request. These records will remain the property of Cigna companies.

(3)     If in the course of your Cigna company employment, you incorporate a Prior Invention into any Cigna company work product, you grant Cigna companies a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to use the Prior Invention as part of or in connection with the work product. Within 45 days after the date of this grant, you agree to notify Cigna Shareholder Services (shareholderservices@Cigna.com) of any Prior Inventions that you are not assigning under this paragraph 7(b).

(4)     "Inventions" means any and all inventions, original works of authorship, developments, concepts, sales methods, improvements, trade secrets, or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you have or will solely or jointly conceive, develop, reduce to practice, or fix during your Cigna company employment.

(5)     "Prior Inventions" means all inventions, original works of authorship, developments,

concepts, sales methods, improvements, trade secrets or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you conceived, developed, reduced to practice or fixed before your Cigna company employment and which belong to you.

(c)     *Violation*

You will engage in a "Violation" if, directly or indirectly, you engage in any misconduct described in paragraph 7(c)(1) below or you break any of the "Promises" in paragraphs 7(c)(2) through (7) below:

(1)     **Misconduct**:

(A)     You have a Termination of Employment initiated by a Cigna company because of your misconduct, as that term is defined in Cigna's Code of Ethics, Standards of Conduct or other employment policies.

(B)     You do anything else while an employee of any Cigna company that is not discovered by the company until after your Termination of Employment and that would, if you had still been employed at the time of the discovery, be reason for your Termination of Employment for misconduct, as described above.

(2)     **Promise Not To Compete against Cigna Companies**:

(A)     If you are in **Career Band 6 or higher** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 7(c)(2)(C) below) at any time during the period that starts on the Grant Date and ends 12 months after your Termination of Employment.

You acknowledge and agree that:

(i)     Cigna's business competes on a global basis;

(ii)    Cigna's sales and marketing plans are for continued expansion throughout the United States of America and globally;

(iii)   You have had access to and received Confidential Information (described in paragraph 7(c)(5)(B) below); and

(iv)    The time restrictions and global nature of this non-competition restriction are reasonable and necessary to protect Cigna's business and Confidential Information.

(B)     If you are in **Career Band 5 or below** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 7(c)(2)(C) below) at any time during the period that starts on the Grant Date and ends 12 months after your Termination of Employment, if that work is similar to, and within the same geographic area as, the work you performed, or for which you had responsibility, at any Cigna company at any time during the six-month period that ends on your Termination of Employment date.

6

For example:

(i)      If you are a sales employee and your sales territory at any time during your last six months of Cigna company employment is Pennsylvania, New Jersey, and New York, this paragraph 7(c)(2)(B) would apply to you only if you work in a sales position for a Cigna Competitor and only to the extent your new sales territory is Pennsylvania, New Jersey, and/or New York;

(ii)     If you are an underwriter with nationwide responsibilities at any time during your last six months of Cigna company employment, and you seek a job with a Cigna Competitor as an underwriter, the restrictions in paragraph 7(c)(2)(B) would be nationwide in scope; or

(iii)    If you work in a particular division or segment of Cigna, you would not be permitted to work in a similar division or segment for a Cigna Competitor where the work you are expected to perform for the competitor is similar to the work you performed for any Cigna company.

You acknowledge and agree that you have had access to and received Confidential Information (described in paragraph 7(c)(5)(B) below) and the above time and geographic restrictions are reasonable and necessary to protect Cigna's business and Confidential Information.

(C)     "Cigna Competitor" means any business that competes directly or indirectly with any Cigna company's product or service.

(D)     The Promise in paragraph 7(c)(2) not to compete against Cigna companies after Termination of Employment will not apply and Cigna will not enforce it with respect to Cigna company employment in California.

(3)     **Promise Not To Solicit or Hire Cigna Company Employees**:

(A)     You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i)      Solicit any employee of any Cigna company to terminate his/her employment with, or otherwise cease his/her relationship, contractual or otherwise, with that Cigna company; or

(ii)     Hire any Cigna company employee.

(B)     This paragraph 7(c)(3) will not apply to applications for employment submitted voluntarily by any Cigna employee, in response to a general advertisement or otherwise, so long as neither you, nor anyone acting on your behalf or in response to information provided by you, otherwise Solicits the employees to leave Cigna.

(C)     To "Solicit" means to entice, encourage, persuade, or solicit, or to attempt to entice, encourage, persuade or solicit.

(4)     **Promise Not To Solicit Cigna Company Customers**:

(A)     You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i)      Solicit any Cigna company customer to end an existing relationship, contractual or otherwise, with that Cigna company;

<table>
<tr><td>(ii)</td><td>Solicit any Cigna company customer to reduce the volume of their business dealings with Cigna; or</td></tr>
</table>

        (iii)    Solicit any potential Cigna company customer to enter into any business arrangements with you or any business which you may become employed by, or affiliated in any way with, after leaving any Cigna company, if such business arrangements would compete in any way with any business that Cigna company has conducted, or has been planning to conduct, during the 12-month period ending on the date of the Violation.

(B)    The Promise in paragraph 7(c)(4)(A) above applies only to a customer or potential customer with whom you had any Material Contact while employed by any Cigna company. "Material Contact" means you:

        (i)    Had business dealings with the customer on behalf of any Cigna company within the three-year period ending on the date of the Solicitation;

        (ii)    Were responsible for supervising or coordinating the dealings between any Cigna company and the customer or potential customer anytime during the three-year period ending on the date of the Solicitation; or

        (iii)    Obtained, at any time, trade secrets or confidential information about a customer or potential customer with whom you had contact as a result of your employment by any Cigna company.

(C)    "Solicit" is defined in paragraph 7(c)(3)(C).

(D)    The Promise in paragraph 7(c)(4) not to solicit Cigna company customers after Termination of Employment will not apply and Cigna will not enforce it with respect to Cigna company employment in California unless the activity involves the use of Confidential Information.

**(5)    Promise Not To Disclose Cigna Companies' Confidential Information**:

(A)    You Promise not to disclose any Confidential Information to any third-party at any time, whether during or after your employment, without the prior written consent of Cigna (except to the extent required by an order of a court having competent jurisdiction or a properly issued subpoena) unless that Confidential Information was previously disclosed publicly by Cigna or has become public knowledge (other than by your disclosure). Nothing in this Confidentiality provision prohibits you or your counsel from initiating communications directly with, or responding to any inquiry from, or providing testimony before any self-regulatory organization or any state or federal regulatory authority. In the event that you are required to disclose Confidential Information pursuant to a subpoena or other law or regulation, you shall notify Cigna promptly upon learning that you have been subpoenaed or are otherwise required or compelled to divulge Confidential Information.

(B)    "Confidential Information" means any Cigna company trade secrets, confidential information, or proprietary materials, including but not limited to customer lists, financial records, marketing plans and sales plans.

**(6)    Promise to Cooperate With Cigna in Investigations or Litigation**:

(A)    You Promise that, at any time after your Termination of Employment, you will cooperate with Cigna in (i) all investigations of any kind, (ii) helping to prepare

and review documents and meeting with Cigna attorneys, and (iii) providing truthful testimony as a witness or a declarant during discovery and/or trial in connection with any present or future court, administrative, agency, or arbitration proceeding involving any Cigna company and with respect to which you have relevant information.

(B)     Cigna agrees that it will reimburse you, upon production of appropriate receipts and in accordance with Cigna's then existing Business Travel Reimbursement Policy, the reasonable business expenses (including air transportation, hotel, and similar expenses) incurred by you in connection with such assistance. You must present to Cigna for reimbursement all receipts for those expenses within 45 days after you incur the expenses.

(7)     **Promise to Assist with Patent and Copyright Registrations**:

(A)     You Promise that, during your Cigna company employment and after your Termination of Employment, you will assist Cigna companies, should they request and at Cigna's expense, to secure their rights (including any copyrights, patents, trademarks or other intellectual property rights) in or relating to the Inventions in any and all countries, including by:

(i)     disclosing to Cigna Companies all pertinent information and data; and

(ii)     executing all applications, assignments or other instruments necessary to apply for and obtain these rights and assign them to Cigna companies.

(d)     (1)     If you were an Executive Officer at any time during the 24-month period before the date of the Violation, the People Resources Committee will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment (described in paragraph 8) and to impose conditions on any waiver.

(2)     Otherwise, Cigna's Senior Human Resources Officer, or his or her designee, will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment and to impose conditions on any waiver.

(3)     Determinations of the People Resources Committee, Cigna's Senior Human Resources Officer, or his or her designee, will be final and binding on all parties.

## 8.     *Consequences of a Violation: Payment to Cigna*

**Important: This paragraph 8 is not Cigna's only remedy for a Violation. Cigna may seek any additional legal or equitable remedy, including an injunction described in paragraph 9, for a Violation.**

(a)     If you engage in any Violation at any time, Cigna will cancel any part of the Option you have not yet exercised.

(b)     You must immediately make the Payment described in paragraph 8(c) to Cigna in the manner described in paragraph 8(d) if:

(1)     You engage in a Violation described in paragraph 7(c)(2) (compete against Cigna), 7(c)(3) (Solicit or hire Cigna employees) or 7(c)(4) (Solicit Cigna customers), either while you are a Cigna company employee or within 12 months after your Termination of Employment; or

(2)     You engage in a Violation described in paragraph 7(c)(1) (misconduct), 7(c)(5) (disclose Confidential Information), 7(c)(6) (fail to cooperate), or 7(c)(7) (fail to assist) **at any**

**time**.

(c)     The Payment requirement applies only to the part of the Option, if any, that you exercise within the 24-month period ending on the date of the Violation.  "Payment" means the amount equal to:

   (1)     the number of Shares you acquire when you exercise the Option;

   multiplied by

   (2)     the excess of (A) the Fair Market Value on the date you exercise the Option over (B) the Option Price;

   plus

   (3)     the total amount of all dividends, if any, paid on those Shares through the date of the Payment.

(d)     Cigna will recover the Payment from you by any means permitted by applicable law, at the sole discretion of Cigna management, including but not limited to any or all of the following methods:

   (1)     If you have any Shares in a Stock Account or in any other account in book-entry form when a Violation occurs, Cigna will take back from you the whole number of Shares that has a total Fair Market Value as of the date of the Violation up to, but not more than, the Payment amount.

   (2)     Cigna will, to the extent permitted by applicable law, reduce:

      (A)     The amount of any payments that any Cigna company owes you for any reason (including without limit any payments owed to you under any nonqualified retirement, deferred compensation or other plan or arrangement) by

      (B)     The Payment amount.

      This reduction will not occur until the date a future payment to you is due.

   (3)     Cigna will send you a written notice and demand for all or part of any Payment amount. Within 30 days after you receive that notice and demand, you must make the Payment to Cigna.

**9.      *Consequences of a Violation: Injunction***

You agree that:

(a)     Cigna will be entitled to ask a court of competent jurisdiction to issue an order (an injunction) that requires you to take action and/or that prohibits you from taking action, as needed to ensure that you keep all of the Promises described in paragraph 7(c)(2) through (7), and Cigna will not be required to post a bond in order to seek or obtain the injunction;

(b)     Any breach or threatened breach of any of the Promises would cause irreparable injury to Cigna, and monetary damages alone would not provide an adequate remedy; and

(c)     The remedies described in paragraph 9(a) are in addition to any other rights and remedies Cigna may have at law or in equity.

**10.      *Consequences of a Violation: Designation of Cigna as Agent and Attorney-in-Fact for Inventions***

You agree that:

(a)     If Cigna Companies are unable to obtain your signature on any instruments needed to secure their rights in or relating to the Inventions pursuant to paragraph 7(c)(7)(A); then

(b)    You hereby appoint Cigna companies and their duly authorized officers as your agents and attorneys in fact to act for and on your behalf to execute and file any documents and take other actions as may be necessary for Cigna companies to secure those rights.

## 11.    *Agreeing to Assume Risks*

Cigna, its stock plan administrator and its transfer agent will try to process your stock transaction requests in a timely manner; however, Cigna makes no promises or guarantees to you relating to the market price of the Shares or to the time it may take to act on your request to exercise the Option, sell the Shares or deliver stock certificates.  By accepting this Option grant:

(a)    You acknowledge that the action you request may not be completed until several days (or in the case of delivery of stock certificates, several weeks) after you submit it.

(b)    You agree to assume the risks, including the risk that the market price of the Shares may change, related to delays described in paragraph 11(a):

(1)    Between the time you submit an Option exercise form and the time your Option is actually exercised;

(2)    Between the time you ask for any Shares to be sold and the time your Shares are actually sold; and

(3)    Between the time you ask for stock certificates to be delivered to you or your broker and the time the certificates are delivered.

## 12.    *Applicable Law*

You understand and agree that:

(a)    The terms and conditions of this Option grant (including any Violation and the consequences of any Violation) and all determinations made under the Option Grant Agreement, the Plan, and these Terms and Conditions will be interpreted under the laws of the Commonwealth of Pennsylvania, without regard to its conflict of laws rule;

(b)    Any dispute about any of the Promises (described in paragraph 7(c)), if not resolved by agreement between you and Cigna, will be resolved exclusively in a federal or state court in the Commonwealth of Pennsylvania where venue is appropriate and that has subject matter jurisdiction over the dispute (collectively, "Pennsylvania Courts");

(c)    Pennsylvania is a convenient forum for resolving any dispute about the Promises; and

(d)    You and Cigna consent to the exercise of personal jurisdiction over the parties by a Pennsylvania Court in any dispute related to the Promises.

**13.** *Arbitration*

You agree and understand that:

(a)     Except as provided in paragraph 12, any dispute over any of the terms and conditions that apply to this Option grant will be resolved exclusively under the Cigna Employment Dispute Arbitration Policy and its Rules and Procedures as may be in effect when the dispute arises;

(b)     You are waiving your right to have those disputes decided by a judge or jury in a court of law, and instead you are agreeing to submit those disputes exclusively to mandatory and binding final arbitration;

(c)     While you or Cigna may seek emergency, temporary or permanent injunctive relief from a court in accordance with applicable law, after the court has issued a decision about that relief, you and Cigna will submit the dispute to final and binding arbitration under the Cigna Employment Dispute Arbitration Policy; and

(d)     This arbitration provision will not apply to any dispute related to the Promises.

**14.** *Miscellaneous*

(a)     If a court of competent jurisdiction determines that any provision of these Terms and Conditions is unenforceable as written, that provision will be enforceable to the maximum extent permitted by law and will be reformed by the court to make the provision enforceable in accordance with Cigna's intent and applicable law.

(b)     Cigna's failure to enforce any provision of this Option grant will not be interpreted as a waiver of its right to enforce that provision in the future.

**15.** *Acceptance*

**If you disagree with any of these Terms and Conditions, including those in paragraphs 7, 8 9, and 10, YOU MUST NOT ACCEPT THE OPTION GRANT.** If you sign the Option grant, or acknowledge your acceptance electronically or otherwise, you will be:

(a)     Agreeing to all the terms and conditions of the Option grant including the Inventions provision in paragraph 7(b) and the Promises in paragraph 7(c);

(b)     Warranting and representing to Cigna that you are, and will remain, in full compliance with those terms and conditions;

(c)     Authorizing Cigna to recover the Payment described in paragraph 8 and seek an injunction described in paragraph 9, if you engage in a Violation; and

(d)     Appointing Cigna as your agent and attorney-in-fact to secure rights with respect to Inventions if unable to obtain your signature as described in paragraph 10.

2015 Option Grant Agreement including Terms and Conditions

`F8YA8G9G`

`03/22/2015 05:19 pm U.S. Eastern Standard Time`

`ACCEPTED`

# EXHIBIT E

Cigna Corporation

Cigna Long-Term Incentive Plan:  Strategic Performance Share Grant Agreement

Cigna Corporation ("Cigna") has granted you the number of strategic performance shares set forth below in this Strategic Performance Share Grant Agreement ("Strategic Performance Share Grant" or "Grant") under the Cigna Long-Term Incentive Plan ("Plan").  The date of your Strategic Performance Share Grant ("Grant Date") is also indicated below. The award is subject to the provisions of the Plan and the Terms and Conditions below.

You should carefully read all the terms and conditions of this Strategic Performance Share Grant and be sure you understand what they say and what your responsibilities and obligations are before you click on the ACCEPT button to acknowledge and agree to this Grant.

If you are not willing to agree to all of the Grant terms and conditions, do not accept the Grant and do not click the ACCEPT button for the Strategic Performance Share Grant Acknowledgment and Agreement.  If you do not accept the Grant, you will not receive the benefits of the Grant.

If you do click on the ACCEPT button, you are accepting and agreeing to all of the terms and conditions of this Strategic Performance Share Grant.

Participant: **KAREN   KOCHER**
Grant Type:  RSU
Plan Name:  Cigna Long-Term Incentive Plan

Grant Date: **02/25/2015**
Total Granted: **193**
Grant Price: **$0.00**          (USD)

Vesting Schedule

| Shares Granted | Approximate Vest Date |
|---|---|
| 100% of Shares Granted | 03/05/2018 |

**Please Note:** The date shown in the Vesting Schedule chart above is not your actual vesting date. It is an approximation of the expected vesting date and is provided due to systems requirements. In accordance with the Terms and Conditions of your Strategic Performance Share Grant, the actual vesting date will be determined by the People Resources Committee of the Board of Directors.

You should also read the Plan Document and Key Contacts and Reference Materials document (attached to the Plan) and indicate that you have done so and agree to the terms by checking the appropriate box in the online grant acceptance process.  The Key Contacts and Reference Materials document contains information on how to get important award information (such as the Plan Prospectus, Tax Considerations and Cigna's Securities Transactions and Insider Trading Policy) and whom to contact if you have questions.

Please be aware that the Cigna Securities Transactions and Insider Trading Policy places restrictions on your transactions in Cigna securities and requires certain Cigna employees to obtain advance permission from the Corporate Secretary before executing transactions in Cigna securities.

If you have questions about your award, please contact Cigna Shareholder Services by email at shareholderservices@cigna.com or by phone at 215.761.3516.

Important Notice:  Strategic Performance Share Grant Acknowledgment and Agreement

By clicking on the ACCEPT button, I:
1.  Acknowledge and represent to Cigna that I have:
    a.  received the Strategic Performance Grant;
    b.  read and understand its terms and conditions, which include, among other things, restrictive covenants such as non-competition, customer and employee non-solicitation and non-disclosure provisions and litigation cooperation and intellectual property assignment and assistance provisions; and
    c.  received answers to any questions I had about the Grant and its terms and conditions, including the restrictive covenants.

2.  Understand and agree that:
    a.  Pennsylvania law governs the interpretation and construction of the Grant; and
    b.  any controversy or proceeding arising out of or relating to the restrictive covenants in the Grant will be brought exclusively before a federal or state court in the Commonwealth of Pennsylvania where venue is appropriate and that has subject matter jurisdiction (collectively, "Pennsylvania Courts").

3.  Consent to Pennsylvania Courts exercising personal jurisdiction over me in any dispute about the restrictive covenants.

Scroll down for the TERMS AND CONDITIONS of the Strategic Performance Share Grant.

## TERMS AND CONDITIONS OF YOUR 2015 GRANT
## OF STRATEGIC PERFORMANCE SHARES

These Terms and Conditions are an important part of your grant of Strategic Performance Shares from Cigna Corporation (Cigna). The terms of your Strategic Performance Share grant are in: (a) the electronic Strategic Performance Share Grant Agreement above, (b) these Terms and Conditions (including Schedule I), and (c) the Cigna Long-Term Incentive Plan (Plan).

Certain words in this document with first letters capitalized are defined in the Strategic Performance Share Grant Agreement above, these Terms and Conditions or Article 2 of the Plan. This grant is void if you are not an employee of Cigna or a Subsidiary (a Cigna company) on the Grant Date.

**1.**      *Strategic Performance Shares; Performance Period*

Each Strategic Performance Share (Performance Share) represents a conditional right to receive one share of Cigna Common Stock, subject to the performance, vesting and payment provisions described below. The Performance Period applicable to your award is January 1, 2015 to December 31, 2017 (the Performance Period).

**2.**      *Restrictions*

Performance Shares are subject to certain Restrictions from the Grant Date until the Payment Date described in paragraph 4. The Restrictions are:

(a)      You cannot sell or transfer the Performance Shares to anyone;

(b)      Unless an exception applies (described in paragraph 4), you will forfeit (lose your right to) your unvested Performance Shares and all related rights immediately upon your Termination of Employment; and

(c)      Of the Performance Shares awarded to you (Shares Awarded), the number of Performance Shares, if any, that you earn and for which you may receive payment (Shares Earned) is subject to the performance criteria described in Schedule I.

Article 10 of the Plan describes these Restrictions in more detail. In addition to these Restrictions, you must also comply with all the terms and conditions of this grant, including those contained in this document.

**3.**      *Performance Shares Earned*

(a)      Schedule I specifies the performance criteria applicable to your Shares Awarded. Except as provided in paragraph 4, after the end of the Performance Period, the Committee shall determine whether and to what extent these performance criteria have been achieved for purposes of determining the Vesting Percentage applicable to your Performance Shares (Shares Earned Percentage).

(b)      Any Shares Awarded that are not Shares Earned after giving effect to the Committee's determinations under this paragraph 3 shall terminate and become null and void immediately following such determinations.

**4.**      *Eligibility for Payment*

(a)      Except as described in paragraph 4(b) and subject to paragraph 4(c) and paragraph 3, the Restrictions on the Performance Shares will end (your Performance Shares will vest) on the Payment Date described in paragraph 5, but only if you remain continuously employed

by a Cigna company until the Payment Date and comply with all the terms and conditions of this grant, including those contained in this document.

(b)    Notwithstanding paragraph 4(a) and subject to paragraph 4(c) and paragraph 3, if your Termination of Employment is before the Payment Date:

    (1)    Your Performance Shares will vest upon your Termination of Employment if it is Upon a Change of Control (of Cigna Corporation). If your Performance Shares vest under this paragraph 4(b)(1), the Shares Earned Percentage shall be the greatest of:

    (a) 100%;

    (b) The Shares Earned Percentage for the Performance period that ended immediately before your Termination upon a Change of Control; or

    (c) The average of the Shares Earned Percentages established by the Committee for the last two Performance Periods that ended before your Termination upon a Change of Control.

    (2)    Your Performance Shares will vest upon your Termination of Employment if it is due to your death. If your Performance Shares vest under this paragraph 4(b)(2), the Shares Earned Percentage shall be 100%.

    (3)    Your Performance Shares will vest upon your Termination of Employment if it is due to your Disability.

    (4)    Your Performance Shares *may* vest upon your Termination of Employment if it is due to your Early Retirement or Retirement and *if* the Committee or its designee (including Cigna's senior human resources officer) approves the early vesting before your Termination of Employment.  If you want to be considered for early vesting when you retire, you must ask your manager or human resources representative far enough in advance of your retirement so there is time to process your request.

(c)    You must comply in all respects with the terms and conditions of this grant, including those contained in these Terms and Conditions.

**5.**    *Payment*

(a)    Except as provided in paragraph 5(b), below, your vested Shares Earned under this grant will be paid in the year following the close of the Performance Period on the date within such year specified by the Committee (Payment Date).

(b)    Any Performance Shares that vest on account of your death will be paid during the 90 day period immediately following your death to your estate.

(c)    For each Share Earned that vests, Cigna will make payment by issuing one Share as of the Payment Date.  Until the Shares are issued to you, you will not be a Cigna shareholder, not have the right to vote the Shares, and not receive actual dividends.

**6.**    *Taxes*

Section 15.6 of the Plan shall apply to any tax withholding that may be required by law for Performance Shares or Shares.  Upon the vesting or payment of any Performance Share, Cigna reserves the right to withhold enough newly-issued Shares to cover all or part of any applicable tax withholding.

**7.** *Book-Entry Shares; Sale of Shares*

(a) Upon payment of the Shares as described in paragraph 5, Cigna (or a custodian appointed by Cigna) will hold your Shares in book-entry form in a Stock Account. That is, a record of your Share ownership will be kept electronically, and you will not risk losing any Share certificates. A certificate for vested Shares will be issued to you only if you ask for one, but not if you have engaged in a Violation (described in paragraph 8(c)).

(b) You may generally sell or transfer the Shares at any time, but your right to sell the Shares may be limited by Cigna. This right is subject to the terms of Cigna's Securities Transactions and Insider Trading Policy, and Cigna reserves the right, for any reason at any time, to suspend or delay action on any request you make to sell the Shares.

**8.** *Conditions of Grant*

(a) By accepting the grant, you are agreeing:

    (1) to the Inventions provision in paragraph 8(b); and

    (2) not to engage in any Violation described in paragraph 8(c).

You understand and agree that your agreement to the Inventions provision and not to engage in any Violation are a material part of the inducement for Cigna's granting you the Performance Shares and essential pre-conditions to your eligibility to exercise any rights associated with the grant and retain any benefit from the vesting of the Performance Shares and issuance of the Shares.

(b) *Inventions*

    (1) You hereby assign and promise to assign to Cigna companies or their designee, all your right, title, and interest in and to any and all current and future Inventions. You acknowledge that all original works of authorship which you make (whether alone or jointly with others) within the scope of your Cigna company employment and which are protectable by copyright are "works made for hire," as defined in the United States Copyright Act.

    (2) You agree to (i) maintain and make available adequate current records, including electronic records, notes, sketches and drawings, of all Inventions you make, and (ii) disclose such Inventions in writing upon request. These records will remain the property of Cigna companies.

    (3) If in the course of your Cigna company employment, you incorporate a Prior Invention into any Cigna company work product, you grant Cigna companies a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to use the Prior Invention as part of or in connection with the work product. Within 45 days after the date of this grant, you agree to notify Cigna Shareholder Services (shareholderservices@Cigna.com) of any Prior Inventions that you are not assigning under this paragraph 8(b).

    (4) "Inventions" means any and all inventions, original works of authorship, developments, concepts, sales methods, improvements, trade secrets, or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you have or will solely or jointly conceive, develop, reduce to practice, or fix during your Cigna company employment.

5

(5)    "Prior Inventions" means all inventions, original works of authorship, developments, concepts, sales methods, improvements, trade secrets or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you conceived, developed, reduced to practice or fixed before your Cigna company employment and which belong to you.

(c)    ***Violation***

You will engage in a "Violation" if, directly or indirectly, you engage in any misconduct described in paragraph 8(c)(1) below or you break any of the "Promises" in paragraphs 8(c)(2) through (7) below:

(1)    **Misconduct**:

(A)    You have a Termination of Employment initiated by a Cigna company because of your misconduct, as that term is defined in Cigna's Code of Ethics, Standards of Conduct or other employment policies.

(B)    You do anything else while an employee of any Cigna company that is not discovered by the company until after your Termination of Employment and that would, if you had still been employed at the time of the discovery, be reason for your Termination of Employment for misconduct, as described above.

(2)    **Promise Not To Compete against Cigna Companies**:

(A)    If you are in **Career Band 6 or higher** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 8(c)(2)(C) below) at any time during the period that starts on the Grant Date and ends 12 months after your Termination of Employment.

You acknowledge and agree that:

(i)    Cigna's business competes on a global basis;

(ii)    Cigna's sales and marketing plans are for continued expansion throughout the United States of America and globally;

(iii)    You have had access to and received Confidential Information (described in paragraph 8(c)(5)(B) below); and

(iv)    The time restrictions and global nature of this non-competition restriction are reasonable and necessary to protect Cigna's business and Confidential Information.

(B)    If you are in **Career Band 5 or below** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 8(c)(2)(C) below) at any time during the period that starts on the Grant Date and ends 12 months after your Termination of Employment, if that work is similar to, and within the same geographic area as, the work you performed, or for which you had

responsibility, at any Cigna company at any time during the six-month period that ends on your Termination of Employment date.

For example:

(i)    If you are a sales employee and your sales territory at any time during your last six months of Cigna company employment is Pennsylvania, New Jersey, and New York, this paragraph 8(c)(2)(B) would apply to you only if you work in a sales position for a Cigna Competitor and only to the extent your new sales territory is Pennsylvania, New Jersey, and/or New York;

(ii)    If you are an underwriter with nationwide responsibilities at any time during your last six months of Cigna company employment, and you seek a job with a Cigna Competitor as an underwriter, the restrictions in paragraph 8(c)(2)(B) would be nationwide in scope; or

(iii)    If you work in a particular division or segment of Cigna, you would not be permitted to work in a similar division or segment for a Cigna Competitor where the work you are expected to perform for the competitor is similar to the work you performed for any Cigna company.

You acknowledge and agree that you have had access to and received Confidential Information (described in paragraph 8(c)(5)(B) below) and the above time and geographic restrictions are reasonable and necessary to protect Cigna's business and Confidential Information.

(C)    "Cigna Competitor" means any business that competes directly or indirectly with any Cigna company's product or service.

(D)    The Promise in paragraph 8(c)(2) not to compete against Cigna companies after Termination of Employment will not apply and Cigna will not enforce it with respect to Cigna company employment in California.

(3)    **Promise Not To Solicit or Hire Cigna Company Employees**:

(A)    You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i)    Solicit any employee of any Cigna company to terminate his/her employment with, or otherwise cease his/her relationship, contractual or otherwise, with that Cigna company; or

(ii)    Hire any Cigna company employee.

(B)    This paragraph 8(c)(3) will not apply to applications for employment submitted voluntarily by any Cigna employee, in response to a general advertisement or otherwise, so long as neither you, nor anyone acting on your behalf or in response to information provided by you, otherwise Solicits the employees to leave Cigna.

(C)    To "Solicit" means to entice, encourage, persuade, or solicit, or to attempt to entice, encourage, persuade or solicit.

(4)    **Promise Not To Solicit Cigna Company Customers**:

(A)    You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

    (i)    Solicit any Cigna company customer to end an existing relationship, contractual or otherwise, with that Cigna company;

    (ii)    Solicit any Cigna company customer to reduce the volume of their business dealings with Cigna; or

    (iii)    Solicit any potential Cigna company customer to enter into any business arrangements with you or any business which you may become employed by, or affiliated in any way with, after leaving any Cigna company, if such business arrangements would compete in any way with any business that Cigna company has conducted, or has been planning to conduct, during the 12-month period ending on the date of the Violation.

(B)    The Promise in paragraph 8(c)(4)(A) above applies only to a customer or potential customer with whom you had any Material Contact while employed by any Cigna company.  "Material Contact" means you:

    (i)    Had business dealings with the customer on behalf of any Cigna company within the three-year period ending on the date of the Solicitation;

    (ii)    Were responsible for supervising or coordinating the dealings between any Cigna company and the customer or potential customer any time during the three-year period ending on the date of the Solicitation; or

    (iii)    Obtained, at any time, trade secrets or confidential information about a customer or potential customer with whom you had contact as a result of your employment by any Cigna company.

(C)    "Solicit" is defined in paragraph 8(c)(3)(C).

(D)    The Promise in paragraph 8(c)(4) not to solicit Cigna company customers after  Termination of Employment will not apply and Cigna will not enforce it with respect to Cigna company employment in California unless the activity involves the use of Confidential Information.

(5)    **Promise Not To Disclose Cigna Companies' Confidential Information**:

(A)    You Promise not to disclose any Confidential Information to any third-party at any time, whether during or after your employment, without the prior written consent of Cigna (except to the extent required by an order of a court having competent jurisdiction or a properly issued subpoena) unless that Confidential Information was previously disclosed publicly by Cigna or has become public knowledge (other than by your disclosure). Nothing in this Confidentiality provision prohibits you or your counsel from initiating communications directly with, or responding to any inquiry from, or providing testimony before any self-regulatory organization or any state or federal regulatory authority.  In the event that you are required to disclose Confidential Information pursuant to a subpoena or other law

or regulation, you shall notify Cigna promptly upon learning that you have been subpoenaed or are otherwise required or compelled to divulge Confidential Information.

    (B)    "Confidential Information" means any Cigna company trade secrets, confidential information, or proprietary materials, including but not limited to customer lists, financial records, marketing plans and sales plans.

(6)    **Promise to Cooperate With Cigna in Investigations or Litigation**:

    (A)    You Promise that, at any time after your Termination of Employment, you will cooperate with Cigna in (i) all investigations of any kind, (ii) helping to prepare and review documents and meeting with Cigna attorneys, and (iii) providing truthful testimony as a witness or a declarant during discovery and/or trial in connection with any present or future court, administrative, agency, or arbitration proceeding involving any Cigna company and with respect to which you have relevant information.

    (B)    Cigna agrees that it will reimburse you, upon production of appropriate receipts and in accordance with Cigna's then existing Business Travel Reimbursement Policy, the reasonable business expenses (including air transportation, hotel, and similar expenses) incurred by you in connection with such assistance. You must present to Cigna for reimbursement all receipts for those expenses within 45 days after you incur the expenses.

(7)    **Promise to Assist with Patent and Copyright Registrations**:

    (A)    You Promise that, during your Cigna company employment and after your Termination of Employment, you will assist Cigna companies, should they request and at Cigna's expense, to secure their rights (including any copyrights, patents, trademarks or other intellectual property rights) in or relating to the Inventions in any and all countries, including by:

        (i)    disclosing to Cigna Companies all pertinent information and data; and

        (ii)    executing all applications, assignments or other instruments necessary to apply for and obtain these rights and assign them to Cigna companies.

(d)    (1)    If you were an Executive Officer at any time during the 24-month period before the date of the Violation, the People Resources Committee will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment (described in paragraph 9) and to impose conditions on any waiver.

(2)    Otherwise, Cigna's Senior Human Resources Officer, or his or her designee, will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment and to impose conditions on any waiver.

(3)    Determinations of the People Resources Committee, Cigna's Senior Human Resources Officer, or his or her designee, will be final and binding on all parties.

**9.** *Consequences of a Violation: Payment to Cigna*

**Important: This paragraph 9 is not Cigna's only remedy for a Violation.  Cigna may seek any additional legal or equitable remedy, including an injunction described in paragraph 10, for a Violation.**

(a)     If you engage in any Violation at any time:

    (1)     You will immediately forfeit all unvested Performance Shares; and

    (2)     No payment will be made for any Performance Shares that have vested under paragraph 4(b) if the Violation occurs before the Payment Date.

(b)     You must immediately make the Payment described in paragraph 9(c) to Cigna in the manner described in paragraph 9(d) if:

    (1)     You engage in a Violation described in paragraph 8(c)(2) (compete against Cigna), 8(c)(3) (Solicit or hire Cigna employees) or 8(c)(4) (Solicit Cigna customers), either while you are a Cigna company employee or within 12 months after your Termination of Employment; or

    (2)     You engage in a Violation described in paragraph 8(c)(1) (misconduct), 8(c)(5) (disclose Confidential Information), 8(c)(6) (fail to cooperate) or 8(c)(7) (fail to assist) **at any time**.

(c)     "Payment" is the value you realize from any Performance Shares that are paid under paragraph 5 during the 12-month period ending on the date of the Violation.  The Payment will equal:

    (1)     The number of Performance Shares that are paid during that 12-month period;

        multiplied by

    (2)     The Fair Market Value of the Shares issued on the Payment Date for those Performance Shares;

        plus

    (3)     The total amount of all actual dividends, if any, paid to you on those Shares through the date of the Payment described in paragraph 9(d).

(d)     Cigna will recover the Payment from you by any means permitted by applicable law, at the sole discretion of Cigna management, including but not limited to any or all of the following methods:

    (1)     If you have any Shares in a Stock Account or in any other account in book-entry form when a Violation occurs, Cigna will take back from you the whole number of Shares that has a total Fair Market Value as of the date of the Violation up to, but not more than, the Payment amount.

    (2)     Cigna will, to the extent permitted by applicable law, reduce:

        (A)     The amount of any payments that any Cigna company owes you for any reason (including without limit any payments owed to you under any nonqualified retirement, deferred compensation or other plan or arrangement) by

        (B)     The Payment amount.

        This reduction will not occur until the date a future payment to you is due.

(3)    Cigna will send you a written notice and demand for all or part of any Payment amount.  Within 30 days after you receive that notice and demand, you must make the Payment to Cigna.

**10.**    ***Consequences of a Violation: Injunction***

You agree that:

(a)    Cigna will be entitled to ask a court of competent jurisdiction to issue an order (an injunction) that requires you to take action and/or that prohibits you from taking action, as needed to ensure that you keep all of the Promises described in paragraph 8(c)(2) through (7), and Cigna will not be required to post a bond in order to seek or obtain the injunction;

(b)    Any breach or threatened breach of any of the Promises would cause irreparable injury to Cigna, and monetary damages alone would not provide an adequate remedy; and

(c)    The remedies described in paragraph 10(a) are in addition to any other rights and remedies Cigna may have at law or in equity.

**11.**    ***Consequences of a Violation: Designation of Cigna as Agent and Attorney-in-Fact for Inventions***

You agree that:

(a)    If Cigna Companies are unable to obtain your signature on any instruments needed to secure their rights in or relating to the Inventions pursuant to paragraph 8(c)(7)(A); then

(b)    You hereby appoint Cigna companies and their duly authorized officers as your agents and attorneys in fact to act for and on your behalf to execute and file any documents and take other actions as may be necessary for Cigna companies to secure those rights.

**12.**    ***Agreeing to Assume Risks***

Cigna, its stock plan administrator and its transfer agent will try to process your stock transaction requests in a timely manner; however, Cigna makes no promises or guarantees to you relating to the market price of the Shares or to the time it may take to act on your request to sell the Shares or deliver stock certificates.  By accepting this Strategic Performance Share grant:

(a)    You acknowledge that the action you request may not be completed until several days (or in the case of delivery of stock certificates, several weeks) after you submit it.

(b)    You agree to assume the risks, including the risk that the market price of the Shares may change, related to delays described in paragraph 12(a):

(1)    Between the time you ask for any Shares to be sold and the time your Shares are actually sold; and

(2)    Between the time you ask for stock certificates to be delivered to you or your broker and the time the certificates are delivered.

**13.   *Applicable Law***

You understand and agree that:

(a)     The terms and conditions of this Strategic Performance Share grant (including any Violation and the consequences of any Violation) and all determinations made under the Strategic Performance Share Grant Agreement, the Plan, and these Terms and Conditions will be interpreted under the laws of the Commonwealth of Pennsylvania, without regard to its conflict of laws rule;

(b)     Any dispute about any of the Promises (described in paragraph 8(c)), if not resolved by agreement between you and Cigna, will be resolved exclusively in a federal or state court in the Commonwealth of Pennsylvania where venue is appropriate and that has subject matter jurisdiction over the dispute (collectively, "Pennsylvania Courts");

(c)     Pennsylvania is a convenient forum for resolving any dispute about the Promises; and

(d)     You and Cigna consent to the exercise of personal jurisdiction over the parties by a Pennsylvania Court in any dispute related to the Promises.

**14.   *Arbitration***

You agree and understand that:

(a)     Except as provided in paragraph 13, any dispute over any of the terms and conditions that apply to this Strategic Performance Share grant will be resolved exclusively under the Cigna Employment Dispute Arbitration Policy and its Rules and Procedures as may be in effect when the dispute arises;

(b)     You are waiving your right to have those disputes decided by a judge or jury in a court of law, and instead you are agreeing to submit those disputes exclusively to mandatory and binding final arbitration;

(c)     While you or Cigna may seek emergency, temporary or permanent injunctive relief from a court in accordance with applicable law, after the court has issued a decision about that relief, you and Cigna will submit the dispute to final and binding arbitration under the Cigna Employment Dispute Arbitration Policy; and

(d)     This arbitration provision will not apply to any dispute related to the Promises.

**15.   *Miscellaneous***

(a)     If a court of competent jurisdiction determines that any provision of these Terms and Conditions is unenforceable as written, that provision will be enforceable to the maximum extent permitted by law and will be reformed by the court to make the provision enforceable in accordance with Cigna's intent and applicable law.

(b)     Cigna's failure to enforce any provision of this Strategic Performance Share grant will not be interpreted as a waiver of its right to enforce that provision in the future.

**16.   *Acceptance***

**If you disagree with any of these Terms and Conditions, including those in paragraphs 8, 9, 10 and 11 YOU MUST NOT ACCEPT THE STRATEGIC PERFORMANCE SHARE GRANT.**  If you sign the Strategic Performance Share grant, or acknowledge your acceptance electronically or otherwise, you will be:

(a)     Agreeing to all the terms and conditions of the Strategic Performance Share grant including the Inventions provision in paragraph 8(b) and the Promises in paragraph 8(c);

(b)     Warranting and representing to Cigna that you are, and will remain, in full compliance with those terms and conditions;

(c)     Authorizing Cigna to recover the Payment described in paragraph 9 and seek an injunction described in paragraph 10, if you engage in a Violation; and

(d)     Appointing Cigna as your agent and attorney-in-fact to secure rights with respect to Inventions if unable to obtain your signature as described in paragraph 11.


2015 US SPS Grant Agreement including Terms and Conditions

Shares Awarded; Shares Earned

"Shares Awarded" is the number of Performance Shares granted to an eligible employee for the Performance Period. Shares Awarded are allocated at time of grant to the two weighted performance measures (the "Performance Measure Components") as follows: 50% to Total Shareholder Return and 50% to Adjusted Income from Operations Growth.

"Shares Earned" is determined after the end of the three-year Performance Period. Shares Earned will range from 0% to 200% of the Shares Awarded, and the actual number of Shares Earned will depend on the degree to which Cigna achieves the goals set at time of grant for each Performance Measure Component, as described below under Compensation Determination, and the PRC's exercise of downward discretion, if applied.

Performance Measurement

The two Performance Measure Components for the 2015-2017 Performance Period are:

- Cigna's Total Shareholder Return (TSR) relative to a peer group of industry competitors, and
- Adjusted Income from Operations Growth for the ongoing businesses .

The formulas described below under Compensation Determination will be used to determine the Shares Earned Percentage (called the Vesting Percentage in the Cigna Long-Term Incentive Plan). The determination is made separately for each set of Shares Awarded that is allocated to a Performance Measure Component. The formula for each Performance Measure Component includes a minimum performance threshold, below which the Shares Earned Percentage for that Performance Measure Component will be zero. In addition, the PRC has complete discretion to apply its judgment to the results generated by the formula for the TSR Performance Measure Component and make adjustments downward, as far down as 0%, in the Shares Earned Percentage. For the Adjusted Income from Operations component, the PRC will consider the CEO's recommendation and determine the Shares Earned percentage within the range of the applicable performance tier.

The PRC also has the right to adjust or change completely, in its sole discretion, the Performance Measures and/or the formulas for calculating the Shares Earned percentages if Cigna or one of the designated Peer Group companies is involved in any material merger, acquisition or divestiture during the Performance Period.

For the Total Shareholder Return Component, the designated industry competitors (the Peer Group) for the 2015-2017 Performance Period are: Aetna, AFLAC, Anthem, Hartford Financial Services, Health Net, Humana, Manulife Financial, MetLife, UnitedHealth, and Unum. These companies were determined to be Cigna's publicly-traded peers based upon business mix and other factors. If the Peer Group consolidates or otherwise decreases to fewer than 10, then the companies that are in the Morgan Stanley Healthcare Payor Index or its successor index at the end of the Performance Period, instead of the designated Peer Group, will be used to calculate the TSR Component.

Compensation Determination

The compensation to be paid for each SPS award (that is, the Shares Earned) is determined in a three-step process.

Step 1 – Calculate Total Shareholder Return Component

In determining the Shares Earned Percentage for the Total Shareholder Return Component, Cigna's three-year TSR for the 2015 -2017 Performance Period will be compared against the three-year TSRs for each member of the Peer Group (to the extent each member has a TSR for the full three-year period). The three-year TSR is the compound annual growth rate in share price over three years, with dividends treated as reinvested.

Cigna's TSR will be compared against those of Peer Group members to obtain a percentile ranking for Cigna's relative TSR. Any Peer Group company that is no longer a stand alone company at the end of the Performance Period will not be included in the results. In determining the Shares Earned Percentage for the TSR Component, the following matrix will be used. As indicated in the matrix, the relative TSR Target is the 50th percentile, and the Threshold relative TSR (below which no value will be allocated to the TSR component) is the 25th percentile.

| TSR Performance (percentile) | Shares Earned (% of Shares Awarded)* |
|---|---|
| Maximum ($\geq 85^{th}$) | 200% |
| Above Target (75th) | 175% |
| Target (50th) | 100% |
| Below Target (25th) | 25% |
| Threshold (e.g. $\leq 25^{th}$) | 0 |

* The Shares Earned percentage between defined relative TSR performance points is interpolated; however, there are no Shares Earned for performance below the 25th percentile. For example, if Cigna's TSR is at the 66th percentile, under the formula, 148% of shares would be earned.

Step 2 – Calculate Adjusted Income from Operations Growth Component

In determining the Shares Earned Percentage for the Adjusted Net Income from Operations Growth Component, the following matrix will be used. Management will make a recommendation to the PRC regarding the Shares Earned within the range. It is important to note that the maximum Shares Earned for each performance level is the top end of the range, but the PRC has downward discretion in each level to adjust the component value down to the lowest percentage of the range.

| Adjusted Income from Operations Growth [*] (Based on 2014 Actual) | Shares Earned (% of Shares Awarded) |
|---|---|
| Cumulative adjusted income from operations over the three-year period calculated assuming a compound annual growth rate of 15% or greater | 160% - 200% |
| Cumulative adjusted income from operations over the three-year period calculated assuming a compound annual growth rate of 9% to 15% | 120%- 160% |
| Cumulative adjusted income from operations over the three-year period calculated assuming a compound annual growth rate of 4% to 9% | 80% - 120% |
| Cumulative adjusted income from operations over the three-year period calculated assuming a compound annual growth rate of 1% to 4% | 35% - 80% |

[*] The assumed compound annual growth rates are used to define dollar targets for each performance range. Achievement of the performance goal is measured in actual dollars, not percentage growth.

Step 3 - Determine the Total Shares Earned

The number of Shares Awarded to an award recipient for the Performance Period that was allocated to each Performance Measure Component is multiplied by the approved Shares Earned Percentage for that Component as follows:

| | | | Steps 1 and 2 | | Step 3 |
|---|---|---|---|---|---|
| Total Shares Awarded | x | 50% of Shares Awarded allocated to TSR Component | x | Shares Earned Percentage from Step 1 | = Number of Shares Earned for TSR Component |
| | x | 50% of Shares Awarded allocated to Adjusted Net Income from Operations Growth Component | x | Shares Earned Percentage from Step 2 | = Number of Shares Earned for Adjusted Net Income from Operations Growth Component |
| | | | | | Sum of this Column = Total Number of Shares Earned |

The number of Shares Earned for each Performance Measure Component are added together to determine total number of Shares Earned by the award recipient for the Performance Period. There will not be any fractional Shares Earned; the number of Shares Earned will be rounded following normal rounding rules. The total number of Shares Earned cannot exceed 200% of the Shares Awarded.

**F8YA8IN8**
**03/22/2015 05:19 pm U.S. Eastern Standard Time**
**ACCEPTED**

# EXHIBIT F

Cigna Corporation

Cigna Long-Term Incentive Plan:  Restricted Stock Grant Agreement

Cigna Corporation ("Cigna") has granted you the number of shares of restricted stock of Cigna set forth below in this Restricted Stock Grant Agreement ("Restricted Stock Grant" or "Grant") under the Cigna Long-Term Incentive Plan ("Plan").  The date of your Restricted Stock Grant ("Grant Date") and the date on which your Grant is scheduled to vest ("Vesting Date") are also indicated below. The award is subject to the provisions of the Plan and the Terms and Conditions below.

You should carefully read all the terms and conditions of this Restricted Stock Grant and be sure you understand what they say and what your responsibilities and obligations are before you click on the ACCEPT button to acknowledge and agree to this Grant.

If you are not willing to agree to all of the Grant terms and conditions, do not accept the Grant and do not click the ACCEPT button for the Restricted Stock Grant Acknowledgment and Agreement. If you do not accept the Grant, you will not receive the benefits of the Grant.

If you do click on the ACCEPT button, you are accepting and agreeing to all of the terms and conditions of this Restricted Stock Grant.

Participant: **KAREN   KOCHER**
Grant Type: **RSA**
Plan Name:  Cigna Long-Term Incentive Plan

Grant Date: **03/01/2016**
Total Granted: **191**
Grant Price: **$0.00**          (USD)

Vesting Schedule

| Shares Granted | Vesting Date |
|---|---|
| 100% of shares granted | The Third Anniversary of the Grant Date |

You should also read the Plan Document and Key Contacts and Reference Materials document (attached to the Plan) and indicate that you have done so and agree to the terms by checking the appropriate box in the online grant acceptance process.  The Key Contacts and Reference Materials document contains information on how to get important stock award information (such as the Plan Prospectus, Tax Considerations and Cigna's Securities Transactions and Insider Trading Policy) and whom to contact if you have questions.

Please be aware that the Cigna Securities Transactions and Insider Trading Policy places restrictions on your transactions in Cigna securities and requires certain Cigna employees to obtain advance permission from the Corporate Secretary before executing transactions in Cigna securities.

If you have questions about your award, please contact Cigna Shareholder Services by email at shareholderservices@cigna.com or by phone at 215.761.3516.

Important Notice:  Restricted Stock Grant Acknowledgment and Agreement

By clicking on the ACCEPT button, I:
1.  Acknowledge and represent to Cigna that I have:
    a.  received the Restricted Stock Grant;
    b.  read and understand its terms and conditions, which include, among other things, restrictive covenants such as non-competition, customer and employee non-solicitation and non-disclosure provisions and  litigation cooperation and intellectual property assignment and assistance provisions; and
    c.  received answers to any questions I had about the Grant and its terms and conditions, including the restrictive covenants.

2.  Understand and agree that:
    a.  Pennsylvania law governs the interpretation and construction of the Grant; and
    b.  any controversy or proceeding arising out of or relating to the restrictive covenants in the Grant will be brought exclusively before a federal or state court in the Commonwealth of Pennsylvania where venue is appropriate and that has subject matter jurisdiction (collectively, "Pennsylvania Courts").

3.  Consent to Pennsylvania Courts exercising personal jurisdiction over me in any dispute about the restrictive covenants.

Scroll down for the TERMS AND CONDITIONS of the Restricted Stock Grant.

# TERMS AND CONDITIONS OF YOUR 2016
# RESTRICTED STOCK GRANT

These Terms and Conditions are an important part of your grant of Restricted Stock from Cigna Corporation (Cigna). The terms of your Restricted Stock grant are in: (a) the electronic Restricted Stock Grant Agreement above, (b) these Terms and Conditions, and (c) the applicable Plan provisions.

Certain words in this document with first letters capitalized are defined in the Restricted Stock Grant Agreement above, these Terms and Conditions or Article 2 of the Plan. This grant is void if you are not an employee of Cigna or a Subsidiary (a Cigna company) on the Grant Date.

**1.**      *Restricted Stock; Restrictions*

Shares of Restricted Stock (Shares) are regular shares of Cigna Common Stock, but they are subject to certain Restrictions. The Restrictions are:

(a)      You cannot sell or transfer the Shares to anyone during the Restricted Period; and

(b)      Unless an exception applies, you will forfeit (lose your right to) the Shares if you have a Termination of Employment during the Restricted Period.

Article 7 of the Plan describes these Restrictions in more detail. In addition, you must also comply with all the other terms and conditions of this grant, including those contained in this document.

**2.**      *Restricted Period; Vesting*

The Restricted Period starts on the Grant Date and ends on the Vesting Date. The Restrictions on the Shares will end (your Shares will vest) on the Vesting Date only if you remain continuously employed by a Cigna company from the Grant Date to the Vesting Date and comply with all the terms and conditions of this grant, including those contained in this document.

Your vesting date may be earlier (see paragraph 3).

**3.**      *Early Vesting*

In certain situations your vesting date may be earlier than the Vesting Date described in paragraph 2:

(a)      The Shares will vest upon your Termination of Employment if it is Upon a Change of Control (of Cigna Corporation) or due to your death or Disability.

(b)      The Shares *may* vest upon your Termination of Employment if:

   (1)      It is due to your Early Retirement or Retirement; and

   (2)      The People Resources Committee or its designee (including Cigna's senior human resources officer) approves the early vesting before your Termination of Employment.

   If you want to be considered for early vesting when you retire, you must ask your manager or human resources representative far enough in advance of your retirement so there is time to process your request.

**4.**    *Voting Rights; Dividends*

(a)    You have the right to vote the Shares.  If you forfeit a Share, you will also forfeit the right to vote the Share.

(b)    You have the right to receive dividends on the Shares.  Dividends paid on the Shares during the Restricted Period will be held by Cigna.  Subject to the forfeiture provisions of paragraph 4(c), your right to receive accumulated dividends on a Share will vest on the scheduled Vesting Date for the Share described in paragraph 2 (Scheduled Vesting Date).  Once a Share vests, your right to future dividends on the Share, and the method of payment, will be the same as for any other Cigna shareholder.

(c)    If you forfeit a Share, you will also forfeit the right to any accumulated and future dividends related to the Share.  Even if you do not forfeit a Share, you will forfeit the right to any accumulated dividends on the Share if:

    (1)    You have a Termination of Employment before the Scheduled Vesting Date for a Share (even if the Share vests under paragraph 3);

    (2)    The Scheduled Vesting Date for a Share occurs before the Share vests (because vesting is delayed); or

    (3)    You are on a leave of absence when the Share vests.

(d)    Vested accumulated dividends, less applicable taxes withheld, will be paid to you in a lump sum within 70 days after the Scheduled Vesting Date.  Cigna will not pay any interest on the accumulated dividends.

**5.**    *Taxes at Vesting*

When the Shares vest, you must satisfy any required tax withholding obligation.  Cigna reserves the right to withhold enough newly-vested Shares to cover all or part of any applicable tax withholding.  However, if section 83(b) of the U.S. Internal Revenue Code of 1986, as amended, applies to you and you make a timely election under that provision, you must make an immediate cash payment to satisfy any required tax withholding obligation.

**6.**    *Book-Entry Shares; Sale of Shares*

(a)    Cigna (or a custodian appointed by Cigna) will hold your Shares before and after vesting in book-entry form in a Stock Account.  That is, a record of your Share ownership will be kept electronically, and you will not risk losing any Share certificates.  A certificate for vested Shares will be issued to you only if you ask for one, but not if you have engaged in a Violation (described in paragraph 7(c)).

(b)    You may generally sell or transfer vested Shares at any time, but your right to sell the Shares after they vest may be limited by Cigna.  This right is subject to the terms of Cigna's Securities Transactions and Insider Trading Policy, and Cigna reserves the right, for any reason at any time, to suspend or delay action on any request you make to sell the Shares.

**7.**    *Conditions of Grant*

(a)    By accepting the grant, you are agreeing:

    (1)    to the Inventions provision in paragraph 7(b); and

    (2)    not to engage in any Violation described in paragraph 7(c).

You understand and agree that your agreement to the Inventions provision and not to engage in any Violation are a material part of the inducement for Cigna's granting you the Shares and essential pre-conditions to your eligibility to exercise any rights associated with the Shares and retain any benefit from the vesting of the Shares.

(b)     ***Inventions***

(1)     You hereby assign and promise to assign to Cigna companies or their designee, all your right, title, and interest in and to any and all current and future Inventions. You acknowledge that all original works of authorship which you make (whether alone or jointly with others) within the scope of your Cigna company employment and which are protectable by copyright are "works made for hire," as defined in the United States Copyright Act.

(2)     You agree to (i) maintain and make available adequate current records, including electronic records, notes, sketches and drawings, of all Inventions you make, and (ii) disclose such Inventions in writing upon request. These records will remain the property of Cigna companies.

(3)     If in the course of your Cigna company employment, you incorporate a Prior Invention into any Cigna company work product, you grant Cigna companies a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to use the Prior Invention as part of or in connection with the work product. Within 45 days after the date of this grant, you agree to notify Cigna Shareholder Services (shareholderservices@Cigna.com) of any Prior Inventions that you are not assigning under this paragraph 7(b).

(4)     "Inventions" means any and all inventions, original works of authorship, developments, concepts, sales methods, improvements, trade secrets, or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you have or will solely or jointly conceive, develop, reduce to practice, or fix during your Cigna company employment.

(5)     "Prior Inventions" means all inventions, original works of authorship, developments, concepts, sales methods, improvements, trade secrets or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you conceived, developed, reduced to practice or fixed before your Cigna company employment and which belong to you.

(c)     ***Violation***

You will engage in a "Violation" if, directly or indirectly, you engage in any misconduct described in paragraph 7(c)(1) below or you break any of the "Promises" in paragraphs 7(c)(2) through (7) below:

(1)     **Misconduct**:

(A)     You have a Termination of Employment initiated by a Cigna company because of your misconduct, as that term is defined in Cigna's Code of Ethics, Standards of Conduct or other employment policies.

(B)     You do anything else while an employee of any Cigna company that is not discovered by the company until after your Termination of Employment and that would, if you had still been employed at the time of the discovery, be reason for your Termination of Employment for misconduct, as described above.

(2)     **Promise Not To Compete against Cigna Companies**:

(A)     If you are in **Career Band 6 or higher** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 7(c)(2)(C) below) at any time during the period that starts on the Grant Date and ends 12 months after your Termination of Employment.

You acknowledge and agree that:

(i)     Cigna's business competes on a global basis;

(ii)    Cigna's sales and marketing plans are for continued expansion throughout the United States of America and globally;

(iii)   You have had access to and received Confidential Information (described in paragraph 7(c)(5)(B) below); and

(iv)    The time restrictions and global nature of this non-competition restriction are reasonable and necessary to protect Cigna's business and Confidential Information.

(B)     If you are in **Career Band 5 or below** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 7(c)(2)(C) below) at any time during the period that starts on the Grant Date and ends 12 months after your Termination of Employment, if that work is similar to, and within the same geographic area as, the work you performed, or for which you had responsibility, at any Cigna company at any time during the six-month period that ends on your Termination of Employment date.

For example:

(i)     If you are a sales employee and your sales territory at any time during your last six months of Cigna company employment is Pennsylvania, New Jersey, and New York, this paragraph 7(c)(2)(B) would apply to you only if you work in a sales position for a Cigna Competitor and only to the extent your new sales territory is Pennsylvania, New Jersey, and/or New York;

(ii)    If you are an underwriter with nationwide responsibilities at any time during your last six months of Cigna company employment, and you seek a job with a Cigna Competitor as an underwriter, the restrictions in paragraph 7(c)(2)(B) would be nationwide in scope; or

(iii)   If you work in a particular division or segment of Cigna, you would not be permitted to work in a similar division or segment for a Cigna Competitor where the work you are expected to perform for the competitor is similar to the work you performed for any Cigna company.

You acknowledge and agree that you have had access to and received Confidential Information (described in paragraph 7(c)(5)(B) below) and the above time and geographic restrictions are reasonable and necessary to protect Cigna's business and Confidential Information.

(C)   "Cigna Competitor" means any business that competes directly or indirectly with any Cigna company's product or service.

(D)   The Promise in paragraph 7(c)(2) not to compete against Cigna companies after Termination of Employment will not apply and Cigna will not enforce it with respect to Cigna company employment in California.

(3)   **Promise Not To Solicit or Hire Cigna Company Employees**:

(A)   You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i)   Solicit any employee of any Cigna company to terminate his/her employment with, or otherwise cease his/her relationship, contractual or otherwise, with that Cigna company; or

(ii)   Hire any Cigna company employee.

(B)   This paragraph 7(c)(3) will not apply to applications for employment submitted voluntarily by any Cigna employee, in response to a general advertisement or otherwise, so long as neither you, nor anyone acting on your behalf or in response to information provided by you, otherwise Solicits the employees to leave Cigna.

(C)   To "Solicit" means to entice, encourage, persuade, or solicit, or to attempt to entice, encourage, persuade or solicit.

(4)   **Promise Not To Solicit Cigna Company Customers**:

(A)   You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i)   Solicit any Cigna company customer to end an existing relationship, contractual or otherwise, with that Cigna company;

(ii)   Solicit any Cigna company customer to reduce the volume of their business dealings with Cigna; or

(iii)   Solicit any potential Cigna company customer to enter into any business arrangements with you or any business which you may become employed by, or affiliated in any way with, after leaving any Cigna company, if such business arrangements would compete in any way with any business that Cigna company has

conducted, or has been planning to conduct, during the 12-month period ending on the date of the Violation.

(B)     The Promise in paragraph 7(c)(4)(A) above applies only to a customer or potential customer with whom you had any Material Contact while employed by any Cigna company.  "Material Contact" means you:

(i)     Had business dealings with the customer on behalf of any Cigna company within the three-year period ending on the date of the Solicitation;

(ii)    Were responsible for supervising or coordinating the dealings between any Cigna company and the customer or potential customer anytime during the three-year period ending on the date of the Solicitation; or

(iii)   Obtained, at any time, trade secrets or confidential information about a customer or potential customer with whom you had contact as a result of your employment by any Cigna company.

(C)     "Solicit" is defined in paragraph 7(c)(3)(C).

(D)     The Promise in paragraph 7(c)(4) not to solicit Cigna company customers after  Termination of Employment will not apply and Cigna will not enforce it with respect to Cigna company employment in California unless the activity involves the use of Confidential Information.

(5)     **Promise Not To Disclose Cigna Companies' Confidential Information**:

(A)     You Promise not to disclose any Confidential Information to any third-party at any time, whether during or after your employment, without the prior written consent of Cigna (except to the extent required by an order of a court having competent jurisdiction or a properly issued subpoena) unless that Confidential Information was previously disclosed publicly by Cigna or has become public knowledge (other than by your disclosure). Nothing in this Confidentiality provision prohibits you or your counsel from initiating communications directly with, or responding to any inquiry from, or providing testimony before any self-regulatory organization or any state or federal regulatory authority. In the event that you are required to disclose Confidential Information pursuant to a subpoena or other law or regulation, you shall notify Cigna promptly upon learning that you have been subpoenaed or are otherwise required or compelled to divulge Confidential Information.

(B)     "Confidential Information" means any Cigna company trade secrets, confidential information, or proprietary materials, including but not limited to customer lists, financial records, marketing plans and sales plans.

(6)     **Promise to Cooperate With Cigna in Investigations or Litigation**:

    (A)     You Promise that, at any time after your Termination of Employment, you will cooperate with Cigna in (i) all investigations of any kind, (ii) helping to prepare and review documents and meeting with Cigna attorneys, and (iii) providing truthful testimony as a witness or a declarant during discovery and/or trial in connection with any present or future court, administrative, agency, or arbitration proceeding involving any Cigna company and with respect to which you have relevant information.

    (B)     Cigna agrees that it will reimburse you, upon production of appropriate receipts and in accordance with Cigna's then existing Business Travel Reimbursement Policy, the reasonable business expenses (including air transportation, hotel, and similar expenses) incurred by you in connection with such assistance.  You must present to Cigna for reimbursement all receipts for those expenses within 45 days after you incur the expenses.

(7)     **Promise to Assist with Patent and Copyright Registrations**:

    (A)     You Promise that, during your Cigna company employment and after your Termination of Employment, you will assist Cigna companies, should they request and at Cigna's expense, to secure their rights (including any copyrights, patents, trademarks or other intellectual property rights) in or relating to the Inventions in any and all countries, including by:

        (i)     disclosing to Cigna Companies all pertinent information and data; and

        (ii)     executing all applications, assignments or other instruments necessary to apply for and obtain these rights and assign them to Cigna companies.

(d)     (1)     If you were an Executive Officer at any time during the 24-month period before the date of the Violation, the People Resources Committee will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment (described in paragraph 8) and to impose conditions on any waiver.

    (2)     Otherwise, Cigna's Senior Human Resources Officer, or his or her designee, will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment and to impose conditions on any waiver.

    (3)     Determinations of the People Resources Committee, Cigna's Senior Human Resources Officer, or his or her designee, will be final and binding on all parties.

**8.** *Consequences of a Violation: Payment to Cigna*

**Important: This paragraph 8 is not Cigna's only remedy for a Violation. Cigna may seek any additional legal or equitable remedy, including an injunction described in paragraph 9, for a Violation.**

(a)     You will immediately forfeit all unvested Shares if you engage in any Violation at any time.

(b)     You must immediately make the Payment described in paragraph 8(c) to Cigna in the manner described in paragraph 8(d) if:

(1)     You engage in a Violation described in paragraph 7(c)(2) (compete against Cigna), 7(c)(3) (Solicit or hire Cigna employees) or 7(c)(4) (Solicit Cigna customers), either while you are a Cigna company employee or within 12 months after your Termination of Employment; or

(2)     You engage in a Violation described in paragraph 7(c)(1) (misconduct), 7(c)(5) (disclose Confidential Information) 7(c)(6) (fail to cooperate) or 7(c)(7) (fail to assist) **at any time**.

(c)     "Payment" is the value you realize from any Shares that vest during the 12-month period ending on the date of the Violation. The Payment will equal:

(1)     The number of Shares that vest during that 12-month period;

multiplied by

(2)     The Fair Market Value of those Shares on their Vesting Date;

plus

(3)     The total amount of all dividends, if any, paid to you on those Shares through the date of the Payment.

(d)     Cigna will recover the Payment from you by any means permitted by applicable law, at the sole discretion of Cigna management, including but not limited to any or all of the following methods:

(1)     If you have any Shares in a Stock Account or in any other account in book-entry form when a Violation occurs, Cigna will take back from you the whole number of Shares that has a total Fair Market Value as of the date of the Violation up to, but not more than, the Payment amount.

(2)     Cigna will, to the extent permitted by applicable law, reduce:

(A)     The amount of any payments that any Cigna company owes you for any reason (including without limit any payments owed to you under any nonqualified retirement, deferred compensation or other plan or arrangement) by

(B)     The Payment amount.

This reduction will not occur until the date a future payment to you is due.

(3)     Cigna will send you a written notice and demand for all or part of any Payment amount. Within 30 days after you receive that notice and demand, you must make the Payment to Cigna.

**9.      *Consequences of a Violation: Injunction***

You agree that:

(a)      Cigna will be entitled to ask a court of competent jurisdiction to issue an order (an injunction) that requires you to take action and/or that prohibits you from taking action, as needed to ensure that you keep all of the Promises described in paragraph 7(c)(2) through (7), and Cigna will not be required to post a bond in order to seek or obtain the injunction;

(b)      Any breach or threatened breach of any of the Promises would cause irreparable injury to Cigna, and monetary damages alone would not provide an adequate remedy; and

(c)      The remedies described in paragraph 9(a) are in addition to any other rights and remedies Cigna may have at law or in equity.

**10.      *Consequences of a Violation: Designation of Cigna as Agent and Attorney-in-Fact for Inventions***

You agree that:

(a)      If Cigna Companies are unable to obtain your signature on any instruments needed to secure their rights in or relating to the Inventions pursuant to paragraph 7(c)(7)(A); then

(b)      You hereby appoint Cigna companies and their duly authorized officers as your agents and attorneys in fact to act for and on your behalf to execute and file any documents and take other actions as may be necessary for Cigna companies to secure those rights.

**11.      *Agreeing to Assume Risks***

Cigna, its stock plan administrator and its transfer agent will try to process your stock transaction requests in a timely manner; however, Cigna makes no promises or guarantees to you relating to the market price of the Shares or to the time it may take to act on your request to sell the Shares or deliver stock certificates.  By accepting this Restricted Stock grant:

(a)      You acknowledge that the action you request may not be completed until several days (or in the case of delivery of stock certificates, several weeks) after you submit it.

(b)      You agree to assume the risks, including the risk that the market price of the Shares may change, related to delays described in paragraph 11(a):

(1)      Between the time you ask for any Shares to be sold and the time your Shares are actually sold; and

(2)      Between the time you ask for stock certificates to be delivered to you or your broker and the time the certificates are delivered.

**12.      *Applicable Law***

You understand and agree that:

(a)      The terms and conditions of this Restricted Stock grant (including any Violation and the consequences of any Violation) and all determinations made under the Restricted Stock Grant Agreement, the Plan, and these Terms and Conditions will be interpreted under the laws of the Commonwealth of Pennsylvania, without regard to its conflict of laws rule;

(b)      Any dispute about any of the Promises (described in paragraph 7(c)), if not resolved by agreement between you and Cigna, will be resolved exclusively in a federal or state court in the Commonwealth of Pennsylvania where venue is appropriate and that has subject matter jurisdiction over the dispute (collectively, "Pennsylvania Courts");

(c)      Pennsylvania is a convenient forum for resolving any dispute about the Promises; and

(d)     You and Cigna consent to the exercise of personal jurisdiction over the parties by a Pennsylvania Court in any dispute related to the Promises.

**13.     *Arbitration***

You agree and understand that:

(a)     Except as provided in paragraph 12, any dispute over any of the terms and conditions that apply to this Restricted Stock grant will be resolved exclusively under the Cigna Employment Dispute Arbitration Policy and its Rules and Procedures as may be in effect when the dispute arises;

(b)     You are waiving your right to have those disputes decided by a judge or jury in a court of law, and instead you are agreeing to submit those disputes exclusively to mandatory and binding final arbitration;

(c)     While you or Cigna may seek emergency, temporary or permanent injunctive relief from a court in accordance with applicable law, after the court has issued a decision about that relief, you and Cigna will submit the dispute to final and binding arbitration under the Cigna Employment Dispute Arbitration Policy; and

(d)     This arbitration provision will not apply to any dispute related to the Promises.

**14.     *Miscellaneous***

(a)     If a court of competent jurisdiction determines that any provision of these Terms and Conditions is unenforceable as written, that provision will be enforceable to the maximum extent permitted by law and will be reformed by the court to make the provision enforceable in accordance with Cigna's intent and applicable law.

(b)     Cigna's failure to enforce any provision of this Restricted Stock grant will not be interpreted as a waiver of its right to enforce that provision in the future.

**15.     *Acceptance***

**If you disagree with any of these Terms and Conditions, including those in paragraphs 7, 8, 9 and 10 YOU MUST NOT ACCEPT THE RESTRICTED STOCK GRANT.**  If you sign the Restricted Stock grant, or acknowledge your acceptance electronically or otherwise, you will be:

(a)     Agreeing to all the terms and conditions of the Restricted Stock grant including the Inventions provision in paragraph 7(b) and the Promises in paragraph 7(c);

(b)     Warranting and representing to Cigna that you are, and will remain, in full compliance with those terms and conditions;

(c)     Authorizing Cigna to recover the Payment described in paragraph 8 and seek an injunction described in paragraph 9, if you engage in a Violation; and

(d)     Appointing Cigna as your agent and attorney-in-fact to secure rights with respect to Inventions if unable to obtain your signature as described in paragraph 10.

2016 RSG Grant Agreement (3 Year cliff) including Terms and Conditions

GB851EGZ

04/04/2016 08:46 am U.S. Eastern Standard Time

ACCEPTED

# EXHIBIT G

Cigna Corporation

Cigna Long-Term Incentive Plan:  Nonqualified Stock Option Grant Agreement

Cigna Corporation ("Cigna") has granted you the option to purchase the number of shares of Cigna Common Stock set forth below in this Option Grant Agreement ("Option Grant") under the Cigna Long-Term Incentive Plan ("Plan").  The date of your Option Grant ("Grant Date"), the dates on which your Option Grant is scheduled to vest ("Vesting Dates") and the date on which it is scheduled to expire ("Expiration Date") are also indicated below. The award is subject to the provisions of the Plan and the Terms and Conditions below.

You should carefully read all the terms and conditions of this Option Grant and be sure you understand what they say and what your responsibilities and obligations are before you click on the ACCEPT button to acknowledge and agree to this Option Grant.

If you are not willing to agree to all of the Option Grant terms and conditions, do not accept the Option Grant and do not click the ACCEPT button for the Option Grant Acknowledgment and Agreement.  If you do not accept the Option Grant, you will not receive the benefits of the Option Grant.

If you do click on the ACCEPT button, you are accepting and agreeing to all of the terms and conditions of this Option Grant.

Participant: **KAREN   KOCHER**
Grant Type: **NQ**
Plan Name:  Cigna Long-Term Incentive Plan

Grant Date: **03/01/2016**
Grant Expiration Date: **03/01/2026**
Total Options Granted: **1264**
Option Price: **$139.22**     (USD)

Vesting Schedule

| Options Granted | Vesting Date |
| --- | --- |
| 1/3 of the Options Granted | The First Anniversary of the Grant Date |
| 1/3 of the Options Granted | The Second Anniversary of the Grant Date |
| 1/3 of the Options Granted | The Third Anniversary of the Grant Date |

You should also read the Plan Document and Key Contacts and Reference Materials document (attached to the Plan) and indicate that you have done so and agree to the terms by checking the appropriate box in the online grant acceptance process.  The Key Contacts and Reference Materials document contains information on how to get important stock award information (such as the Plan Prospectus, Tax Considerations and Cigna's Securities Transactions and Insider Trading Policy) and whom to contact if you have questions.

Please be aware that the Cigna Securities Transactions and Insider Trading Policy places restrictions on your transactions in Cigna securities and requires certain Cigna employees to obtain advance permission from the Corporate Secretary before executing transactions in Cigna securities.

If you have questions about your award, please contact Cigna Shareholder Services by email at shareholderservices@cigna.com or by phone at 215.761.3516.

**Important Notice**:  Option Grant Acknowledgment and Agreement

By clicking on the ACCEPT button, I:
1. Acknowledge and represent to Cigna that I have:
   a. received the Option Grant;
   b. read and understand its terms and conditions, which include, among other things, restrictive covenants such as non-competition, customer and employee non-solicitation and non-disclosure provisions and  litigation cooperation and intellectual property assignment and assistance provisions; and
   c. received answers to any questions I had about the Option Grant and its terms and conditions, including the restrictive covenants.

2. Understand and agree that:
   a. Pennsylvania law governs the interpretation and construction of the Option Grant; and
   b. any controversy or proceeding arising out of or relating to the restrictive covenants in the Option Grant will be brought exclusively before a federal or state court in the Commonwealth of Pennsylvania where venue is appropriate and that has subject matter jurisdiction (collectively, "Pennsylvania Courts").

3. Consent to Pennsylvania Courts exercising personal jurisdiction over me in any dispute about the restrictive covenants.

Scroll down for the TERMS AND CONDITIONS of the Option Grant.

# TERMS AND CONDITIONS OF YOUR 2016 GRANT
# OF A NONQUALIFIED STOCK OPTION

These Terms and Conditions are an important part of your grant of a nonqualified stock option (Option) from Cigna Corporation (Cigna).  The terms of your Option are in (a) the electronic Option Grant Agreement above, (b) these Terms and Conditions and (c) the applicable Plan provisions.

Certain words in this document with first letters capitalized are defined in the Option Grant Agreement above, these Terms and Conditions or Article 2 of the Plan. This grant is void if you are not an employee of Cigna or a Subsidiary (a Cigna company) on the Grant Date.

**1.**    *The Option*

The Option gives you the right to buy a certain number of shares of Cigna Common Stock (Shares) during the Option Period (described in paragraph 2) at the Option Price.  Your Option Grant Agreement lists the number of Shares and your Option Price.  To buy the Shares at the Option Price, you must exercise the Option.

**2.**    *Option Period; Vesting*

(a)    You can exercise the Option only during the Option Period.  The Option becomes exercisable, or "vests," on the first day of the Option Period and expires on the last day of the Option Period.

(b)    The Option Period for one-third of the Shares starts on the first (1st) anniversary of the Grant Date; for another third of the Shares on the second (2nd) anniversary of the Grant Date; and for the final third of the Shares on the third (3rd) anniversary of the Grant Date.  This is the vesting schedule for the Option.

(c)    The Option Period for all the Shares ends, and the Option will expire, the earlier of (1) 5:00 p.m. Philadelphia time on the Expiration Date or (2) upon your Termination of Employment as described under *Early Expiration* in paragraph 4.

**3.**    *Early Vesting*

The Option may vest earlier than the dates listed under paragraph 2(b) as described here.  If your Termination of Employment occurs before the Option vests under paragraph 2, the Option will vest on your Termination of Employment date, but only if your Termination of Employment is:

(a)    Because of your death, Disability, Early Retirement or Retirement *and* you have not received or will not be receiving severance pay from any Cigna company (whether under any severance benefit plan or any contract, agreement or arrangement); or

(b)    Upon a Change of Control.

**4.**    *Early Expiration upon Termination of Employment; Exceptions*

(a)    The Option will expire immediately upon your Termination of Employment (including a termination during an approved leave of absence) *unless* one of the exceptions described in paragraph 4(b) through (d) applies.

(b)    If (1) your Termination of Employment is because of your death, Disability or Retirement, and (2) you will not be receiving severance pay from any Cigna company (whether under any severance benefit plan or any contract, agreement or arrangement), then the Option will expire at 5:00 p.m. Philadelphia time on the Expiration Date.

(c)    If your Termination of Employment is because of your Early Retirement, and you will not be receiving severance pay from any Cigna company (whether under any severance benefit plan or any contract, agreement or arrangement), the Option will expire at 5:00 p.m. Philadelphia time on:

(1)      The earlier of the Expiration Date or the third anniversary of your Termination of Employment date; or

(2)      The Expiration Date if, within six months before your Termination of Employment date, you were an Executive Officer subject to the requirements of Section 16(a) of the Securities Exchange Act of 1934 ("Executive Officer").

(d)      If your Termination of Employment is Upon a Change of Control (of Cigna Corporation), the Option will expire on the earlier of the Expiration Date or three months after your Termination of Employment date.

**5.**      *Exercising the Option; Tax Withholding*

(a)      Cigna may limit your rights to exercise the Option and to sell any Shares you acquire by exercising the Option. Your rights are subject to the terms of Cigna's Securities Transactions and Insider Trading Policy, and Cigna reserves the right, for any reason at any time, to suspend or delay action on any request you make to exercise the Option or sell the Shares. To comply with legal requirements, Cigna may restrict the method by which you exercise the Option.

(b)      If, because of limitations imposed by applicable law, you cannot exercise the Option before it expires, then the Option will not expire on the date described in paragraph 4. Instead, the Option Period will be extended temporarily until the earlier of (1) ten business days after the first date on which the Option again becomes exercisable without the limitations or (2) 5:00 p.m. Philadelphia time on the Expiration Date.

(c)      To exercise all or part of the Option, you must (1) complete and submit any required Option exercise form or electronic exercise instructions and (2) pay the Option Price and any required tax withholding.

(d)      You may pay the Option Price with cash. If you pay with cash, you must also pay any applicable withholding tax liability in cash before Shares will be deposited in your Stock Account or delivered to you.

(e)      If you are a Cigna company employee when you exercise the Option, you may pay the Option Price with Shares that are in your Stock Account if:

(1)      you first purchased the shares on the open market; or

(2)      at least six months have elapsed after the:

(A)      grant date, if you received the shares as a grant of unrestricted Shares;

(B)      vesting date, if you received them as a grant of Restricted Stock; or

(C)      purchase date, if you bought them through a previous option exercise.

You will not be allowed to pay the Option Price with Shares if Cigna in its sole discretion determines that it would risk adverse tax or accounting consequences as a result. If you are not a Cigna company employee when you exercise the Option, or if your beneficiary or estate exercises the Option, the Option Price cannot be paid in shares of stock.

(f)      If you pay the Option Price in Shares:

(1)      You must exercise the Option for at least 50 Shares.

If there are not at least 50 Shares underlying the Option, you must exercise the Option for all the Shares.

(2)      You must pay any applicable tax-withholding obligation.

Cigna reserves the right to withhold from the Shares you purchase enough Shares to meet all or part of any applicable tax-withholding obligation.

If you are an Executive Officer when you exercise the Option, you may satisfy part of the withholding obligation by remitting to Cigna Shares you have owned for at least six months as of the date the withholding obligation arises.

(g)     You may pay the Option Price through a cashless exercise of the Option.  Cigna reserves the right to change the rules that apply to cashless exercises, or end your ability to do a cashless exercise, at any time.

### 6.     *Book-Entry Shares*

Cigna (or a custodian appointed by Cigna) will hold any Shares you, your beneficiary or estate acquire upon exercise of the Option in book-entry form in a Stock Account.  That is, a record of Share ownership will be kept electronically, and you will not risk losing any Share certificates.  A Share certificate will be issued to you only if you ask for one, but not if you have engaged in a Violation (described in paragraph 7(c)).

### 7.     *Conditions of Grant*

(a)     By accepting the grant, you are agreeing:

(1)     to the Inventions provision in paragraph 7(b); and

(2)     not to engage in any Violation described in paragraph 7(c)

You understand and agree that your agreement not to engage in any Violation and to the Inventions provision are a material part of the inducement for Cigna's granting you the Option and essential pre-conditions to your eligibility to exercise any rights associated with the Option and retain any benefit from exercising the Option.

(b)     *Inventions*

(1)     You hereby assign and promise to assign to Cigna companies or their designee, all your right, title, and interest in and to any and all current and future Inventions.  You acknowledge that all original works of authorship which you make (whether alone or jointly with others) within the scope of your Cigna company employment and which are protectable by copyright are "works made for hire," as defined in the United States Copyright Act.

(2)     You agree to (i) maintain and make available adequate current records, including electronic records, notes, sketches and drawings, of all Inventions you make, and (ii) disclose such Inventions in writing upon request. These records will remain the property of Cigna companies.

(3)     If in the course of your Cigna company employment, you incorporate a Prior Invention into any Cigna company work product, you grant Cigna companies a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to use the Prior Invention as part of or in connection with the work product. Within 45 days after the date of this grant, you agree to notify Cigna Shareholder Services (shareholderservices@Cigna.com) of any Prior Inventions that you are not assigning under this paragraph 7(b).

(4)     "Inventions" means any and all inventions, original works of authorship, developments, concepts, sales methods, improvements, trade secrets, or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you have or will solely or jointly conceive, develop, reduce to practice, or fix during your Cigna company employment.

(5)     "Prior Inventions" means all inventions, original works of authorship, developments,

concepts, sales methods, improvements, trade secrets or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you conceived, developed, reduced to practice or fixed before your Cigna company employment and which belong to you.

(c)   *Violation*

You will engage in a "Violation" if, directly or indirectly, you engage in any misconduct described in paragraph 7(c)(1) below or you break any of the "Promises" in paragraphs 7(c)(2) through (7) below:

(1)   **Misconduct**:

(A)   You have a Termination of Employment initiated by a Cigna company because of your misconduct, as that term is defined in Cigna's Code of Ethics, Standards of Conduct or other employment policies.

(B)   You do anything else while an employee of any Cigna company that is not discovered by the company until after your Termination of Employment and that would, if you had still been employed at the time of the discovery, be reason for your Termination of Employment for misconduct, as described above.

(2)   **Promise Not To Compete against Cigna Companies**:

(A)   If you are in **Career Band 6 or higher** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 7(c)(2)(C) below) at any time during the period that starts on the Grant Date and ends 12 months after your Termination of Employment.

You acknowledge and agree that:

(i)   Cigna's business competes on a global basis;

(ii)   Cigna's sales and marketing plans are for continued expansion throughout the United States of America and globally;

(iii)   You have had access to and received Confidential Information (described in paragraph 7(c)(5)(B) below); and

(iv)   The time restrictions and global nature of this non-competition restriction are reasonable and necessary to protect Cigna's business and Confidential Information.

(B)   If you are in **Career Band 5 or below** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 7(c)(2)(C) below) at any time during the period that starts on the Grant Date and ends 12 months after your Termination of Employment, if that work is similar to, and within the same geographic area as, the work you performed, or for which you had responsibility, at any Cigna company at any time during the six-month period that ends on your Termination of Employment date.

For example:

(i)     If you are a sales employee and your sales territory at any time during your last six months of Cigna company employment is Pennsylvania, New Jersey, and New York, this paragraph 7(c)(2)(B) would apply to you only if you work in a sales position for a Cigna Competitor and only to the extent your new sales territory is Pennsylvania, New Jersey, and/or New York;

(ii)    If you are an underwriter with nationwide responsibilities at any time during your last six months of Cigna company employment, and you seek a job with a Cigna Competitor as an underwriter, the restrictions in paragraph 7(c)(2)(B) would be nationwide in scope; or

(iii)    If you work in a particular division or segment of Cigna, you would not be permitted to work in a similar division or segment for a Cigna Competitor where the work you are expected to perform for the competitor is similar to the work you performed for any Cigna company.

You acknowledge and agree that you have had access to and received Confidential Information (described in paragraph 7(c)(5)(B) below) and the above time and geographic restrictions are reasonable and necessary to protect Cigna's business and Confidential Information.

(C)    "Cigna Competitor" means any business that competes directly or indirectly with any Cigna company's product or service.

(D)    The Promise in paragraph 7(c)(2) not to compete against Cigna companies after Termination of Employment will not apply and Cigna will not enforce it with respect to Cigna company employment in California.

(3)    **Promise Not To Solicit or Hire Cigna Company Employees**:

(A)    You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i)    Solicit any employee of any Cigna company to terminate his/her employment with, or otherwise cease his/her relationship, contractual or otherwise, with that Cigna company; or

(ii)    Hire any Cigna company employee.

(B)    This paragraph 7(c)(3) will not apply to applications for employment submitted voluntarily by any Cigna employee, in response to a general advertisement or otherwise, so long as neither you, nor anyone acting on your behalf or in response to information provided by you, otherwise Solicits the employees to leave Cigna.

(C)    To "Solicit" means to entice, encourage, persuade, or solicit, or to attempt to entice, encourage, persuade or solicit.

(4)    **Promise Not To Solicit Cigna Company Customers**:

(A)    You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i)    Solicit any Cigna company customer to end an existing relationship, contractual or otherwise, with that Cigna company;

(ii)      Solicit any Cigna company customer to reduce the volume of their business dealings with Cigna; or

(iii)      Solicit any potential Cigna company customer to enter into any business arrangements with you or any business which you may become employed by, or affiliated in any way with, after leaving any Cigna company, if such business arrangements would compete in any way with any business that Cigna company has conducted, or has been planning to conduct, during the 12-month period ending on the date of the Violation.

(B)      The Promise in paragraph 7(c)(4)(A) above applies only to a customer or potential customer with whom you had any Material Contact while employed by any Cigna company. "Material Contact" means you:

(i)      Had business dealings with the customer on behalf of any Cigna company within the three-year period ending on the date of the Solicitation;

(ii)      Were responsible for supervising or coordinating the dealings between any Cigna company and the customer or potential customer anytime during the three-year period ending on the date of the Solicitation; or

(iii)      Obtained**,** at any time**,** trade secrets or confidential information about a customer or potential customer with whom you had contact as a result of your employment by any Cigna company.

(C)      "Solicit" is defined in paragraph 7(c)(3)(C).

(D)      The Promise in paragraph 7(c)(4) not to solicit Cigna company customers after Termination of Employment will not apply and Cigna will not enforce it with respect to Cigna company employment in California unless the activity involves the use of Confidential Information.

## (5)      Promise Not To Disclose Cigna Companies' Confidential Information:

(A)      You Promise not to disclose any Confidential Information to any third-party at any time, whether during or after your employment, without the prior written consent of Cigna (except to the extent required by an order of a court having competent jurisdiction or a properly issued subpoena) unless that Confidential Information was previously disclosed publicly by Cigna or has become public knowledge (other than by your disclosure). Nothing in this Confidentiality provision prohibits you or your counsel from initiating communications directly with, or responding to any inquiry from, or providing testimony before any self-regulatory organization or any state or federal regulatory authority. In the event that you are required to disclose Confidential Information pursuant to a subpoena or other law or regulation, you shall notify Cigna promptly upon learning that you have been subpoenaed or are otherwise required or compelled to divulge Confidential Information.

(B)      "Confidential Information" means any Cigna company trade secrets, confidential information, or proprietary materials, including but not limited to customer lists, financial records, marketing plans and sales plans.

## (6)      Promise to Cooperate With Cigna in Investigations or Litigation:

(A)      You Promise that, at any time after your Termination of Employment, you will cooperate with Cigna in (i) all investigations of any kind, (ii) helping to prepare

and review documents and meeting with Cigna attorneys, and (iii) providing truthful testimony as a witness or a declarant during discovery and/or trial in connection with any present or future court, administrative, agency, or arbitration proceeding involving any Cigna company and with respect to which you have relevant information.

    (B)    Cigna agrees that it will reimburse you, upon production of appropriate receipts and in accordance with Cigna's then existing Business Travel Reimbursement Policy, the reasonable business expenses (including air transportation, hotel, and similar expenses) incurred by you in connection with such assistance. You must present to Cigna for reimbursement all receipts for those expenses within 45 days after you incur the expenses.

    (7)    **Promise to Assist with Patent and Copyright Registrations**:

        (A)    You Promise that, during your Cigna company employment and after your Termination of Employment, you will assist Cigna companies, should they request and at Cigna's expense, to secure their rights (including any copyrights, patents, trademarks or other intellectual property rights) in or relating to the Inventions in any and all countries, including by:

            (i)    disclosing to Cigna Companies all pertinent information and data; and

            (ii)    executing all applications, assignments or other instruments necessary to apply for and obtain these rights and assign them to Cigna companies.

(d)    (1)    If you were an Executive Officer at any time during the 24-month period before the date of the Violation, the People Resources Committee will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment (described in paragraph 8) and to impose conditions on any waiver.

    (2)    Otherwise, Cigna's Senior Human Resources Officer, or his or her designee, will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment and to impose conditions on any waiver.

    (3)    Determinations of the People Resources Committee, Cigna's Senior Human Resources Officer, or his or her designee, will be final and binding on all parties.

## 8.    *Consequences of a Violation: Payment to Cigna*

**Important: This paragraph 8 is not Cigna's only remedy for a Violation. Cigna may seek any additional legal or equitable remedy, including an injunction described in paragraph 9, for a Violation.**

(a)    If you engage in any Violation at any time, Cigna will cancel any part of the Option you have not yet exercised.

(b)    You must immediately make the Payment described in paragraph 8(c) to Cigna in the manner described in paragraph 8(d) if:

    (1)    You engage in a Violation described in paragraph 7(c)(2) (compete against Cigna), 7(c)(3) (Solicit or hire Cigna employees) or 7(c)(4) (Solicit Cigna customers), either while you are a Cigna company employee or within 12 months after your Termination of Employment; or

    (2)    You engage in a Violation described in paragraph 7(c)(1) (misconduct), 7(c)(5) (disclose Confidential Information), 7(c)(6) (fail to cooperate), or 7(c)(7) (fail to assist) **at any**

**time**.

(c)     The Payment requirement applies only to the part of the Option, if any, that you exercise within the 24-month period ending on the date of the Violation.  "Payment" means the amount equal to:

   (1)     the number of Shares you acquire when you exercise the Option;

            multiplied by

   (2)     the excess of (A) the Fair Market Value on the date you exercise the Option over (B) the Option Price;

            plus

   (3)     the total amount of all dividends, if any, paid on those Shares through the date of the Payment.

(d)     Cigna will recover the Payment from you by any means permitted by applicable law, at the sole discretion of Cigna management, including but not limited to any or all of the following methods:

   (1)     If you have any Shares in a Stock Account or in any other account in book-entry form when a Violation occurs, Cigna will take back from you the whole number of Shares that has a total Fair Market Value as of the date of the Violation up to, but not more than, the Payment amount.

   (2)     Cigna will, to the extent permitted by applicable law, reduce:

      (A)     The amount of any payments that any Cigna company owes you for any reason (including without limit any payments owed to you under any nonqualified retirement, deferred compensation or other plan or arrangement) by

      (B)     The Payment amount.

      This reduction will not occur until the date a future payment to you is due.

   (3)     Cigna will send you a written notice and demand for all or part of any Payment amount. Within 30 days after you receive that notice and demand, you must make the Payment to Cigna.

**9.      *Consequences of a Violation: Injunction***

You agree that:

(a)     Cigna will be entitled to ask a court of competent jurisdiction to issue an order (an injunction) that requires you to take action and/or that prohibits you from taking action, as needed to ensure that you keep all of the Promises described in paragraph 7(c)(2) through (7), and Cigna will not be required to post a bond in order to seek or obtain the injunction;

(b)     Any breach or threatened breach of any of the Promises would cause irreparable injury to Cigna, and monetary damages alone would not provide an adequate remedy; and

(c)     The remedies described in paragraph 9(a) are in addition to any other rights and remedies Cigna may have at law or in equity.

**10.      *Consequences of a Violation: Designation of Cigna as Agent and Attorney-in-Fact for Inventions***

You agree that:

(a)     If Cigna Companies are unable to obtain your signature on any instruments needed to secure their rights in or relating to the Inventions pursuant to paragraph 7(c)(7)(A); then

(b)     You hereby appoint Cigna companies and their duly authorized officers as your agents and attorneys in fact to act for and on your behalf to execute and file any documents and take other actions as may be necessary for Cigna companies to secure those rights.

**11.     *Agreeing to Assume Risks***

Cigna, its stock plan administrator and its transfer agent will try to process your stock transaction requests in a timely manner; however, Cigna makes no promises or guarantees to you relating to the market price of the Shares or to the time it may take to act on your request to exercise the Option, sell the Shares or deliver stock certificates.  By accepting this Option grant:

(a)     You acknowledge that the action you request may not be completed until several days (or in the case of delivery of stock certificates, several weeks) after you submit it.

(b)     You agree to assume the risks, including the risk that the market price of the Shares may change, related to delays described in paragraph 11(a):

(1)     Between the time you submit an Option exercise form and the time your Option is actually exercised;

(2)     Between the time you ask for any Shares to be sold and the time your Shares are actually sold; and

(3)     Between the time you ask for stock certificates to be delivered to you or your broker and the time the certificates are delivered.

**12.     *Applicable Law***

You understand and agree that:

(a)     The terms and conditions of this Option grant (including any Violation and the consequences of any Violation) and all determinations made under the Option Grant Agreement, the Plan, and these Terms and Conditions will be interpreted under the laws of the Commonwealth of Pennsylvania, without regard to its conflict of laws rule;

(b)     Any dispute about any of the Promises (described in paragraph 7(c)), if not resolved by agreement between you and Cigna, will be resolved exclusively in a federal or state court in the Commonwealth of Pennsylvania where venue is appropriate and that has subject matter jurisdiction over the dispute (collectively, "Pennsylvania Courts");

(c)     Pennsylvania is a convenient forum for resolving any dispute about the Promises; and

(d)     You and Cigna consent to the exercise of personal jurisdiction over the parties by a Pennsylvania Court in any dispute related to the Promises.

**13.** *Arbitration*

You agree and understand that:

(a)  Except as provided in paragraph 12, any dispute over any of the terms and conditions that apply to this Option grant will be resolved exclusively under the Cigna Employment Dispute Arbitration Policy and its Rules and Procedures as may be in effect when the dispute arises;

(b)  You are waiving your right to have those disputes decided by a judge or jury in a court of law, and instead you are agreeing to submit those disputes exclusively to mandatory and binding final arbitration;

(c)  While you or Cigna may seek emergency, temporary or permanent injunctive relief from a court in accordance with applicable law, after the court has issued a decision about that relief, you and Cigna will submit the dispute to final and binding arbitration under the Cigna Employment Dispute Arbitration Policy; and

(d)  This arbitration provision will not apply to any dispute related to the Promises.

**14.** *Miscellaneous*

(a)  If a court of competent jurisdiction determines that any provision of these Terms and Conditions is unenforceable as written, that provision will be enforceable to the maximum extent permitted by law and will be reformed by the court to make the provision enforceable in accordance with Cigna's intent and applicable law.

(b)  Cigna's failure to enforce any provision of this Option grant will not be interpreted as a waiver of its right to enforce that provision in the future.

**15.** *Acceptance*

**If you disagree with any of these Terms and Conditions, including those in paragraphs 7, 8 9, and 10, YOU MUST NOT ACCEPT THE OPTION GRANT.** If you sign the Option grant, or acknowledge your acceptance electronically or otherwise, you will be:

(a)  Agreeing to all the terms and conditions of the Option grant including the Inventions provision in paragraph 7(b) and the Promises in paragraph 7(c);

(b)  Warranting and representing to Cigna that you are, and will remain, in full compliance with those terms and conditions;

(c)  Authorizing Cigna to recover the Payment described in paragraph 8 and seek an injunction described in paragraph 9, if you engage in a Violation; and

(d)  Appointing Cigna as your agent and attorney-in-fact to secure rights with respect to Inventions if unable to obtain your signature as described in paragraph 10.

2016 Option Grant Agreement including Terms and Conditions

`G8V1VE2J`

`03/19/2016 03:14 am U.S. Eastern Standard Time`

`ACCEPTED`

# EXHIBIT H

Cigna Corporation

Cigna Long-Term Incentive Plan:  Strategic Performance Share Grant Agreement

Cigna Corporation ("Cigna") has granted you the number of strategic performance shares set forth below in this Strategic Performance Share Grant Agreement ("Strategic Performance Share Grant" or "Grant") under the Cigna Long-Term Incentive Plan ("Plan").  The date of your Strategic Performance Share Grant ("Grant Date") is also indicated below. The award is subject to the provisions of the Plan and the Terms and Conditions below.

You should carefully read all the terms and conditions of this Strategic Performance Share Grant and be sure you understand what they say and what your responsibilities and obligations are before you click on the ACCEPT button to acknowledge and agree to this Grant.

If you are not willing to agree to all of the Grant terms and conditions, do not accept the Grant and do not click the ACCEPT button for the Strategic Performance Share Grant Acknowledgment and Agreement.  If you do not accept the Grant, you will not receive the benefits of the Grant.

If you do click on the ACCEPT button, you are accepting and agreeing to all of the terms and conditions of this Strategic Performance Share Grant.

Participant: **KAREN    KOCHER**
Grant Type:  **PA**
Plan Name:  Cigna Long-Term Incentive Plan

Grant Date:  **03/01/2016**
Total Granted: **191**
Grant Price:  **$0.00**          (USD)

Vesting Schedule

| Shares Granted | Approximate Vest Date |
|---|---|
| 100% of Shares Granted | 03/04/2019 |

**Please Note:** The date shown in the Vesting Schedule chart above is not your actual vesting date. It is an approximation of the expected vesting date and is provided due to systems requirements. In accordance with the Terms and Conditions of your Strategic Performance Share Grant, the actual vesting date will be determined by the People Resources Committee of the Board of Directors.

You should also read the Plan Document and Key Contacts and Reference Materials document (attached to the Plan) and indicate that you have done so and agree to the terms by checking the appropriate box in the online grant acceptance process.  The Key Contacts and Reference Materials document contains information on how to get important award information (such as the Plan Prospectus, Tax Considerations and Cigna's Securities Transactions and Insider Trading Policy) and whom to contact if you have questions.

Please be aware that the Cigna Securities Transactions and Insider Trading Policy places restrictions on your transactions in Cigna securities and requires certain Cigna employees to obtain advance permission from the Corporate Secretary before executing transactions in Cigna securities.

If you have questions about your award, please contact Cigna Shareholder Services by email at shareholderservices@cigna.com or by phone at 215.761.3516.

Important Notice:  Strategic Performance Share Grant Acknowledgment and Agreement

By clicking on the ACCEPT button, I:
1.  Acknowledge and represent to Cigna that I have:
    a.  received the Strategic Performance Grant;
    b.  read and understand its terms and conditions, which include, among other things, restrictive covenants such as non-competition, customer and employee non-solicitation and non-disclosure provisions and litigation cooperation and intellectual property assignment and assistance provisions; and
    c.  received answers to any questions I had about the Grant and its terms and conditions, including the restrictive covenants.

2.  Understand and agree that:
    a.  Pennsylvania law governs the interpretation and construction of the Grant; and
    b.  any controversy or proceeding arising out of or relating to the restrictive covenants in the Grant will be brought exclusively before a federal or state court in the Commonwealth of Pennsylvania where venue is appropriate and that has subject matter jurisdiction (collectively, "Pennsylvania Courts").

3.  Consent to Pennsylvania Courts exercising personal jurisdiction over me in any dispute about the restrictive covenants.

Scroll down for the TERMS AND CONDITIONS of the Strategic Performance Share Grant.

**TERMS AND CONDITIONS OF YOUR 2016 GRANT
OF STRATEGIC PERFORMANCE SHARES**

These Terms and Conditions are an important part of your grant of Strategic Performance Shares from Cigna Corporation (Cigna). The terms of your Strategic Performance Share grant are in: (a) the electronic Strategic Performance Share Grant Agreement above, (b) these Terms and Conditions (including Schedule I), and (c) the Cigna Long-Term Incentive Plan (Plan).

Certain words in this document with first letters capitalized are defined in the Strategic Performance Share Grant Agreement above, these Terms and Conditions or Article 2 of the Plan. This grant is void if you are not an employee of Cigna or a Subsidiary (a Cigna company) on the Grant Date.

**1.**     *Strategic Performance Shares; Performance Period*

Each Strategic Performance Share (Performance Share) represents a conditional right to receive one share of Cigna Common Stock (Share), subject to the performance, vesting and payment provisions described below. The Performance Period applicable to your award is January 1, 2016 to December 31, 2018 (the Performance Period).

**2.**     *Restrictions*

Performance Shares are subject to certain Restrictions from the Grant Date until the Payment Date described in paragraph 4. The Restrictions are:

(a)     You cannot sell or transfer the Performance Shares to anyone;

(b)     Unless an exception applies (described in paragraph 4), you will forfeit (lose your right to) your unvested Performance Shares and all related rights immediately upon your Termination of Employment; and

(c)     Of the Performance Shares awarded to you (Shares Awarded), the number of Performance Shares, if any, that you earn and for which you may receive payment (Shares Earned) is subject to the performance criteria described in Schedule I.

Article 10 of the Plan describes these Restrictions in more detail. In addition to these Restrictions, you must also comply with all the terms and conditions of this grant, including those contained in this document.

**3.**     *Performance Shares Earned*

(a)     Schedule I specifies the performance criteria applicable to your Shares Awarded. Except as provided in paragraph 4, after the end of the Performance Period, the Committee shall determine whether and to what extent these performance criteria have been achieved for purposes of determining the Vesting Percentage applicable to your Performance Shares (Shares Earned Percentage).

(b)     Any Shares Awarded that are not Shares Earned after giving effect to the Committee's determinations under this paragraph 3 shall terminate and become null and void immediately following such determinations.

**4.**     *Eligibility for Payment*

(a)     Except as described in paragraph 4(b) and subject to paragraph 4(c) and paragraph 3, the Restrictions on the Performance Shares will end (your Performance Shares will vest) on the Payment Date described in paragraph 5, but only if you remain continuously employed

by a Cigna company until the Payment Date and comply with all the terms and conditions of this grant, including those contained in this document.

(b)    Notwithstanding paragraph 4(a) and subject to paragraph 4(c) and paragraph 3, if your Termination of Employment is before the Payment Date:

    (1)    Your Performance Shares will vest upon your Termination of Employment if it is Upon a Change of Control (of Cigna Corporation). If your Performance Shares vest under this paragraph 4(b)(1), the Shares Earned Percentage shall be the greatest of:

    (a) 100%;

    (b) The Shares Earned Percentage for the Performance period that ended immediately before your Termination upon a Change of Control; or

    (c) The average of the Shares Earned Percentages established by the Committee for the last two Performance Periods that ended before your Termination upon a Change of Control.

    (2)    Your Performance Shares will vest upon your Termination of Employment if it is due to your death. If your Performance Shares vest under this paragraph 4(b)(2), the Shares Earned Percentage shall be 100%.

    (3)    Your Performance Shares will vest upon your Termination of Employment if it is due to your Disability.

    (4)    Your Performance Shares *may* vest upon your Termination of Employment if it is due to your Early Retirement or Retirement and *if* the Committee or its designee (including Cigna's senior human resources officer) approves the early vesting before your Termination of Employment. If you want to be considered for early vesting when you retire, you must ask your manager or human resources representative far enough in advance of your retirement so there is time to process your request.

(c)    You must comply in all respects with the terms and conditions of this grant, including those contained in these Terms and Conditions.

**5.**    *Payment*

(a)    Except as provided in paragraph 5(b), below, your vested Shares Earned under this grant will be paid in the year following the close of the Performance Period on the date within such year specified by the Committee (Payment Date).

(b)    Any Performance Shares that vest on account of your death will be paid during the 90 day period immediately following your death to your estate.

(c)    For each Share Earned that vests, Cigna will make payment by issuing one Share as of the Payment Date. Until the Shares are issued to you, you will not be a Cigna shareholder, not have the right to vote the Shares, and not receive actual dividends.

**6.**    *Taxes*

Section 15.6 of the Plan shall apply to any tax withholding that may be required by law for Performance Shares or Shares. Upon the vesting or payment of any Performance Share, Cigna reserves the right to withhold enough newly-issued Shares to cover all or part of any applicable tax withholding.

7.    ***Book-Entry Shares; Sale of Shares***

(a)    Upon payment of the Shares as described in paragraph 5, Cigna (or a custodian appointed by Cigna) will hold your Shares in book-entry form in a Stock Account.  That is, a record of your Share ownership will be kept electronically, and you will not risk losing any Share certificates. A certificate for vested Shares will be issued to you only if you ask for one, but not if you have engaged in a Violation (described in paragraph 8(c)).

(b)    You may generally sell or transfer the Shares at any time, but your right to sell the Shares may be limited by Cigna.  This right is subject to the terms of Cigna's Securities Transactions and Insider Trading Policy, and Cigna reserves the right, for any reason at any time, to suspend or delay action on any request you make to sell the Shares.

8.    ***Conditions of Grant***

(a)    By accepting the grant, you are agreeing:

    (1)    to the Inventions provision in paragraph 8(b); and

    (2)    not to engage in any Violation described in paragraph 8(c).

You understand and agree that your agreement to the Inventions provision and not to engage in any Violation are a material part of the inducement for Cigna's granting you the Performance Shares and essential pre-conditions to your eligibility to exercise any rights associated with the grant and retain any benefit from the vesting of the Performance Shares and issuance of the Shares.

(b)    ***Inventions***

    (1)    You hereby assign and promise to assign to Cigna companies or their designee, all your right, title, and interest in and to any and all current and future Inventions.  You acknowledge that all original works of authorship which you make (whether alone or jointly with others) within the scope of your Cigna company employment and which are protectable by copyright are "works made for hire," as defined in the United States Copyright Act.

    (2)    You agree to (i) maintain and make available adequate current records, including electronic records, notes, sketches and drawings, of all Inventions you make, and (ii) disclose such Inventions in writing upon request. These records will remain the property of Cigna companies.

    (3)    If in the course of your Cigna company employment, you incorporate a Prior Invention into any Cigna company work product, you grant Cigna companies a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to use the Prior Invention as part of or in connection with the work product. Within 45 days after the date of this grant, you agree to notify Cigna Shareholder Services (shareholderservices@Cigna.com) of any Prior Inventions that you are not assigning under this paragraph 8(b).

    (4)    "Inventions" means any and all inventions, original works of authorship, developments, concepts, sales methods, improvements, trade secrets, or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you have or will solely or jointly conceive, develop, reduce to practice, or fix during your Cigna company employment.

(5)   "Prior Inventions" means all inventions, original works of authorship, developments, concepts, sales methods, improvements, trade secrets or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you conceived, developed, reduced to practice or fixed before your Cigna company employment and which belong to you.

(c)   *Violation*

You will engage in a "Violation" if, directly or indirectly, you engage in any misconduct described in paragraph 8(c)(1) below or you break any of the "Promises" in paragraphs 8(c)(2) through (7) below:

(1)   **Misconduct**:

    (A)   You have a Termination of Employment initiated by a Cigna company because of your misconduct, as that term is defined in Cigna's Code of Ethics, Standards of Conduct or other employment policies.

    (B)   You do anything else while an employee of any Cigna company that is not discovered by the company until after your Termination of Employment and that would, if you had still been employed at the time of the discovery, be reason for your Termination of Employment for misconduct, as described above.

(2)   **Promise Not To Compete against Cigna Companies**:

    (A)   If you are in **Career Band 6 or higher** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 8(c)(2)(C) below) at any time during the period that starts on the Grant Date and ends 12 months after your Termination of Employment.

You acknowledge and agree that:

    (i)    Cigna's business competes on a global basis;

    (ii)   Cigna's sales and marketing plans are for continued expansion throughout the United States of America and globally;

    (iii)  You have had access to and received Confidential Information (described in paragraph 8(c)(5)(B) below); and

    (iv)   The time restrictions and global nature of this non-competition restriction are reasonable and necessary to protect Cigna's business and Confidential Information.

    (B)   If you are in **Career Band 5 or below** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 8(c)(2)(C) below) at any time during the period that starts on the Grant Date and ends 12 months after your Termination of Employment, if that work is similar to, and within the same geographic area as, the work you performed, or for which you had

responsibility, at any Cigna company at any time during the six-month period that ends on your Termination of Employment date.

For example:

(i)    If you are a sales employee and your sales territory at any time during your last six months of Cigna company employment is Pennsylvania, New Jersey, and New York, this paragraph 8(c)(2)(B) would apply to you only if you work in a sales position for a Cigna Competitor and only to the extent your new sales territory is Pennsylvania, New Jersey, and/or New York;

(ii)    If you are an underwriter with nationwide responsibilities at any time during your last six months of Cigna company employment, and you seek a job with a Cigna Competitor as an underwriter, the restrictions in paragraph 8(c)(2)(B) would be nationwide in scope; or

(iii)    If you work in a particular division or segment of Cigna, you would not be permitted to work in a similar division or segment for a Cigna Competitor where the work you are expected to perform for the competitor is similar to the work you performed for any Cigna company.

You acknowledge and agree that you have had access to and received Confidential Information (described in paragraph 8(c)(5)(B) below) and the above time and geographic restrictions are reasonable and necessary to protect Cigna's business and Confidential Information.

(C)    "Cigna Competitor" means any business that competes directly or indirectly with any Cigna company's product or service.

(D)    The Promise in paragraph 8(c)(2) not to compete against Cigna companies after Termination of Employment will not apply and Cigna will not enforce it with respect to Cigna company employment in California.

(3)    **Promise Not To Solicit or Hire Cigna Company Employees**:

(A)    You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i)    Solicit any employee of any Cigna company to terminate his/her employment with, or otherwise cease his/her relationship, contractual or otherwise, with that Cigna company; or

(ii)    Hire any Cigna company employee.

(B)    This paragraph 8(c)(3) will not apply to applications for employment submitted voluntarily by any Cigna employee, in response to a general advertisement or otherwise, so long as neither you, nor anyone acting on your behalf or in response to information provided by you, otherwise Solicits the employees to leave Cigna.

(C)    To "Solicit" means to entice, encourage, persuade, or solicit, or to attempt to entice, encourage, persuade or solicit.

(4)     **Promise Not To Solicit Cigna Company Customers**:

(A)     You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i)     Solicit any Cigna company customer to end an existing relationship, contractual or otherwise, with that Cigna company;

(ii)    Solicit any Cigna company customer to reduce the volume of their business dealings with Cigna; or

(iii)   Solicit any potential Cigna company customer to enter into any business arrangements with you or any business which you may become employed by, or affiliated in any way with, after leaving any Cigna company, if such business arrangements would compete in any way with any business that Cigna company has conducted, or has been planning to conduct, during the 12-month period ending on the date of the Violation.

(B)     The Promise in paragraph 8(c)(4)(A) above applies only to a customer or potential customer with whom you had any Material Contact while employed by any Cigna company.  "Material Contact" means you:

(i)     Had business dealings with the customer on behalf of any Cigna company within the three-year period ending on the date of the Solicitation;

(ii)    Were responsible for supervising or coordinating the dealings between any Cigna company and the customer or potential customer any time during the three-year period ending on the date of the Solicitation; or

(iii)   Obtained**,** at any time**,** trade secrets or confidential information about a customer or potential customer with whom you had contact as a result of your employment by any Cigna company.

(C)     "Solicit" is defined in paragraph 8(c)(3)(C).

(D)     The Promise in paragraph 8(c)(4) not to solicit Cigna company customers after  Termination of Employment will not apply and Cigna will not enforce it with respect to Cigna company employment in California unless the activity involves the use of Confidential Information.

(5)     **Promise Not To Disclose Cigna Companies' Confidential Information**:

(A)     You Promise not to disclose any Confidential Information to any third-party at any time, whether during or after your employment, without the prior written consent of Cigna (except to the extent required by an order of a court having competent jurisdiction or a properly issued subpoena) unless that Confidential Information was previously disclosed publicly by Cigna or has become public knowledge (other than by your disclosure). Nothing in this Confidentiality provision prohibits you or your counsel from initiating communications directly with, or responding to any inquiry from, or providing testimony before any self-regulatory organization or any state or federal regulatory authority.  In the event that you are required to disclose Confidential Information pursuant to a subpoena or other law

or regulation, you shall notify Cigna promptly upon learning that you have been subpoenaed or are otherwise required or compelled to divulge Confidential Information.

(B) "Confidential Information" means any Cigna company trade secrets, confidential information, or proprietary materials, including but not limited to customer lists, financial records, marketing plans and sales plans.

(6) **Promise to Cooperate With Cigna in Investigations or Litigation**:

(A) You Promise that, at any time after your Termination of Employment, you will cooperate with Cigna in (i) all investigations of any kind, (ii) helping to prepare and review documents and meeting with Cigna attorneys, and (iii) providing truthful testimony as a witness or a declarant during discovery and/or trial in connection with any present or future court, administrative, agency, or arbitration proceeding involving any Cigna company and with respect to which you have relevant information.

(B) Cigna agrees that it will reimburse you, upon production of appropriate receipts and in accordance with Cigna's then existing Business Travel Reimbursement Policy, the reasonable business expenses (including air transportation, hotel, and similar expenses) incurred by you in connection with such assistance. You must present to Cigna for reimbursement all receipts for those expenses within 45 days after you incur the expenses.

(7) **Promise to Assist with Patent and Copyright Registrations**:

(A) You Promise that, during your Cigna company employment and after your Termination of Employment, you will assist Cigna companies, should they request and at Cigna's expense, to secure their rights (including any copyrights, patents, trademarks or other intellectual property rights) in or relating to the Inventions in any and all countries, including by:

(i) disclosing to Cigna Companies all pertinent information and data; and

(ii) executing all applications, assignments or other instruments necessary to apply for and obtain these rights and assign them to Cigna companies.

(d) (1) If you were an Executive Officer at any time during the 24-month period before the date of the Violation, the People Resources Committee will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment (described in paragraph 9) and to impose conditions on any waiver.

(2) Otherwise, Cigna's Senior Human Resources Officer, or his or her designee, will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment and to impose conditions on any waiver.

(3) Determinations of the People Resources Committee, Cigna's Senior Human Resources Officer, or his or her designee, will be final and binding on all parties.

**9.** *Consequences of a Violation: Payment to Cigna*

**Important: This paragraph 9 is not Cigna's only remedy for a Violation. Cigna may seek any additional legal or equitable remedy, including an injunction described in paragraph 10, for a Violation.**

(a)     If you engage in any Violation at any time:

    (1)     You will immediately forfeit all unvested Performance Shares; and

    (2)     No payment will be made for any Performance Shares that have vested under paragraph 4(b) if the Violation occurs before the Payment Date.

(b)     You must immediately make the Payment described in paragraph 9(c) to Cigna in the manner described in paragraph 9(d) if:

    (1)     You engage in a Violation described in paragraph 8(c)(2) (compete against Cigna), 8(c)(3) (Solicit or hire Cigna employees) or 8(c)(4) (Solicit Cigna customers), either while you are a Cigna company employee or within 12 months after your Termination of Employment; or

    (2)     You engage in a Violation described in paragraph 8(c)(1) (misconduct), 8(c)(5) (disclose Confidential Information), 8(c)(6) (fail to cooperate) or 8(c)(7) (fail to assist) **at any time**.

(c)     "Payment" is the value you realize from any Performance Shares that are paid under paragraph 5 during the 12-month period ending on the date of the Violation. The Payment will equal:

    (1)     The number of Performance Shares that are paid during that 12-month period;

        multiplied by

    (2)     The Fair Market Value of the Shares issued on the Payment Date for those Performance Shares;

        plus

    (3)     The total amount of all actual dividends, if any, paid to you on those Shares through the date of the Payment described in paragraph 9(d).

(d)     Cigna will recover the Payment from you by any means permitted by applicable law, at the sole discretion of Cigna management, including but not limited to any or all of the following methods:

    (1)     If you have any Shares in a Stock Account or in any other account in book-entry form when a Violation occurs, Cigna will take back from you the whole number of Shares that has a total Fair Market Value as of the date of the Violation up to, but not more than, the Payment amount.

    (2)     Cigna will, to the extent permitted by applicable law, reduce:

        (A)     The amount of any payments that any Cigna company owes you for any reason (including without limit any payments owed to you under any nonqualified retirement, deferred compensation or other plan or arrangement) by

        (B)     The Payment amount.

    This reduction will not occur until the date a future payment to you is due.

(3)     Cigna will send you a written notice and demand for all or part of any Payment amount.  Within 30 days after you receive that notice and demand, you must make the Payment to Cigna.

**10.     *Consequences of a Violation: Injunction***

You agree that:

(a)     Cigna will be entitled to ask a court of competent jurisdiction to issue an order (an injunction) that requires you to take action and/or that prohibits you from taking action, as needed to ensure that you keep all of the Promises described in paragraph 8(c)(2) through (7), and Cigna will not be required to post a bond in order to seek or obtain the injunction;

(b)     Any breach or threatened breach of any of the Promises would cause irreparable injury to Cigna, and monetary damages alone would not provide an adequate remedy; and

(c)     The remedies described in paragraph 10(a) are in addition to any other rights and remedies Cigna may have at law or in equity.

**11.     *Consequences of a Violation: Designation of Cigna as Agent and Attorney-in-Fact for Inventions***

You agree that:

(a)     If Cigna Companies are unable to obtain your signature on any instruments needed to secure their rights in or relating to the Inventions pursuant to paragraph 8(c)(7)(A); then

(b)     You hereby appoint Cigna companies and their duly authorized officers as your agents and attorneys in fact to act for and on your behalf to execute and file any documents and take other actions as may be necessary for Cigna companies to secure those rights.

**12.     *Agreeing to Assume Risks***

Cigna, its stock plan administrator and its transfer agent will try to process your stock transaction requests in a timely manner; however, Cigna makes no promises or guarantees to you relating to the market price of the Shares or to the time it may take to act on your request to sell the Shares or deliver stock certificates.  By accepting this Strategic Performance Share grant:

(a)     You acknowledge that the action you request may not be completed until several days (or in the case of delivery of stock certificates, several weeks) after you submit it.

(b)     You agree to assume the risks, including the risk that the market price of the Shares may change, related to delays described in paragraph 12(a):

(1)     Between the time you ask for any Shares to be sold and the time your Shares are actually sold; and

(2)     Between the time you ask for stock certificates to be delivered to you or your broker and the time the certificates are delivered.

**13.** *Applicable Law*

You understand and agree that:

(a)    The terms and conditions of this Strategic Performance Share grant (including any Violation and the consequences of any Violation) and all determinations made under the Strategic Performance Share Grant Agreement, the Plan, and these Terms and Conditions will be interpreted under the laws of the Commonwealth of Pennsylvania, without regard to its conflict of laws rule;

(b)    Any dispute about any of the Promises (described in paragraph 8(c)), if not resolved by agreement between you and Cigna, will be resolved exclusively in a federal or state court in the Commonwealth of Pennsylvania where venue is appropriate and that has subject matter jurisdiction over the dispute (collectively, "Pennsylvania Courts");

(c)    Pennsylvania is a convenient forum for resolving any dispute about the Promises; and

(d)    You and Cigna consent to the exercise of personal jurisdiction over the parties by a Pennsylvania Court in any dispute related to the Promises.

**14.** *Arbitration*

You agree and understand that:

(a)    Except as provided in paragraph 13, any dispute over any of the terms and conditions that apply to this Strategic Performance Share grant will be resolved exclusively under the Cigna Employment Dispute Arbitration Policy and its Rules and Procedures as may be in effect when the dispute arises;

(b)    You are waiving your right to have those disputes decided by a judge or jury in a court of law, and instead you are agreeing to submit those disputes exclusively to mandatory and binding final arbitration;

(c)    While you or Cigna may seek emergency, temporary or permanent injunctive relief from a court in accordance with applicable law, after the court has issued a decision about that relief, you and Cigna will submit the dispute to final and binding arbitration under the Cigna Employment Dispute Arbitration Policy; and

(d)    This arbitration provision will not apply to any dispute related to the Promises.

**15.** *Miscellaneous*

(a)    If a court of competent jurisdiction determines that any provision of these Terms and Conditions is unenforceable as written, that provision will be enforceable to the maximum extent permitted by law and will be reformed by the court to make the provision enforceable in accordance with Cigna's intent and applicable law.

(b)    Cigna's failure to enforce any provision of this Strategic Performance Share grant will not be interpreted as a waiver of its right to enforce that provision in the future.

**16.** *Acceptance*

**If you disagree with any of these Terms and Conditions, including those in paragraphs 8, 9, 10 and 11 YOU MUST NOT ACCEPT THE STRATEGIC PERFORMANCE SHARE GRANT.**  If you sign the Strategic Performance Share grant, or acknowledge your acceptance electronically or otherwise, you will be:

(a)    Agreeing to all the terms and conditions of the Strategic Performance Share grant including the Inventions provision in paragraph 8(b) and the Promises in paragraph 8(c);

(b)      Warranting and representing to Cigna that you are, and will remain, in full compliance with those terms and conditions;

(c)      Authorizing Cigna to recover the Payment described in paragraph 9 and seek an injunction described in paragraph 10, if you engage in a Violation; and

(d)      Appointing Cigna as your agent and attorney-in-fact to secure rights with respect to Inventions if unable to obtain your signature as described in paragraph 11.

2016 US SPS Grant Agreement including Terms and Conditions

**Terms and Conditions of 2016 Grants**
**of Strategic Performance Shares**
For Performance Period 2016-2018

Shares Awarded; Shares Earned

"Shares Awarded" is the number of Performance Shares granted to an eligible employee for the Performance Period.  Shares Awarded are allocated at time of grant to the two weighted performance measures (the "Performance Measure Components") as follows: 50% to Total Shareholder Return and 50% to Adjusted Income from Operations Growth.

"Shares Earned" is determined after the end of the three-year Performance Period.  Shares Earned will range from 0% to 200% of the Shares Awarded, and the actual number of Shares Earned will depend on the degree to which Cigna achieves the goals set at time of grant for each Performance Measure Component, as described below under Compensation Determination, and the PRC's exercise of downward discretion, if applied.

Performance Measurement

The two Performance Measure Components for the 2016-2018 Performance Period are:

- Cigna's Total Shareholder Return (TSR) relative to a peer group of industry competitors, and
- Adjusted Income from Operations Growth for the ongoing businesses .

The formulas described below under Compensation Determination will be used to determine the Shares Earned Percentage (called the Vesting Percentage in the Cigna Long-Term Incentive Plan). The determination is made separately for each set of Shares Awarded that is allocated to a Performance Measure Component.  The formula for each Performance Measure Component includes a minimum performance threshold, below which the Shares Earned Percentage for that Performance Measure Component will be zero.  In addition, the PRC has complete discretion to apply its judgment to the results generated by the formula for the TSR Performance Measure Component and make adjustments downward, as far down as 0%, in the Shares Earned Percentage. For the Adjusted Income from Operations component, the PRC will consider the CEO's recommendation and determine the Shares Earned percentage within the range of the applicable performance tier.

The PRC also has the right to adjust or change completely, in its sole discretion, the Performance Measures and/or the formulas for calculating the Shares Earned percentages if Cigna or one of the designated Peer Group companies is involved in any material merger, acquisition or divestiture during the Performance Period.

For the Total Shareholder Return Component, the designated industry competitors (the Peer Group) for the 2016-2018 Performance Period are: Aetna, AFLAC, Anthem, Hartford Financial Services, Health Net, Humana, Manulife Financial, MetLife, UnitedHealth, and Unum.  These companies were determined to be Cigna's publicly-traded peers based upon business mix and other factors.

<u>Compensation Determination</u>

The compensation to be paid for each SPS award (that is, the Shares Earned) is determined in a three-step process.

### Step 1 – Calculate Total Shareholder Return Component

In determining the Shares Earned Percentage for the Total Shareholder Return Component, Cigna's three-year TSR for the 2016 -2018 Performance Period will be compared against the three-year TSRs for each member of the Peer Group (to the extent each member has a TSR for the full three-year period). The three-year TSR is the compound annual growth rate in share price over three years, with dividends treated as reinvested.

Cigna's TSR will be compared against those of Peer Group members to obtain a percentile ranking for Cigna's relative TSR. In determining the Shares Earned Percentage for the TSR Component, the matrix below will be used. Any Peer Group company that is no longer a stand-alone company at the end of the Performance Period will not be included in the results. If the Peer Group consolidates or otherwise decreases to fewer than 10, then Cigna's TSR will be ranked against those of the remaining companies to determine the Shares Earned Percentage under the matrix.

As indicated in the matrix, the relative TSR Target is the 50th percentile, and the Threshold relative TSR (below which no value will be allocated to the TSR component) is the 25th percentile.

| TSR Performance (percentile) | Shares Earned (% of Shares Awarded)* |
|---|---|
| Maximum ($\geq$85th) | 200% |
| Above Target (75th) | 175% |
| Target (50th) | 100% |
| Below Target (25th) | 25% |
| Threshold (e.g. $\leq$25th) | 0 |

* The Shares Earned percentage between defined relative TSR performance points is interpolated; however, there are no Shares Earned for performance below the 25th percentile. For example, if Cigna's TSR is at the 66th percentile, under the formula, 148% of shares would be earned.

### Step 2 – Calculate Adjusted Income from Operations Growth Component

In determining the Shares Earned Percentage for the Adjusted Net Income from Operations Growth Component, the following matrix will be used. Management will make a recommendation to the PRC regarding the Shares Earned within the range. It is important to note that the maximum Shares Earned for each performance level is the top end of the range, but the PRC has downward discretion in each level to adjust the component value down to the lowest percentage of the range.

| Adjusted Income from Operations Growth * (Based on 2015 Actual) | Shares Earned (% of Shares Awarded) |
|---|---|
| Cumulative adjusted income from operations over the three-year period calculated assuming a compound annual growth rate of 15.5% or greater | 160% - 200% |

15

| | |
|---|---|
| Cumulative adjusted income from operations over the three-year period calculated assuming a compound annual growth rate of 10.5% to 15.5% | 120%- 160% |
| Cumulative adjusted income from operations over the three-year period calculated assuming a compound annual growth rate of 4.5% to 10.5% | 80% - 120% |
| Cumulative adjusted income from operations over the three-year period calculated assuming a compound annual growth rate of 1.5% to 4.5% | 35% - 80% |

[*] The assumed compound annual growth rates are used to define dollar targets for each performance range. Achievement of the performance goal is measured in actual dollars, not percentage growth.

Step 3 - Determine the Total Shares Earned

The number of Shares Awarded to an award recipient for the Performance Period that was allocated to each Performance Measure Component is multiplied by the approved Shares Earned Percentage for that Component as follows:

| | | | Steps 1 and 2 | | Step 3 |
|---|---|---|---|---|---|
| Total Shares Awarded | x | 50% of Shares Awarded allocated to TSR Component | x | Shares Earned Percentage from Step 1 | = Number of Shares Earned for TSR Component |
| | x | 50% of Shares Awarded allocated to Adjusted Net Income from Operations Growth Component | x | Shares Earned Percentage from Step 2 | = Number of Shares Earned for Adjusted Net Income from Operations Growth Component |
| | | | | | Sum of this Column = Total Number of Shares Earned |

The number of Shares Earned for each Performance Measure Component are added together to determine total number of Shares Earned by the award recipient for the Performance Period. There will not be any fractional Shares Earned; the number of Shares Earned will be rounded following normal rounding rules. The total number of Shares Earned cannot exceed 200% of the Shares Awarded.

**G8V1VKY5**

**03/19/2016 03:15 am U.S. Eastern Standard Time**

**ACCEPTED**

16

# EXHIBIT I

Cigna Corporation

Cigna Long-Term Incentive Plan:  Restricted Stock Grant Agreement

Cigna Corporation ("Cigna") has granted you the number of shares of restricted stock of Cigna set forth below in this Restricted Stock Grant Agreement ("Restricted Stock Grant" or "Grant") under the Cigna Long-Term Incentive Plan ("Plan").  The date of your Restricted Stock Grant ("Grant Date") and the date on which your Grant is scheduled to vest ("Vesting Date") are also indicated below. The award is subject to the provisions of the Plan and the Terms and Conditions below.

You should carefully read all the terms and conditions of this Restricted Stock Grant and be sure you understand what they say and what your responsibilities and obligations are before you click on the ACCEPT button to acknowledge and agree to this Grant.

If you are not willing to agree to all of the Grant terms and conditions, do not accept the Grant and do not click the ACCEPT button for the Restricted Stock Grant Acknowledgment and Agreement. If you do not accept the Grant, you will not receive the benefits of the Grant.

If you do click on the ACCEPT button, you are accepting and agreeing to all of the terms and conditions of this Restricted Stock Grant.

Participant: **KAREN    KOCHER**
Grant Type: **RSA**
Plan Name:  Cigna Long-Term Incentive Plan

Grant Date: **02/28/2017**
Total Granted: **160**
Grant Price: **$0.000000** (USD)

Vesting Schedule

| Shares Granted | Vesting Date |
|---|---|
| 100% of shares granted | The Third Anniversary of the Grant Date |

You should also read the Plan Document and Key Contacts and Reference Materials document (attached to the Plan) and indicate that you have done so and agree to the terms by checking the appropriate box in the online grant acceptance process.  The Key Contacts and Reference Materials document contains information on how to get important stock award information (such as the Plan Prospectus, Tax Considerations and Cigna's Securities Transactions and Insider Trading Policy) and whom to contact if you have questions.

Please be aware that the Cigna Securities Transactions and Insider Trading Policy places restrictions on your transactions in Cigna securities and requires certain Cigna employees to obtain advance permission from the Corporate Secretary before executing transactions in Cigna securities.

If you have questions about your award, please contact Cigna Shareholder Services by email at shareholderservices@cigna.com or by phone at 215.761.3516.

Important Notice:  Restricted Stock Grant Acknowledgment and Agreement

By clicking on the ACCEPT button, I:
1.  Acknowledge and represent to Cigna that I have:
    a.  received the Restricted Stock Grant;
    b.  read and understand its terms and conditions, which include, among other things, restrictive covenants such as non-competition, customer and employee non-solicitation and non-disclosure provisions and  litigation cooperation and intellectual property assignment and assistance provisions; and
    c.  received answers to any questions I had about the Grant and its terms and conditions, including the restrictive covenants.

2.  Understand and agree that:
    a.  Delaware law governs the interpretation and construction of the Grant; and
    b.  any controversy or proceeding arising out of or relating to the restrictive covenants in the Grant will be brought exclusively before a federal or state court in the State of Delaware where venue is appropriate and that has subject matter jurisdiction (collectively, "Delaware Courts").

3.  Consent to Delaware Courts exercising personal jurisdiction over me in any dispute about the restrictive covenants.

Scroll down for the TERMS AND CONDITIONS of the Restricted Stock Grant.

**TERMS AND CONDITIONS OF YOUR 2017**
**RESTRICTED STOCK GRANT**

These Terms and Conditions are an important part of your grant of Restricted Stock from Cigna Corporation (Cigna). The terms of your Restricted Stock grant are in: (a) the electronic Restricted Stock Grant Agreement above, (b) these Terms and Conditions, and (c) the applicable Plan provisions.

Certain words in this document with first letters capitalized are defined in the Restricted Stock Grant Agreement above, these Terms and Conditions or Article 2 of the Plan. This grant is void if you are not an employee of Cigna or a Subsidiary (a Cigna company) on the Grant Date.

**1.**      *Restricted Stock; Restrictions*

Shares of Restricted Stock (Shares) are regular shares of Cigna Common Stock, but they are subject to certain Restrictions. The Restrictions are:

(a)      You cannot sell or transfer the Shares to anyone during the Restricted Period; and

(b)      Unless an exception applies, you will forfeit (lose your right to) the Shares if you have a Termination of Employment during the Restricted Period.

Article 7 of the Plan describes these Restrictions in more detail. In addition, you must also comply with all the other terms and conditions of this grant, including those contained in this document.

**2.**      *Restricted Period; Vesting*

The Restricted Period starts on the Grant Date and ends on the Vesting Date. The Restrictions on the Shares will end (your Shares will vest) on the Vesting Date only if you remain continuously employed by a Cigna company from the Grant Date to the Vesting Date and comply with all the terms and conditions of this grant, including those contained in this document.

Your vesting date may be earlier (see paragraph 3).

**3.**      *Early Vesting*

In certain situations your vesting date may be earlier than the Vesting Date described in paragraph 2:

(a)      The Shares will vest upon your Termination of Employment if it is Upon a Change of Control (of Cigna Corporation) or due to your death or Disability.

(b)      The Shares *may* vest upon your Termination of Employment if:

     (1)      It is due to your Early Retirement or Retirement; and

     (2)      The People Resources Committee or its designee (including Cigna's senior human resources officer) approves the early vesting before your Termination of Employment.

     If you want to be considered for early vesting when you retire, you must ask your manager or human resources representative far enough in advance of your retirement so there is time to process your request.

3

**4.** ***Voting Rights; Dividends***

(a)     You have the right to vote the Shares.  If you forfeit a Share, you will also forfeit the right to vote the Share.

(b)     You have the right to receive dividends on the Shares.  Dividends paid on the Shares during the Restricted Period will be held by Cigna.  Subject to the forfeiture provisions of paragraph 4(c), your right to receive accumulated dividends on a Share will vest on the scheduled Vesting Date for the Share described in paragraph 2 (Scheduled Vesting Date).  Once a Share vests, your right to future dividends on the Share, and the method of payment, will be the same as for any other Cigna shareholder.

(c)     If you forfeit a Share, you will also forfeit the right to any accumulated and future dividends related to the Share.  Even if you do not forfeit a Share, you will forfeit the right to any accumulated dividends on the Share if:

(1)     You have a Termination of Employment before the Scheduled Vesting Date for a Share (even if the Share vests under paragraph 3);

(2)     The Scheduled Vesting Date for a Share occurs before the Share vests (because vesting is delayed); or

(3)     You are on a leave of absence when the Share vests.

(d)     Vested accumulated dividends, less applicable taxes withheld, will be paid to you in a lump sum within 70 days after the Scheduled Vesting Date.  Cigna will not pay any interest on the accumulated dividends.

**5.** ***Taxes at Vesting***

When the Shares vest, you must satisfy any required tax withholding obligation.  Cigna reserves the right to withhold enough newly-vested Shares to cover all or part of any applicable tax withholding.  However, if section 83(b) of the U.S. Internal Revenue Code of 1986, as amended, applies to you and you make a timely election under that provision, you must make an immediate cash payment to satisfy any required tax withholding obligation.

**6.** ***Book-Entry Shares; Sale of Shares***

(a)     Cigna (or a custodian appointed by Cigna) will hold your Shares before and after vesting in book-entry form in a Stock Account.  That is, a record of your Share ownership will be kept electronically, and you will not risk losing any Share certificates.  A certificate for vested Shares will be issued to you only if you ask for one, but not if you have engaged in a Violation (described in paragraph 7(c)).

(b)     You may generally sell or transfer vested Shares at any time, but your right to sell the Shares after they vest may be limited by Cigna.  This right is subject to the terms of Cigna's Securities Transactions and Insider Trading Policy, and Cigna reserves the right, for any reason at any time, to suspend or delay action on any request you make to sell the Shares.

**7.** ***Conditions of Grant***

(a)     By accepting the grant, you are agreeing:

(1)     to the Inventions provision in paragraph 7(b); and

(2)     not to engage in any Violation described in paragraph 7(c).

You understand and agree that your agreement to the Inventions provision and not to engage in any Violation are a material part of the inducement for Cigna's granting you the Shares and essential pre-conditions to your eligibility to exercise any rights associated with the Shares and retain any benefit from the vesting of the Shares.

(b) ***Inventions***

(1)    You hereby assign and promise to assign to Cigna companies or their designee, all your right, title, and interest in and to any and all current and future Inventions. You acknowledge that all original works of authorship which you make (whether alone or jointly with others) within the scope of your Cigna company employment and which are protectable by copyright are "works made for hire," as defined in the United States Copyright Act.

(2)    You agree to (i) maintain and make available adequate current records, including electronic records, notes, sketches and drawings, of all Inventions you make, and (ii) disclose such Inventions in writing upon request. These records will remain the property of Cigna companies.

(3)    If in the course of your Cigna company employment, you incorporate a Prior Invention into any Cigna company work product, you grant Cigna companies a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to use the Prior Invention as part of or in connection with the work product. Within 45 days after the date of this grant, you agree to notify Cigna Shareholder Services (shareholderservices@Cigna.com) of any Prior Inventions that you are not assigning under this paragraph 7(b).

(4)    "Inventions" means any and all inventions, original works of authorship, developments, concepts, sales methods, improvements, trade secrets, or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you have or will solely or jointly conceive, develop, reduce to practice, or fix during your Cigna company employment.

(5)    "Prior Inventions" means all inventions, original works of authorship, developments, concepts, sales methods, improvements, trade secrets or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you conceived, developed, reduced to practice or fixed before your Cigna company employment and which belong to you.

(c) ***Violation***

You will engage in a "Violation" if, directly or indirectly, you engage in any misconduct described in paragraph 7(c)(1) below or you break any of the "Promises" in paragraphs 7(c)(2) through (7) below:

(1)    **Misconduct**:

(A)    You have a Termination of Employment initiated by a Cigna company because of your misconduct, as that term is defined in Cigna's Code of Ethics, Standards of Conduct or other employment policies.

(B)    You do anything else while an employee of any Cigna company that is not discovered by the company until after your Termination of Employment

and that would, if you had still been employed at the time of the discovery, be reason for your Termination of Employment for misconduct, as described above.

(2) **Promise Not To Compete against Cigna Companies**:

(A) If you are in **Career Band 6 or higher** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 7(c)(2)(C) below) at any time during the period that starts on the Grant Date and ends 12 months after your Termination of Employment.

You acknowledge and agree that:

(i) Cigna's business competes on a global basis;

(ii) Cigna's sales and marketing plans are for continued expansion throughout the United States of America and globally;

(iii) You have had access to and received Confidential Information (described in paragraph 7(c)(5)(B) below); and

(iv) The time restrictions and global nature of this non-competition restriction are reasonable and necessary to protect Cigna's business and Confidential Information.

(B) If you are in **Career Band 5 or below** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 7(c)(2)(C) below) at any time during the period that starts on the Grant Date and ends 12 months after your Termination of Employment, if that work is similar to, and within the same geographic area as, the work you performed, or for which you had responsibility, at any Cigna company at any time during the six-month period that ends on your Termination of Employment date.

For example:

(i) If you are a sales employee and your sales territory at any time during your last six months of Cigna company employment is Pennsylvania, New Jersey, and New York, this paragraph 7(c)(2)(B) would apply to you only if you work in a sales position for a Cigna Competitor and only to the extent your new sales territory is Pennsylvania, New Jersey, and/or New York;

(ii) If you are an underwriter with nationwide responsibilities at any time during your last six months of Cigna company employment, and you seek a job with a Cigna Competitor as an underwriter, the restrictions in paragraph 7(c)(2)(B) would be nationwide in scope; or

(iii) If you work in a particular division or segment of Cigna, you would not be permitted to work in a similar division or segment

6

for a Cigna Competitor where the work you are expected to perform for the competitor is similar to the work you performed for any Cigna company.

You acknowledge and agree that you have had access to and received Confidential Information (described in paragraph 7(c)(5)(B) below) and the above time and geographic restrictions are reasonable and necessary to protect Cigna's business and Confidential Information.

(C)     "Cigna Competitor" means any business that competes directly or indirectly with any Cigna company's product or service.

(D)     The Promise in paragraph 7(c)(2) not to compete against Cigna companies after Termination of Employment will not apply and Cigna will not enforce it with respect to Cigna company employment in California.

(3)     **Promise Not To Solicit or Hire Cigna Company Employees**:

(A)     You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i)     Solicit any employee of any Cigna company to terminate his/her employment with, or otherwise cease his/her relationship, contractual or otherwise, with that Cigna company; or

(ii)    Hire any Cigna company employee.

(B)     This paragraph 7(c)(3) will not apply to applications for employment submitted voluntarily by any Cigna employee, in response to a general advertisement or otherwise, so long as neither you, nor anyone acting on your behalf or in response to information provided by you, otherwise Solicits the employees to leave Cigna.

(C)     To "Solicit" means to entice, encourage, persuade, or solicit, or to attempt to entice, encourage, persuade or solicit.

(4)     **Promise Not To Solicit Cigna Company Customers**:

(A)     You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i)     Solicit any Cigna company customer to end an existing relationship, contractual or otherwise, with that Cigna company;

(ii)    Solicit any Cigna company customer to reduce the volume of their business dealings with Cigna; or

(iii)   Solicit any potential Cigna company customer to enter into any business arrangements with you or any business which you may become employed by, or affiliated in any way with, after leaving any Cigna company, if such business arrangements would compete in any way with any business that Cigna company has conducted, or has been planning to conduct, during the 12-month period ending on the date of the Violation.

(B)     The Promise in paragraph 7(c)(4)(A) above applies only to a customer or potential customer with whom you had any Material Contact while employed by any Cigna company. "Material Contact" means you:

    (i)     Had business dealings with the customer on behalf of any Cigna company within the three-year period ending on the date of the Solicitation;

    (ii)     Were responsible for supervising or coordinating the dealings between any Cigna company and the customer or potential customer anytime during the three-year period ending on the date of the Solicitation; or

    (iii)     Obtained, at any time, trade secrets or confidential information about a customer or potential customer with whom you had contact as a result of your employment by any Cigna company.

(C)     "Solicit" is defined in paragraph 7(c)(3)(C).

(D)     The Promise in paragraph 7(c)(4) not to solicit Cigna company customers after Termination of Employment will not apply and Cigna will not enforce it with respect to Cigna company employment in California unless the activity involves the use of Confidential Information.

(5)     **Promise Not To Disclose Cigna Companies' Confidential Information**:

(A)     You Promise not to disclose any Confidential Information to any third-party at any time, whether during or after your employment, without the prior written consent of Cigna (except to the extent required by an order of a court having competent jurisdiction or a properly issued subpoena) unless that Confidential Information was previously disclosed publicly by Cigna or has become public knowledge (other than by your disclosure). Nothing in this Confidentiality provision prohibits you or your counsel from initiating communications directly with, or responding to any inquiry from, or providing testimony before any self-regulatory organization or any state or federal regulatory authority. In the event that you are required to disclose Confidential Information pursuant to a subpoena or other law or regulation, you shall notify Cigna promptly upon learning that you have been subpoenaed or are otherwise required or compelled to divulge Confidential Information.

(B)     "Confidential Information" means any Cigna company trade secrets, confidential information, or proprietary materials, including but not limited to customer lists, financial records, marketing plans and sales plans.

(6)     **Promise to Cooperate With Cigna in Investigations or Litigation**:

(A)     You Promise that, at any time after your Termination of Employment, you will cooperate with Cigna in (i) all investigations of any kind, (ii) helping to prepare and review documents and meeting with Cigna attorneys, and (iii) providing truthful testimony as a witness or a declarant during discovery and/or trial in connection with any present or future court, administrative, agency, or arbitration proceeding involving any Cigna company and with respect to which you have relevant information.

(B)     Cigna agrees that it will reimburse you, upon production of appropriate receipts and in accordance with Cigna's then existing Business Travel

Reimbursement Policy, the reasonable business expenses (including air transportation, hotel, and similar expenses) incurred by you in connection with such assistance. You must present to Cigna for reimbursement all receipts for those expenses within 45 days after you incur the expenses.

(7) **Promise to Assist with Patent and Copyright Registrations**:

    (A) You Promise that, during your Cigna company employment and after your Termination of Employment, you will assist Cigna companies, should they request and at Cigna's expense, to secure their rights (including any copyrights, patents, trademarks or other intellectual property rights) in or relating to the Inventions in any and all countries, including by:

        (i) disclosing to Cigna Companies all pertinent information and data; and

        (ii) executing all applications, assignments or other instruments necessary to apply for and obtain these rights and assign them to Cigna companies.

(d) (1) If you were an Executive Officer at any time during the 24-month period before the date of the Violation, the People Resources Committee will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment (described in paragraph 8) and to impose conditions on any waiver.

    (2) Otherwise, Cigna's Senior Human Resources Officer, or his or her designee, will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment and to impose conditions on any waiver.

    (3) Determinations of the People Resources Committee, Cigna's Senior Human Resources Officer, or his or her designee, will be final and binding on all parties.

**8.** *Consequences of a Violation: Payment to Cigna*

**Important: This paragraph 8 is not Cigna's only remedy for a Violation. Cigna may seek any additional legal or equitable remedy, including an injunction described in paragraph 9, for a Violation.**

(a) You will immediately forfeit all unvested Shares if you engage in any Violation at any time.

(b) You must immediately make the Payment described in paragraph 8(c) to Cigna in the manner described in paragraph 8(d) if:

    (1) You engage in a Violation described in paragraph 7(c)(2) (compete against Cigna), 7(c)(3) (Solicit or hire Cigna employees) or 7(c)(4) (Solicit Cigna customers), either while you are a Cigna company employee or within 12 months after your Termination of Employment; or

    (2) You engage in a Violation described in paragraph 7(c)(1) (misconduct), 7(c)(5) (disclose Confidential Information) 7(c)(6) (fail to cooperate) or 7(c)(7) (fail to assist) **at any time**.

(c) "Payment" is the value you realize from any Shares that vest during the 12-month period ending on the date of the Violation. The Payment will equal:

 (1) The number of Shares that vest during that 12-month period;

   multiplied by

 (2) The Fair Market Value of those Shares on their Vesting Date;

   plus

 (3) The total amount of all dividends, if any, paid to you on those Shares through the date of the Payment.

(d) Cigna will recover the Payment from you by any means permitted by applicable law, at the sole discretion of Cigna management, including but not limited to any or all of the following methods:

 (1) If you have any Shares in a Stock Account or in any other account in book-entry form when a Violation occurs, Cigna will take back from you the whole number of Shares that has a total Fair Market Value as of the date of the Violation up to, but not more than, the Payment amount.

 (2) Cigna will, to the extent permitted by applicable law, reduce:

  (A) The amount of any payments that any Cigna company owes you for any reason (including without limit any payments owed to you under any nonqualified retirement, deferred compensation or other plan or arrangement) by

  (B) The Payment amount.

  This reduction will not occur until the date a future payment to you is due.

 (3) Cigna will send you a written notice and demand for all or part of any Payment amount. Within 30 days after you receive that notice and demand, you must make the Payment to Cigna.

**9.** *Consequences of a Violation: Injunction*

You agree that:

(a)     Cigna will be entitled to ask a court of competent jurisdiction to issue an order (an injunction) that requires you to take action and/or that prohibits you from taking action, as needed to ensure that you keep all of the Promises described in paragraph 7(c)(2) through (7), and Cigna will not be required to post a bond in order to seek or obtain the injunction;

(b)     Any breach or threatened breach of any of the Promises would cause irreparable injury to Cigna, and monetary damages alone would not provide an adequate remedy; and

(c)     The remedies described in paragraph 9(a) are in addition to any other rights and remedies Cigna may have at law or in equity.

**10.**     *Consequences of a Violation: Designation of Cigna as Agent and Attorney-in-Fact for Inventions*

You agree that:

(a)     If Cigna Companies are unable to obtain your signature on any instruments needed to secure their rights in or relating to the Inventions pursuant to paragraph 7(c)(7)(A); then

(b)     You hereby appoint Cigna companies and their duly authorized officers as your agents and attorneys in fact to act for and on your behalf to execute and file any documents and take other actions as may be necessary for Cigna companies to secure those rights.

**11.**     *Agreeing to Assume Risks*

Cigna, its stock plan administrator and its transfer agent will try to process your stock transaction requests in a timely manner; however, Cigna makes no promises or guarantees to you relating to the market price of the Shares or to the time it may take to act on your request to sell the Shares or deliver stock certificates.  By accepting this Restricted Stock grant:

(a)     You acknowledge that the action you request may not be completed until several days (or in the case of delivery of stock certificates, several weeks) after you submit it.

(b)     You agree to assume the risks, including the risk that the market price of the Shares may change, related to delays described in paragraph 11(a):

(1)     Between the time you ask for any Shares to be sold and the time your Shares are actually sold; and

(2)     Between the time you ask for stock certificates to be delivered to you or your broker and the time the certificates are delivered.

**12.**     *Applicable Law*

You understand and agree that:

(a)     The terms and conditions of this Restricted Stock grant (including any Violation and the consequences of any Violation) and all determinations made under the Restricted Stock Grant Agreement, the Plan, and these Terms and Conditions will be interpreted under the laws of the State of Delaware, without regard to its conflict of laws rule;

(b)     Any dispute about any of the Promises (described in paragraph 7(c)), if not resolved by agreement between you and Cigna, will be resolved exclusively in a federal or state court in the State of Delaware where venue is appropriate and that has subject matter jurisdiction over the dispute (collectively, "Delaware Courts");

(c)     Delaware is a convenient forum for resolving any dispute about the Promises; and

(d)     You and Cigna consent to the exercise of personal jurisdiction over the parties by a Delaware Court in any dispute related to the Promises.

**13.     *Arbitration***

You agree and understand that:

(a)     Except as provided in paragraph 12, any dispute over any of the terms and conditions that apply to this Restricted Stock grant will be resolved exclusively under the Cigna Employment Dispute Arbitration Policy and its Rules and Procedures as may be in effect when the dispute arises;

(b)     You are waiving your right to have those disputes decided by a judge or jury in a court of law, and instead you are agreeing to submit those disputes exclusively to mandatory and binding final arbitration;

(c)     While you or Cigna may seek emergency, temporary or permanent injunctive relief from a court in accordance with applicable law, after the court has issued a decision about that relief, you and Cigna will submit the dispute to final and binding arbitration under the Cigna Employment Dispute Arbitration Policy; and

(d)     This arbitration provision will not apply to any dispute related to the Promises.

**14.     *Miscellaneous***

(a)     If a court of competent jurisdiction determines that any provision of these Terms and Conditions is unenforceable as written, that provision will be enforceable to the maximum extent permitted by law and will be reformed by the court to make the provision enforceable in accordance with Cigna's intent and applicable law.

(b)     Cigna's failure to enforce any provision of this Restricted Stock grant will not be interpreted as a waiver of its right to enforce that provision in the future.

**15.     *Acceptance***

**If you disagree with any of these Terms and Conditions, including those in paragraphs 7, 8, 9 and 10 YOU MUST NOT ACCEPT THE RESTRICTED STOCK GRANT.**  If you sign the Restricted Stock grant, or acknowledge your acceptance electronically or otherwise, you will be:

(a)     Agreeing to all the terms and conditions of the Restricted Stock grant including the Inventions provision in paragraph 7(b) and the Promises in paragraph 7(c);

(b)     Warranting and representing to Cigna that you are, and will remain, in full compliance with those terms and conditions;

(c)     Authorizing Cigna to recover the Payment described in paragraph 8 and seek an injunction described in paragraph 9, if you engage in a Violation; and

(d)     Appointing Cigna as your agent and attorney-in-fact to secure rights with respect to Inventions if unable to obtain your signature as described in paragraph 10.


2017 US RSG Grant Agreement (3 Year cliff) including Terms and Conditions

H8X6S8JC

03/21/2017 11:39 AM U.S. Eastern Standard Time

ACCEPTED

# EXHIBIT J

Cigna Corporation

Cigna Long-Term Incentive Plan:  Nonqualified Stock Option Grant Agreement

Cigna Corporation ("Cigna") has granted you the option to purchase the number of shares of Cigna Common Stock set forth below in this Option Grant Agreement ("Option Grant") under the Cigna Long-Term Incentive Plan ("Plan").  The date of your Option Grant ("Grant Date"), the dates on which your Option Grant is scheduled to vest ("Vesting Dates") and the date on which it is scheduled to expire ("Expiration Date") are also indicated below. The award is subject to the provisions of the Plan and the Terms and Conditions below.

You should carefully read all the terms and conditions of this Option Grant and be sure you understand what they say and what your responsibilities and obligations are before you click on the ACCEPT button to acknowledge and agree to this Option Grant.

If you are not willing to agree to all of the Option Grant terms and conditions, do not accept the Option Grant and do not click the ACCEPT button for the Option Grant Acknowledgment and Agreement.  If you do not accept the Option Grant, you will not receive the benefits of the Option Grant.

If you do click on the ACCEPT button, you are accepting and agreeing to all of the terms and conditions of this Option Grant.

Participant: **KAREN   KOCHER**
Grant Type: **NQ**
Plan Name:  Cigna Long-Term Incentive Plan

Grant Date: **02/28/2017**
Grant Expiration Date: **02/28/2027**
Total Options Granted: **1,028**
Option Price: **$149.1350**  (USD)

Vesting Schedule

| Options Granted | Vesting Date |
|---|---|
| 1/3 of the Options Granted | The First Anniversary of the Grant Date |
| 1/3 of the Options Granted | The Second Anniversary of the Grant Date |
| 1/3 of the Options Granted | The Third Anniversary of the Grant Date |

You should also read the Plan Document and Key Contacts and Reference Materials document (attached to the Plan) and indicate that you have done so and agree to the terms by checking the appropriate box in the online grant acceptance process.  The Key Contacts and Reference Materials document contains information on how to get important stock award information (such as the Plan Prospectus, Tax Considerations and Cigna's Securities Transactions and Insider Trading Policy) and whom to contact if you have questions.

Please be aware that the Cigna Securities Transactions and Insider Trading Policy places restrictions on your transactions in Cigna securities and requires certain Cigna employees to obtain advance permission from the Corporate Secretary before executing transactions in Cigna securities.

If you have questions about your award, please contact Cigna Shareholder Services by email at shareholderservices@cigna.com or by phone at 215.761.3516.

**Important Notice**:  Option Grant Acknowledgment and Agreement

By clicking on the ACCEPT button, I:
1.  Acknowledge and represent to Cigna that I have:
    a.  received the Option Grant;
    b.  read and understand its terms and conditions, which include, among other things, restrictive covenants such as non-competition, customer and employee non-solicitation and non-disclosure provisions and  litigation cooperation and intellectual property assignment and assistance provisions; and
    c.  received answers to any questions I had about the Option Grant and its terms and conditions, including the restrictive covenants.

2.  Understand and agree that:
    a.  Delaware law governs the interpretation and construction of the Option Grant; and
    b.  any controversy or proceeding arising out of or relating to the restrictive covenants in the Option Grant will be brought exclusively before a federal or state court in the State of Delaware where venue is appropriate and that has subject matter jurisdiction (collectively, "Delaware Courts").

3.  Consent to Delaware Courts exercising personal jurisdiction over me in any dispute about the restrictive covenants.

Scroll down for the TERMS AND CONDITIONS of the Option Grant.

# TERMS AND CONDITIONS OF YOUR 2017 GRANT
# OF A NONQUALIFIED STOCK OPTION

These Terms and Conditions are an important part of your grant of a nonqualified stock option (Option) from Cigna Corporation (Cigna). The terms of your Option are in (a) the electronic Option Grant Agreement above, (b) these Terms and Conditions and (c) the applicable Plan provisions.

Certain words in this document with first letters capitalized are defined in the Option Grant Agreement above, these Terms and Conditions or Article 2 of the Plan. This grant is void if you are not an employee of Cigna or a Subsidiary (a Cigna company) on the Grant Date.

**1.     *The Option***

The Option gives you the right to buy a certain number of shares of Cigna Common Stock (Shares) during the Option Period (described in paragraph 2) at the Option Price. Your Option Grant Agreement lists the number of Shares and your Option Price. To buy the Shares at the Option Price, you must exercise the Option.

**2.     *Option Period; Vesting***

(a)     You can exercise the Option only during the Option Period. The Option becomes exercisable, or "vests," on the first day of the Option Period and expires on the last day of the Option Period.

(b)     The Option Period for one-third of the Shares starts on the first (1st) anniversary of the Grant Date; for another third of the Shares on the second (2nd) anniversary of the Grant Date; and for the final third of the Shares on the third (3rd) anniversary of the Grant Date. This is the vesting schedule for the Option.

(c)     The Option Period for all the Shares ends, and the Option will expire, the earlier of (1) 5:00 p.m. Philadelphia time on the Expiration Date or (2) upon your Termination of Employment as described under *Early Expiration* in paragraph 4.

**3.     *Early Vesting***

The Option may vest earlier than the dates listed under paragraph 2(b) as described here. If your Termination of Employment occurs before the Option vests under paragraph 2, the Option will vest on your Termination of Employment date, but only if your Termination of Employment is:

(a)     Because of your death, Disability, Early Retirement or Retirement *and* you have not received or will not be receiving severance pay from any Cigna company (whether under any severance benefit plan or any contract, agreement or arrangement); or

(b)     Upon a Change of Control.

**4.     *Early Expiration upon Termination of Employment; Exceptions***

(a)     Upon your Termination of Employment (other than a Termination for Cause), the Option will expire on the earlier of the Expiration Date or ninety (90) days after your Termination of Employment date *unless* one of the exceptions described in paragraph 4(b) through (e) applies.

(b)     If (1) your Termination of Employment is because of your death, Disability or Retirement, and (2) you will not be receiving severance pay from any Cigna company (whether under any severance benefit plan or any contract, agreement or arrangement), then the Option will expire at 5:00 p.m. Philadelphia time on the Expiration Date.

(c)     If your Termination of Employment is because of your Early Retirement, and you will not be receiving severance pay from any Cigna company (whether under any severance benefit plan or any contract, agreement or arrangement), the Option will expire at 5:00 p.m. Philadelphia time on:

(1)     The earlier of the Expiration Date or the third anniversary of your Termination of Employment date; or

(2)     The Expiration Date if, within six months before your Termination of Employment date, you were an Executive Officer subject to the requirements of Section 16(a) of the Securities Exchange Act of 1934 ("Executive Officer").

(d)     If your Termination of Employment is Upon a Change of Control (of Cigna Corporation), the Option will expire on the earlier of the Expiration Date or ninety (90) days after your Termination of Employment date.

(e)     The Option will expire immediately upon your Termination for Cause.

**5.     *Exercising the Option; Tax Withholding***

(a)     Cigna may limit your rights to exercise the Option and to sell any Shares you acquire by exercising the Option.  Your rights are subject to the terms of Cigna's Securities Transactions and Insider Trading Policy, and Cigna reserves the right, for any reason at any time, to suspend or delay action on any request you make to exercise the Option or sell the Shares.  To comply with legal requirements, Cigna may restrict the method by which you exercise the Option.

(b)     If, because of limitations imposed by applicable law, you cannot exercise the Option before it expires, then the Option will not expire on the date described in paragraph 4.  Instead, the Option Period will be extended temporarily until the earlier of (1) ten business days after the first date on which the Option again becomes exercisable without the limitations or (2) 5:00 p.m. Philadelphia time on the Expiration Date.

(c)     To exercise all or part of the Option, you must (1) complete and submit any required Option exercise form or electronic exercise instructions and (2) pay the Option Price and any required tax withholding.

(d)     You may pay the Option Price with cash.  If you pay with cash, you must also pay any applicable withholding tax liability in cash before Shares will be deposited in your Stock Account or delivered to you.

(e)     If you are a Cigna company employee when you exercise the Option, you may pay the Option Price with Shares that are in your Stock Account if:

(1)     you first purchased the shares on the open market; or

(2)     at least six months have elapsed after the:

(A)     grant date, if you received the shares as a grant of unrestricted Shares;

(B)     vesting date, if you received them as a grant of Restricted Stock; or

(C)     purchase date, if you bought them through a previous option exercise.

You will not be allowed to pay the Option Price with Shares if Cigna in its sole discretion determines that it would risk adverse tax or accounting consequences as a result. If you are not a Cigna company employee when you exercise the Option, or if your beneficiary or estate exercises the Option, the Option Price cannot be paid in shares of stock.

(f)     If you pay the Option Price in Shares:

(1)     You must exercise the Option for at least 50 Shares.

        If there are not at least 50 Shares underlying the Option, you must exercise the Option for all the Shares.

(2)     You must pay any applicable tax-withholding obligation.

Cigna reserves the right to withhold from the Shares you purchase enough Shares to meet all or part of any applicable tax-withholding obligation.

If you are an Executive Officer when you exercise the Option, you may satisfy part of the withholding obligation by remitting to Cigna Shares you have owned for at least six months as of the date the withholding obligation arises.

(g)     You may pay the Option Price through a cashless exercise of the Option.  Cigna reserves the right to change the rules that apply to cashless exercises, or end your ability to do a cashless exercise, at any time.

## 6.      *Book-Entry Shares*

Cigna (or a custodian appointed by Cigna) will hold any Shares you, your beneficiary or estate acquire upon exercise of the Option in book-entry form in a Stock Account.  That is, a record of Share ownership will be kept electronically, and you will not risk losing any Share certificates.  A Share certificate will be issued to you only if you ask for one, but not if you have engaged in a Violation (described in paragraph 7(c)).

## 7.      *Conditions of Grant*

(a)     By accepting the grant, you are agreeing:

(1)     to the Inventions provision in paragraph 7(b); and

(2)     not to engage in any Violation described in paragraph 7(c)

You understand and agree that your agreement not to engage in any Violation and to the Inventions provision are a material part of the inducement for Cigna's granting you the Option and essential pre-conditions to your eligibility to exercise any rights associated with the Option and retain any benefit from exercising the Option.

(b)     *Inventions*

(1)     You hereby assign and promise to assign to Cigna companies or their designee, all your right, title, and interest in and to any and all current and future Inventions.  You acknowledge that all original works of authorship which you make (whether alone or jointly with others) within the scope of your Cigna company employment and which are protectable by copyright are "works made for hire," as defined in the United States Copyright Act.

(2)     You agree to (i) maintain and make available adequate current records, including electronic records, notes, sketches and drawings, of all Inventions you make, and (ii) disclose such Inventions in writing upon request. These records will remain the property of Cigna companies.

(3)     If in the course of your Cigna company employment, you incorporate a Prior Invention into any Cigna company work product, you grant Cigna companies a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to use the Prior Invention as part of or in connection with the work product. Within 45 days after the date of this grant, you agree to notify Cigna Shareholder Services (shareholderservices@Cigna.com) of any Prior Inventions that you are not assigning under this paragraph 7(b).

(4)     "Inventions" means any and all inventions, original works of authorship, developments, concepts, sales methods, improvements, trade secrets, or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you have or will solely or jointly conceive, develop, reduce to practice, or fix during your Cigna company employment.

(5)     "Prior Inventions" means all inventions, original works of authorship, developments,

concepts, sales methods, improvements, trade secrets or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you conceived, developed, reduced to practice or fixed before your Cigna company employment and which belong to you.

(c)     *Violation*

You will engage in a "Violation" if, directly or indirectly, you engage in any misconduct described in paragraph 7(c)(1) below or you break any of the "Promises" in paragraphs 7(c)(2) through (7) below:

(1)     **Misconduct**:

(A)     You have a Termination of Employment initiated by a Cigna company because of your misconduct, as that term is defined in Cigna's Code of Ethics, Standards of Conduct or other employment policies.

(B)     You do anything else while an employee of any Cigna company that is not discovered by the company until after your Termination of Employment and that would, if you had still been employed at the time of the discovery, be reason for your Termination of Employment for misconduct, as described above.

(2)     **Promise Not To Compete against Cigna Companies**:

(A)     If you are in **Career Band 6 or higher** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 7(c)(2)(C) below) at any time during the period that starts on the Grant Date and ends 12 months after your Termination of Employment.

You acknowledge and agree that:

(i)     Cigna's business competes on a global basis;

(ii)    Cigna's sales and marketing plans are for continued expansion throughout the United States of America and globally;

(iii)   You have had access to and received Confidential Information (described in paragraph 7(c)(5)(B) below); and

(iv)    The time restrictions and global nature of this non-competition restriction are reasonable and necessary to protect Cigna's business and Confidential Information.

(B)     If you are in **Career Band 5 or below** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 7(c)(2)(C) below) at any time during the period that starts on the Grant Date and ends 12 months after your Termination of Employment, if that work is similar to, and within the same geographic area as, the work you performed, or for which you had responsibility, at any Cigna company at any time during the six-month period that ends on your Termination of Employment date.

For example:

(i)     If you are a sales employee and your sales territory at any time during your last six months of Cigna company employment is Pennsylvania, New Jersey, and New York, this paragraph 7(c)(2)(B) would apply to you only if you work in a sales position for a Cigna Competitor and only to the extent your new sales territory is Pennsylvania, New Jersey, and/or New York;

(ii)    If you are an underwriter with nationwide responsibilities at any time during your last six months of Cigna company employment, and you seek a job with a Cigna Competitor as an underwriter, the restrictions in paragraph 7(c)(2)(B) would be nationwide in scope; or

(iii)    If you work in a particular division or segment of Cigna, you would not be permitted to work in a similar division or segment for a Cigna Competitor where the work you are expected to perform for the competitor is similar to the work you performed for any Cigna company.

You acknowledge and agree that you have had access to and received Confidential Information (described in paragraph 7(c)(5)(B) below) and the above time and geographic restrictions are reasonable and necessary to protect Cigna's business and Confidential Information.

(C)    "Cigna Competitor" means any business that competes directly or indirectly with any Cigna company's product or service.

(D)    The Promise in paragraph 7(c)(2) not to compete against Cigna companies after Termination of Employment will not apply and Cigna will not enforce it with respect to Cigna company employment in California.

(3)    **Promise Not To Solicit or Hire Cigna Company Employees**:

(A)    You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i)    Solicit any employee of any Cigna company to terminate his/her employment with, or otherwise cease his/her relationship, contractual or otherwise, with that Cigna company; or

(ii)    Hire any Cigna company employee.

(B)    This paragraph 7(c)(3) will not apply to applications for employment submitted voluntarily by any Cigna employee, in response to a general advertisement or otherwise, so long as neither you, nor anyone acting on your behalf or in response to information provided by you, otherwise Solicits the employees to leave Cigna.

(C)    To "Solicit" means to entice, encourage, persuade, or solicit, or to attempt to entice, encourage, persuade or solicit.

(4)    **Promise Not To Solicit Cigna Company Customers**:

(A)    You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i)    Solicit any Cigna company customer to end an existing relationship, contractual or otherwise, with that Cigna company;

(ii)    Solicit any Cigna company customer to reduce the volume of their business dealings with Cigna; or

7

(iii)     Solicit any potential Cigna company customer to enter into any business arrangements with you or any business which you may become employed by, or affiliated in any way with, after leaving any Cigna company, if such business arrangements would compete in any way with any business that Cigna company has conducted, or has been planning to conduct, during the 12-month period ending on the date of the Violation.

(B)     The Promise in paragraph 7(c)(4)(A) above applies only to a customer or potential customer with whom you had any Material Contact while employed by any Cigna company. "Material Contact" means you:

(i)     Had business dealings with the customer on behalf of any Cigna company within the three-year period ending on the date of the Solicitation;

(ii)     Were responsible for supervising or coordinating the dealings between any Cigna company and the customer or potential customer anytime during the three-year period ending on the date of the Solicitation; or

(iii)     Obtained, at any time, trade secrets or confidential information about a customer or potential customer with whom you had contact as a result of your employment by any Cigna company.

(C)     "Solicit" is defined in paragraph 7(c)(3)(C).

(D)     The Promise in paragraph 7(c)(4) not to solicit Cigna company customers after Termination of Employment will not apply and Cigna will not enforce it with respect to Cigna company employment in California unless the activity involves the use of Confidential Information.

(5)     **Promise Not To Disclose Cigna Companies' Confidential Information**:

(A)     You Promise not to disclose any Confidential Information to any third-party at any time, whether during or after your employment, without the prior written consent of Cigna (except to the extent required by an order of a court having competent jurisdiction or a properly issued subpoena) unless that Confidential Information was previously disclosed publicly by Cigna or has become public knowledge (other than by your disclosure). Nothing in this Confidentiality provision prohibits you or your counsel from initiating communications directly with, or responding to any inquiry from, or providing testimony before any self-regulatory organization or any state or federal regulatory authority. In the event that you are required to disclose Confidential Information pursuant to a subpoena or other law or regulation, you shall notify Cigna promptly upon learning that you have been subpoenaed or are otherwise required or compelled to divulge Confidential Information.

(B)     "Confidential Information" means any Cigna company trade secrets, confidential information, or proprietary materials, including but not limited to customer lists, financial records, marketing plans and sales plans.

(6)     **Promise to Cooperate With Cigna in Investigations or Litigation**:

(A)     You Promise that, at any time after your Termination of Employment, you will cooperate with Cigna in (i) all investigations of any kind, (ii) helping to prepare and review documents and meeting with Cigna attorneys, and (iii) providing truthful testimony as a witness or a declarant during discovery and/or trial in connection with any present or future court, administrative, agency, or arbitration proceeding involving any Cigna company and with respect to which you have relevant information.

(B)     Cigna agrees that it will reimburse you, upon production of appropriate receipts and in accordance with Cigna's then existing Business Travel Reimbursement Policy, the reasonable business expenses (including air transportation, hotel, and similar expenses) incurred by you in connection with such assistance. You must present to Cigna for reimbursement all receipts for those expenses within 45 days after you incur the expenses.

(7)     **Promise to Assist with Patent and Copyright Registrations**:

(A)     You Promise that, during your Cigna company employment and after your Termination of Employment, you will assist Cigna companies, should they request and at Cigna's expense, to secure their rights (including any copyrights, patents, trademarks or other intellectual property rights) in or relating to the Inventions in any and all countries, including by:

(i)     disclosing to Cigna Companies all pertinent information and data; and

(ii)     executing all applications, assignments or other instruments necessary to apply for and obtain these rights and assign them to Cigna companies.

(d)   (1)     If you were an Executive Officer at any time during the 24-month period before the date of the Violation, the People Resources Committee will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment (described in paragraph 8) and to impose conditions on any waiver.

(2)     Otherwise, Cigna's Senior Human Resources Officer, or his or her designee, will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment and to impose conditions on any waiver.

(3)     Determinations of the People Resources Committee, Cigna's Senior Human Resources Officer, or his or her designee, will be final and binding on all parties.

## 8. *Consequences of a Violation: Payment to Cigna*

**Important: This paragraph 8 is not Cigna's only remedy for a Violation. Cigna may seek any additional legal or equitable remedy, including an injunction described in paragraph 9, for a Violation.**

(a)     If you engage in any Violation at any time, Cigna will cancel any part of the Option you have not yet exercised.

(b)     You must immediately make the Payment described in paragraph 8(c) to Cigna in the manner described in paragraph 8(d) if:

(1)     You engage in a Violation described in paragraph 7(c)(2) (compete against Cigna), 7(c)(3) (Solicit or hire Cigna employees) or 7(c)(4) (Solicit Cigna customers), either while you are a Cigna company employee or within 12 months after your Termination of Employment; or

(2)     You engage in a Violation described in paragraph 7(c)(1) (misconduct), 7(c)(5) (disclose Confidential Information), 7(c)(6) (fail to cooperate), or 7(c)(7) (fail to assist) **at any time**.

(c)     The Payment requirement applies only to the part of the Option, if any, that you exercise within the 24-month period ending on the date of the Violation. "Payment" means the amount equal to:

(1)     the number of Shares you acquire when you exercise the Option;

multiplied by

(2)     the excess of (A) the Fair Market Value on the date you exercise the Option over (B) the Option Price;

plus

(3)     the total amount of all dividends, if any, paid on those Shares through the date of the Payment.

(d)     Cigna will recover the Payment from you by any means permitted by applicable law, at the sole discretion of Cigna management, including but not limited to any or all of the following methods:

(1)     If you have any Shares in a Stock Account or in any other account in book-entry form when a Violation occurs, Cigna will take back from you the whole number of Shares that has a total Fair Market Value as of the date of the Violation up to, but not more than, the Payment amount.

(2)     Cigna will, to the extent permitted by applicable law, reduce:

(A)     The amount of any payments that any Cigna company owes you for any reason (including without limit any payments owed to you under any nonqualified retirement, deferred compensation or other plan or arrangement) by

(B)     The Payment amount.

This reduction will not occur until the date a future payment to you is due.

(3)     Cigna will send you a written notice and demand for all or part of any Payment amount. Within 30 days after you receive that notice and demand, you must make the Payment to Cigna.

## 9.      *Consequences of a Violation: Injunction*

You agree that:

(a)     Cigna will be entitled to ask a court of competent jurisdiction to issue an order (an injunction) that requires you to take action and/or that prohibits you from taking action, as needed to ensure that you keep all of the Promises described in paragraph 7(c)(2) through (7), and Cigna will not be required to post a bond in order to seek or obtain the injunction;

(b)     Any breach or threatened breach of any of the Promises would cause irreparable injury to Cigna, and monetary damages alone would not provide an adequate remedy; and

(c)     The remedies described in paragraph 9(a) are in addition to any other rights and remedies Cigna may have at law or in equity.

## 10.     *Consequences of a Violation: Designation of Cigna as Agent and Attorney-in-Fact for Inventions*

You agree that:

(a)     If Cigna Companies are unable to obtain your signature on any instruments needed to secure their rights in or relating to the Inventions pursuant to paragraph 7(c)(7)(A); then

(b)     You hereby appoint Cigna companies and their duly authorized officers as your agents and attorneys in fact to act for and on your behalf to execute and file any documents and take other actions as may be necessary for Cigna companies to secure those rights.

## 11.     *Agreeing to Assume Risks*

Cigna, its stock plan administrator and its transfer agent will try to process your stock transaction requests in a timely manner; however, Cigna makes no promises or guarantees to you relating to the market price

of the Shares or to the time it may take to act on your request to exercise the Option, sell the Shares or deliver stock certificates.  By accepting this Option grant:

(a)     You acknowledge that the action you request may not be completed until several days (or in the case of delivery of stock certificates, several weeks) after you submit it.

(b)     You agree to assume the risks, including the risk that the market price of the Shares may change, related to delays described in paragraph 11(a):

     (1)     Between the time you submit an Option exercise form and the time your Option is actually exercised;

     (2)     Between the time you ask for any Shares to be sold and the time your Shares are actually sold; and

     (3)     Between the time you ask for stock certificates to be delivered to you or your broker and the time the certificates are delivered.

## 12.    *Applicable Law*

You understand and agree that:

(a)     The terms and conditions of this Option grant (including any Violation and the consequences of any Violation) and all determinations made under the Option Grant Agreement, the Plan, and these Terms and Conditions will be interpreted under the laws of the State of Delaware, without regard to its conflict of laws rule;

(b)     Any dispute about any of the Promises (described in paragraph 7(c)), if not resolved by agreement between you and Cigna, will be resolved exclusively in a federal or state court in the State of Delaware where venue is appropriate and that has subject matter jurisdiction over the dispute (collectively, "Delaware Courts");

(c)     Delaware is a convenient forum for resolving any dispute about the Promises; and

(d)     You and Cigna consent to the exercise of personal jurisdiction over the parties by a Delaware Court in any dispute related to the Promises.

**13.**   *Arbitration*

You agree and understand that:

(a)   Except as provided in paragraph 12, any dispute over any of the terms and conditions that apply to this Option grant will be resolved exclusively under the Cigna Employment Dispute Arbitration Policy and its Rules and Procedures as may be in effect when the dispute arises;

(b)   You are waiving your right to have those disputes decided by a judge or jury in a court of law, and instead you are agreeing to submit those disputes exclusively to mandatory and binding final arbitration;

(c)   While you or Cigna may seek emergency, temporary or permanent injunctive relief from a court in accordance with applicable law, after the court has issued a decision about that relief, you and Cigna will submit the dispute to final and binding arbitration under the Cigna Employment Dispute Arbitration Policy; and

(d)   This arbitration provision will not apply to any dispute related to the Promises.

**14.**   *Miscellaneous*

(a)   If a court of competent jurisdiction determines that any provision of these Terms and Conditions is unenforceable as written, that provision will be enforceable to the maximum extent permitted by law and will be reformed by the court to make the provision enforceable in accordance with Cigna's intent and applicable law.

(b)   Cigna's failure to enforce any provision of this Option grant will not be interpreted as a waiver of its right to enforce that provision in the future.

**15.**   *Acceptance*

**If you disagree with any of these Terms and Conditions, including those in paragraphs 7, 8 9, and 10, YOU MUST NOT ACCEPT THE OPTION GRANT.**  If you sign the Option grant, or acknowledge your acceptance electronically or otherwise, you will be:

(a)   Agreeing to all the terms and conditions of the Option grant including the Inventions provision in paragraph 7(b) and the Promises in paragraph 7(c);

(b)   Warranting and representing to Cigna that you are, and will remain, in full compliance with those terms and conditions;

(c)   Authorizing Cigna to recover the Payment described in paragraph 8 and seek an injunction described in paragraph 9, if you engage in a Violation; and

(d)   Appointing Cigna as your agent and attorney-in-fact to secure rights with respect to Inventions if unable to obtain your signature as described in paragraph 10.

2017 Option Grant Agreement including Terms and Conditions

`H8X6RS6U`

`03/21/2017 11:37 AM U.S. Eastern Standard Time`

`ACCEPTED`

# EXHIBIT K

Cigna Corporation

Cigna Long-Term Incentive Plan:  Strategic Performance Share Grant Agreement

Cigna Corporation ("Cigna") has granted you the number of strategic performance shares set forth below in this Strategic Performance Share Grant Agreement ("Strategic Performance Share Grant" or "Grant") under the Cigna Long-Term Incentive Plan ("Plan").  The date of your Strategic Performance Share Grant ("Grant Date") is also indicated below. The award is subject to the provisions of the Plan and the Terms and Conditions below.

You should carefully read all the terms and conditions of this Strategic Performance Share Grant and be sure you understand what they say and what your responsibilities and obligations are before you click on the ACCEPT button to acknowledge and agree to this Grant.

If you are not willing to agree to all of the Grant terms and conditions, do not accept the Grant and do not click the ACCEPT button for the Strategic Performance Share Grant Acknowledgment and Agreement.  If you do not accept the Grant, you will not receive the benefits of the Grant.

If you do click on the ACCEPT button, you are accepting and agreeing to all of the terms and conditions of this Strategic Performance Share Grant.

Participant: **KAREN   KOCHER**
Grant Type:  **RSU**
Plan Name:  Cigna Long-Term Incentive Plan

Grant Date:  **02/28/2017**
Total Granted:  **160**
Grant Price:  **$0.000000** (USD)

Vesting Schedule

| Shares Granted | Approximate Vest Date |
| --- | --- |
| 100% of Shares Granted | 03/02/2020 |

**Please Note:** The date shown in the Vesting Schedule chart above is not your actual vesting date. It is an approximation of the expected vesting date and is provided due to systems requirements. In accordance with the Terms and Conditions of your Strategic Performance Share Grant, the actual vesting date will be determined by the People Resources Committee of the Board of Directors.

You should also read the Plan Document and Key Contacts and Reference Materials document (attached to the Plan) and indicate that you have done so and agree to the terms by checking the appropriate box in the online grant acceptance process.  The Key Contacts and Reference Materials document contains information on how to get important award information (such as the Plan Prospectus, Tax Considerations and Cigna's Securities Transactions and Insider Trading Policy) and whom to contact if you have questions.

Please be aware that the Cigna Securities Transactions and Insider Trading Policy places restrictions on your transactions in Cigna securities and requires certain Cigna employees to obtain advance permission from the Corporate Secretary before executing transactions in Cigna securities.

If you have questions about your award, please contact Cigna Shareholder Services by email at shareholderservices@cigna.com or by phone at 215.761.3516.

Important Notice:  Strategic Performance Share Grant Acknowledgment and Agreement

By clicking on the ACCEPT button, I:
1.  Acknowledge and represent to Cigna that I have:
    a.  received the Strategic Performance Grant;
    b.  read and understand its terms and conditions, which include, among other things, restrictive covenants such as non-competition, customer and employee non-solicitation and non-disclosure provisions and litigation cooperation and intellectual property assignment and assistance provisions; and
    c.  received answers to any questions I had about the Grant and its terms and conditions, including the restrictive covenants.

2.  Understand and agree that:
    a.  Delaware law governs the interpretation and construction of the Grant; and
    b.  any controversy or proceeding arising out of or relating to the restrictive covenants in the Grant will be brought exclusively before a federal or state court in the State of Delaware where venue is appropriate and that has subject matter jurisdiction (collectively, "Delaware Courts").

3.  Consent to Delaware Courts exercising personal jurisdiction over me in any dispute about the restrictive covenants.

Scroll down for the TERMS AND CONDITIONS of the Strategic Performance Share Grant.

**TERMS AND CONDITIONS OF YOUR 2017 GRANT**
**OF STRATEGIC PERFORMANCE SHARES**

These Terms and Conditions are an important part of your grant of Strategic Performance Shares from Cigna Corporation (Cigna). The terms of your Strategic Performance Share grant are in: (a) the electronic Strategic Performance Share Grant Agreement above, (b) these Terms and Conditions (including Schedule I), and (c) the Cigna Long-Term Incentive Plan (Plan).

Certain words in this document with first letters capitalized are defined in the Strategic Performance Share Grant Agreement above, these Terms and Conditions or Article 2 of the Plan. This grant is void if you are not an employee of Cigna or a Subsidiary (a Cigna company) on the Grant Date.

**1.** *Strategic Performance Shares; Performance Period*

Each Strategic Performance Share (Performance Share) represents a conditional right to receive one share of Cigna Common Stock (Share), subject to the performance, vesting and payment provisions described below. The Performance Period applicable to your award is January 1, 2017 to December 31, 2019 (the Performance Period).

**2.** *Restrictions*

Performance Shares are subject to certain Restrictions from the Grant Date until the Payment Date described in paragraph 4. The Restrictions are:

(a)     You cannot sell or transfer the Performance Shares to anyone;

(b)     Unless an exception applies (described in paragraph 4), you will forfeit (lose your right to) your unvested Performance Shares and all related rights immediately upon your Termination of Employment; and

(c)     Of the Performance Shares awarded to you (Shares Awarded), the number of Performance Shares, if any, that you earn and for which you may receive payment (Shares Earned) is subject to the performance criteria described in Schedule I.

Article 10 of the Plan describes these Restrictions in more detail. In addition to these Restrictions, you must also comply with all the terms and conditions of this grant, including those contained in this document.

**3.** *Performance Shares Earned*

(a)     Schedule I specifies the performance criteria applicable to your Shares Awarded. Except as provided in paragraph 4, after the end of the Performance Period, the Committee shall determine whether and to what extent these performance criteria have been achieved for purposes of determining the Vesting Percentage applicable to your Performance Shares (Shares Earned Percentage).

(b)     Any Shares Awarded that are not Shares Earned after giving effect to the Committee's determinations under this paragraph 3 shall terminate and become null and void immediately following such determinations.

**4.** *Eligibility for Payment*

(a)     Except as described in paragraph 4(b) and subject to paragraph 4(c) and paragraph 3, the Restrictions on the Performance Shares will end (your Performance Shares will vest) on the Payment Date described in paragraph 5, but only if you remain continuously employed

by a Cigna company until the Payment Date and comply with all the terms and conditions of this grant, including those contained in this document.

(b) Notwithstanding paragraph 4(a) and subject to paragraph 4(c) and paragraph 3, if your Termination of Employment is before the Payment Date:

(1) Your Performance Shares will vest upon your Termination of Employment if it is Upon a Change of Control (of Cigna Corporation). If your Performance Shares vest under this paragraph 4(b)(1), the Shares Earned Percentage shall be the greatest of:

(a) 100%;

(b) The Shares Earned Percentage for the Performance period that ended immediately before your Termination upon a Change of Control; or

(c) The average of the Shares Earned Percentages established by the Committee for the last two Performance Periods that ended before your Termination upon a Change of Control.

(2) Your Performance Shares will vest upon your Termination of Employment if it is due to your death. If your Performance Shares vest under this paragraph 4(b)(2), the Shares Earned Percentage shall be 100%.

(3) Your Performance Shares will vest upon your Termination of Employment if it is due to your Disability.

(4) Your Performance Shares *may* vest upon your Termination of Employment if it is due to your Early Retirement or Retirement and *if* the Committee or its designee (including Cigna's senior human resources officer) approves the early vesting before your Termination of Employment. If you want to be considered for early vesting when you retire, you must ask your manager or human resources representative far enough in advance of your retirement so there is time to process your request.

(c) You must comply in all respects with the terms and conditions of this grant, including those contained in these Terms and Conditions.

**5.** *Payment*

(a) Except as provided in paragraph 5(b), below, your vested Shares Earned under this grant will be paid in the year following the close of the Performance Period on the date within such year specified by the Committee (Payment Date).

(b) Any Performance Shares that vest on account of your death will be paid during the 90 day period immediately following your death to your estate.

(c) For each Share Earned that vests, Cigna will make payment by issuing one Share as of the Payment Date. Until the Shares are issued to you, you will not be a Cigna shareholder, not have the right to vote the Shares, and not receive actual dividends.

**6.** *Taxes*

Section 16.7 of the Plan shall apply to any tax withholding that may be required by law for Performance Shares or Shares. Upon the vesting or payment of any Performance Share, Cigna reserves the right to withhold enough newly-issued Shares to cover all or part of any applicable tax withholding.

7. ***Book-Entry Shares; Sale of Shares***

(a) Upon payment of the Shares as described in paragraph 5, Cigna (or a custodian appointed by Cigna) will hold your Shares in book-entry form in a Stock Account. That is, a record of your Share ownership will be kept electronically, and you will not risk losing any Share certificates. A certificate for vested Shares will be issued to you only if you ask for one, but not if you have engaged in a Violation (described in paragraph 8(c)).

(b) You may generally sell or transfer the Shares at any time, but your right to sell the Shares may be limited by Cigna. This right is subject to the terms of Cigna's Securities Transactions and Insider Trading Policy, and Cigna reserves the right, for any reason at any time, to suspend or delay action on any request you make to sell the Shares.

8. ***Conditions of Grant***

(a) By accepting the grant, you are agreeing:

   (1)    to the Inventions provision in paragraph 8(b); and

   (2)    not to engage in any Violation described in paragraph 8(c).

   You understand and agree that your agreement to the Inventions provision and not to engage in any Violation are a material part of the inducement for Cigna's granting you the Performance Shares and essential pre-conditions to your eligibility to exercise any rights associated with the grant and retain any benefit from the vesting of the Performance Shares and issuance of the Shares.

(b) ***Inventions***

   (1)    You hereby assign and promise to assign to Cigna companies or their designee, all your right, title, and interest in and to any and all current and future Inventions. You acknowledge that all original works of authorship which you make (whether alone or jointly with others) within the scope of your Cigna company employment and which are protectable by copyright are "works made for hire," as defined in the United States Copyright Act.

   (2)    You agree to (i) maintain and make available adequate current records, including electronic records, notes, sketches and drawings, of all Inventions you make, and (ii) disclose such Inventions in writing upon request. These records will remain the property of Cigna companies.

   (3)    If in the course of your Cigna company employment, you incorporate a Prior Invention into any Cigna company work product, you grant Cigna companies a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to use the Prior Invention as part of or in connection with the work product. Within 45 days after the date of this grant, you agree to notify Cigna Shareholder Services (shareholderservices@Cigna.com) of any Prior Inventions that you are not assigning under this paragraph 8(b).

   (4)    "Inventions" means any and all inventions, original works of authorship, developments, concepts, sales methods, improvements, trade secrets, or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you have or will solely or jointly conceive, develop, reduce to practice, or fix during your Cigna company employment.

   (5)    "Prior Inventions" means all inventions, original works of authorship,

developments, concepts, sales methods, improvements, trade secrets or similar intellectual property, whether or not patentable or registrable under copyright or similar laws, that relate to any Cigna company's current or proposed business, work products or research and development which you conceived, developed, reduced to practice or fixed before your Cigna company employment and which belong to you.

(c) *Violation*

You will engage in a "Violation" if, directly or indirectly, you engage in any misconduct described in paragraph 8(c)(1) below or you break any of the "Promises" in paragraphs 8(c)(2) through (7) below:

(1) **Misconduct**:

(A) You have a Termination of Employment initiated by a Cigna company because of your misconduct, as that term is defined in Cigna's Code of Ethics, Standards of Conduct or other employment policies.

(B) You do anything else while an employee of any Cigna company that is not discovered by the company until after your Termination of Employment and that would, if you had still been employed at the time of the discovery, be reason for your Termination of Employment for misconduct, as described above.

(2) **Promise Not To Compete against Cigna Companies**:

(A) If you are in **Career Band 6 or higher** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 8(c)(2)(C) below) at any time during the period that starts on the Grant Date and ends 12 months after your Termination of Employment.

You acknowledge and agree that:

(i) Cigna's business competes on a global basis;

(ii) Cigna's sales and marketing plans are for continued expansion throughout the United States of America and globally;

(iii) You have had access to and received Confidential Information (described in paragraph 8(c)(5)(B) below); and

(iv) The time restrictions and global nature of this non-competition restriction are reasonable and necessary to protect Cigna's business and Confidential Information.

(B) If you are in **Career Band 5 or below** on your Termination of Employment date:

You Promise not to become employed by, work as a consultant or independent contractor for, or in any way render services or assistance to any Cigna Competitor (defined in paragraph 8(c)(2)(C) below) at any time during the period that starts on the Grant Date and ends 12 months after your Termination of Employment, if that work is similar to, and within the same geographic area as, the work you performed, or for which you had

6

responsibility, at any Cigna company at any time during the six-month period that ends on your Termination of Employment date.

For example:

(i) If you are a sales employee and your sales territory at any time during your last six months of Cigna company employment is Pennsylvania, New Jersey, and New York, this paragraph 8(c)(2)(B) would apply to you only if you work in a sales position for a Cigna Competitor and only to the extent your new sales territory is Pennsylvania, New Jersey, and/or New York;

(ii) If you are an underwriter with nationwide responsibilities at any time during your last six months of Cigna company employment, and you seek a job with a Cigna Competitor as an underwriter, the restrictions in paragraph 8(c)(2)(B) would be nationwide in scope; or

(iii) If you work in a particular division or segment of Cigna, you would not be permitted to work in a similar division or segment for a Cigna Competitor where the work you are expected to perform for the competitor is similar to the work you performed for any Cigna company.

You acknowledge and agree that you have had access to and received Confidential Information (described in paragraph 8(c)(5)(B) below) and the above time and geographic restrictions are reasonable and necessary to protect Cigna's business and Confidential Information.

(C) "Cigna Competitor" means any business that competes directly or indirectly with any Cigna company's product or service.

(D) The Promise in paragraph 8(c)(2) not to compete against Cigna companies after Termination of Employment will not apply and Cigna will not enforce it with respect to Cigna company employment in California.

(3) **Promise Not To Solicit or Hire Cigna Company Employees**:

(A) You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

(i) Solicit any employee of any Cigna company to terminate his/her employment with, or otherwise cease his/her relationship, contractual or otherwise, with that Cigna company; or

(ii) Hire any Cigna company employee.

(B) This paragraph 8(c)(3) will not apply to applications for employment submitted voluntarily by any Cigna employee, in response to a general advertisement or otherwise, so long as neither you, nor anyone acting on your behalf or in response to information provided by you, otherwise Solicits the employees to leave Cigna.

(C) To "Solicit" means to entice, encourage, persuade, or solicit, or to attempt to entice, encourage, persuade or solicit.

(4) **Promise Not To Solicit Cigna Company Customers**:

    (A)    You Promise that, at any time during your Cigna company employment and the period that ends 12 months after your Termination of Employment, you will not:

        (i)    Solicit any Cigna company customer to end an existing relationship, contractual or otherwise, with that Cigna company;

        (ii)    Solicit any Cigna company customer to reduce the volume of their business dealings with Cigna; or

        (iii)    Solicit any potential Cigna company customer to enter into any business arrangements with you or any business which you may become employed by, or affiliated in any way with, after leaving any Cigna company, if such business arrangements would compete in any way with any business that Cigna company has conducted, or has been planning to conduct, during the 12-month period ending on the date of the Violation.

    (B)    The Promise in paragraph 8(c)(4)(A) above applies only to a customer or potential customer with whom you had any Material Contact while employed by any Cigna company. "Material Contact" means you:

        (i)    Had business dealings with the customer on behalf of any Cigna company within the three-year period ending on the date of the Solicitation;

        (ii)    Were responsible for supervising or coordinating the dealings between any Cigna company and the customer or potential customer any time during the three-year period ending on the date of the Solicitation; or

        (iii)    Obtained, at any time, trade secrets or confidential information about a customer or potential customer with whom you had contact as a result of your employment by any Cigna company.

    (C)    "Solicit" is defined in paragraph 8(c)(3)(C).

    (D)    The Promise in paragraph 8(c)(4) not to solicit Cigna company customers after Termination of Employment will not apply and Cigna will not enforce it with respect to Cigna company employment in California unless the activity involves the use of Confidential Information.

(5) **Promise Not To Disclose Cigna Companies' Confidential Information**:

    (A)    You Promise not to disclose any Confidential Information to any third-party at any time, whether during or after your employment, without the prior written consent of Cigna (except to the extent required by an order of a court having competent jurisdiction or a properly issued subpoena) unless that Confidential Information was previously disclosed publicly by Cigna or has become public knowledge (other than by your disclosure). Nothing in this Confidentiality provision prohibits you or your counsel from initiating communications directly with, or responding to any inquiry from, or providing testimony before any self-regulatory organization or any state or federal regulatory authority. In the event that you are required to disclose Confidential Information pursuant to a subpoena or other law

or regulation, you shall notify Cigna promptly upon learning that you have been subpoenaed or are otherwise required or compelled to divulge Confidential Information.

(B)     "Confidential Information" means any Cigna company trade secrets, confidential information, or proprietary materials, including but not limited to customer lists, financial records, marketing plans and sales plans.

(6)     **Promise to Cooperate With Cigna in Investigations or Litigation**:

(A)     You Promise that, at any time after your Termination of Employment, you will cooperate with Cigna in (i) all investigations of any kind, (ii) helping to prepare and review documents and meeting with Cigna attorneys, and (iii) providing truthful testimony as a witness or a declarant during discovery and/or trial in connection with any present or future court, administrative, agency, or arbitration proceeding involving any Cigna company and with respect to which you have relevant information.

(B)     Cigna agrees that it will reimburse you, upon production of appropriate receipts and in accordance with Cigna's then existing Business Travel Reimbursement Policy, the reasonable business expenses (including air transportation, hotel, and similar expenses) incurred by you in connection with such assistance. You must present to Cigna for reimbursement all receipts for those expenses within 45 days after you incur the expenses.

(7)     **Promise to Assist with Patent and Copyright Registrations**:

(A)     You Promise that, during your Cigna company employment and after your Termination of Employment, you will assist Cigna companies, should they request and at Cigna's expense, to secure their rights (including any copyrights, patents, trademarks or other intellectual property rights) in or relating to the Inventions in any and all countries, including by:

(i)     disclosing to Cigna Companies all pertinent information and data; and

(ii)     executing all applications, assignments or other instruments necessary to apply for and obtain these rights and assign them to Cigna companies.

(d)     (1)     If you were an Executive Officer at any time during the 24-month period before the date of the Violation, the People Resources Committee will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment (described in paragraph 9) and to impose conditions on any waiver.

(2)     Otherwise, Cigna's Senior Human Resources Officer, or his or her designee, will determine whether you engaged in a Violation and will have the sole discretion to waive your obligation to make all or any part of the Payment and to impose conditions on any waiver.

(3)     Determinations of the People Resources Committee, Cigna's Senior Human Resources Officer, or his or her designee, will be final and binding on all parties.

**9.     *Consequences of a Violation: Payment to Cigna***

**Important: This paragraph 9 is not Cigna's only remedy for a Violation.  Cigna may seek any additional legal or equitable remedy, including an injunction described in paragraph 10, for a Violation.**

(a)     If you engage in any Violation at any time:

>   (1)     You will immediately forfeit all unvested Performance Shares; and

>   (2)     No payment will be made for any Performance Shares that have vested under paragraph 4(b) if the Violation occurs before the Payment Date.

(b)     You must immediately make the Payment described in paragraph 9(c) to Cigna in the manner described in paragraph 9(d) if:

>   (1)     You engage in a Violation described in paragraph 8(c)(2) (compete against Cigna), 8(c)(3) (Solicit or hire Cigna employees) or 8(c)(4) (Solicit Cigna customers), either while you are a Cigna company employee or within 12 months after your Termination of Employment; or

>   (2)     You engage in a Violation described in paragraph 8(c)(1) (misconduct), 8(c)(5) (disclose Confidential Information), 8(c)(6) (fail to cooperate) or 8(c)(7) (fail to assist) **at any time**.

(c)     "Payment" is the value you realize from any Performance Shares that are paid under paragraph 5 during the 12-month period ending on the date of the Violation.  The Payment will equal:

>   (1)     The number of Performance Shares that are paid during that 12-month period;

>>        multiplied by

>   (2)     The Fair Market Value of the Shares issued on the Payment Date for those Performance Shares;

>>        plus

>   (3)     The total amount of all actual dividends, if any, paid to you on those Shares through the date of the Payment described in paragraph 9(d).

(d)     Cigna will recover the Payment from you by any means permitted by applicable law, at the sole discretion of Cigna management, including but not limited to any or all of the following methods:

>   (1)     If you have any Shares in a Stock Account or in any other account in book-entry form when a Violation occurs, Cigna will take back from you the whole number of Shares that has a total Fair Market Value as of the date of the Violation up to, but not more than, the Payment amount.

>   (2)     Cigna will, to the extent permitted by applicable law, reduce:

>>      (A)     The amount of any payments that any Cigna company owes you for any reason (including without limit any payments owed to you under any nonqualified retirement, deferred compensation or other plan or arrangement) by

>>      (B)     The Payment amount.

>   This reduction will not occur until the date a future payment to you is due.

(3)     Cigna will send you a written notice and demand for all or part of any Payment amount.  Within 30 days after you receive that notice and demand, you must make the Payment to Cigna.

## 10.    *Consequences of a Violation: Injunction*

You agree that:

(a)    Cigna will be entitled to ask a court of competent jurisdiction to issue an order (an injunction) that requires you to take action and/or that prohibits you from taking action, as needed to ensure that you keep all of the Promises described in paragraph 8(c)(2) through (7), and Cigna will not be required to post a bond in order to seek or obtain the injunction;

(b)    Any breach or threatened breach of any of the Promises would cause irreparable injury to Cigna, and monetary damages alone would not provide an adequate remedy; and

(c)    The remedies described in paragraph 10(a) are in addition to any other rights and remedies Cigna may have at law or in equity.

## 11.    *Consequences of a Violation: Designation of Cigna as Agent and Attorney-in-Fact for Inventions*

You agree that:

(a)    If Cigna Companies are unable to obtain your signature on any instruments needed to secure their rights in or relating to the Inventions pursuant to paragraph 8(c)(7)(A); then

(b)    You hereby appoint Cigna companies and their duly authorized officers as your agents and attorneys in fact to act for and on your behalf to execute and file any documents and take other actions as may be necessary for Cigna companies to secure those rights.

## 12.    *Agreeing to Assume Risks*

Cigna, its stock plan administrator and its transfer agent will try to process your stock transaction requests in a timely manner; however, Cigna makes no promises or guarantees to you relating to the market price of the Shares or to the time it may take to act on your request to sell the Shares or deliver stock certificates.  By accepting this Strategic Performance Share grant:

(a)    You acknowledge that the action you request may not be completed until several days (or in the case of delivery of stock certificates, several weeks) after you submit it.

(b)    You agree to assume the risks, including the risk that the market price of the Shares may change, related to delays described in paragraph 12(a):

(1)    Between the time you ask for any Shares to be sold and the time your Shares are actually sold; and

(2)    Between the time you ask for stock certificates to be delivered to you or your broker and the time the certificates are delivered.

**13.** *Applicable Law*

You understand and agree that:

(a)    The terms and conditions of this Strategic Performance Share grant (including any Violation and the consequences of any Violation) and all determinations made under the Strategic Performance Share Grant Agreement, the Plan, and these Terms and Conditions will be interpreted under the laws of the State of Delaware, without regard to its conflict of laws rule;

(b)    Any dispute about any of the Promises (described in paragraph 8(c)), if not resolved by agreement between you and Cigna, will be resolved exclusively in a federal or state court in the State of Delaware where venue is appropriate and that has subject matter jurisdiction over the dispute (collectively, "Delaware Courts");

(c)    Delaware is a convenient forum for resolving any dispute about the Promises; and

(d)    You and Cigna consent to the exercise of personal jurisdiction over the parties by a Delaware Court in any dispute related to the Promises.

**14.** *Arbitration*

You agree and understand that:

(a)    Except as provided in paragraph 13, any dispute over any of the terms and conditions that apply to this Strategic Performance Share grant will be resolved exclusively under the Cigna Employment Dispute Arbitration Policy and its Rules and Procedures as may be in effect when the dispute arises;

(b)    You are waiving your right to have those disputes decided by a judge or jury in a court of law, and instead you are agreeing to submit those disputes exclusively to mandatory and binding final arbitration;

(c)    While you or Cigna may seek emergency, temporary or permanent injunctive relief from a court in accordance with applicable law, after the court has issued a decision about that relief, you and Cigna will submit the dispute to final and binding arbitration under the Cigna Employment Dispute Arbitration Policy; and

(d)    This arbitration provision will not apply to any dispute related to the Promises.

**15.** *Miscellaneous*

(a)    If a court of competent jurisdiction determines that any provision of these Terms and Conditions is unenforceable as written, that provision will be enforceable to the maximum extent permitted by law and will be reformed by the court to make the provision enforceable in accordance with Cigna's intent and applicable law.

(b)    Cigna's failure to enforce any provision of this Strategic Performance Share grant will not be interpreted as a waiver of its right to enforce that provision in the future.

**16.** *Acceptance*

**If you disagree with any of these Terms and Conditions, including those in paragraphs 8, 9, 10 and 11 YOU MUST NOT ACCEPT THE STRATEGIC PERFORMANCE SHARE GRANT.** If you sign the Strategic Performance Share grant, or acknowledge your acceptance electronically or otherwise, you will be:

(a)    Agreeing to all the terms and conditions of the Strategic Performance Share grant including the Inventions provision in paragraph 8(b) and the Promises in paragraph 8(c);

(b)      Warranting and representing to Cigna that you are, and will remain, in full compliance with those terms and conditions;

(c)      Authorizing Cigna to recover the Payment described in paragraph 9 and seek an injunction described in paragraph 10, if you engage in a Violation; and

(d)      Appointing Cigna as your agent and attorney-in-fact to secure rights with respect to Inventions if unable to obtain your signature as described in paragraph 11.

2017 US SPS Grant Agreement including Terms and Conditions

Shares Awarded; Shares Earned

"Shares Awarded" is the number of Performance Shares granted to an eligible employee for the Performance Period. Shares Awarded are allocated at time of grant to the two weighted performance measures (the "Performance Measure Components") as follows: 50% to Total Shareholder Return and 50% to Adjusted Income from Operations Growth.

"Shares Earned" is determined after the end of the three-year Performance Period. Shares Earned will range from 0% to 200% of the Shares Awarded, and the actual number of Shares Earned will depend on the degree to which Cigna achieves the goals set at time of grant for each Performance Measure Component, as described below under Compensation Determination, and the PRC's exercise of downward discretion, if applied.

Performance Measurement

The two Performance Measure Components for the 2017-2019 Performance Period are:

- Cigna's Total Shareholder Return (TSR) relative to a peer group of industry competitors, and
- Adjusted Income from Operations Growth for the ongoing businesses.

The formulas described below under Compensation Determination will be used to determine the Shares Earned Percentage (called the Vesting Percentage in the Cigna Long-Term Incentive Plan). The determination is made separately for each set of Shares Awarded that is allocated to a Performance Measure Component. The formula for each Performance Measure Component includes a minimum performance threshold, below which the Shares Earned Percentage for that Performance Measure Component will be zero. In addition, the PRC has complete discretion to apply its judgment to the results generated by the formula for the TSR Performance Measure Component and make adjustments downward, as far down as 0%, in the Shares Earned Percentage. For the Adjusted Income from Operations component, the PRC will consider the CEO's recommendation and determine the Shares Earned percentage within the range of the applicable performance tier.

The PRC also has the right to adjust or change completely, in its sole discretion, the Performance Measures and/or the formulas for calculating the Shares Earned percentages if Cigna or one of the designated Peer Group companies is involved in any material merger, acquisition or divestiture during the Performance Period.

For the Total Shareholder Return Component, the designated industry competitors (the Peer Group) for the 2017-2019 Performance Period are: Aetna, AFLAC, Anthem, Centene, Hartford Financial Services, Humana, Manulife Financial, MetLife, UnitedHealth, and Unum. These companies were determined to be Cigna's publicly-traded peers based upon business mix and other factors.

Compensation Determination

The compensation to be paid for each SPS award (that is, the Shares Earned) is determined in a three-step process.

### Step 1 – Calculate Total Shareholder Return Component

In determining the Shares Earned Percentage for the Total Shareholder Return Component, Cigna's three-year TSR for the 2017 -2019 Performance Period will be compared against the three-year TSRs for each member of the Peer Group (to the extent each member has a TSR for the full three-year period). The three-year TSR is the compound annual growth rate in share price over three years, with dividends treated as reinvested.

Cigna's TSR will be compared against those of Peer Group members to obtain a percentile ranking for Cigna's relative TSR. In determining the Shares Earned Percentage for the TSR Component, the matrix below will be used. Any Peer Group company that is no longer a stand-alone company at the end of the Performance Period will not be included in the results. If the Peer Group consolidates or otherwise decreases to fewer than 10, then Cigna's TSR will be ranked against those of the remaining companies to determine the Shares Earned Percentage under the matrix.

As indicated in the matrix, the relative TSR Target is the 50th percentile, and the Threshold relative TSR (below which no value will be allocated to the TSR component) is the 25th percentile.

| TSR Performance (percentile) | Shares Earned (% of Shares Awarded)* |
|---|---|
| Maximum ($\geq 85^{th}$) | 200% |
| Above Target (75th) | 175% |
| Target (50th) | 100% |
| Below Target (25th) | 25% |
| Threshold (e.g. $\leq 25^{th}$) | 0 |

* The Shares Earned percentage between defined relative TSR performance points is interpolated; however, there are no Shares Earned for performance below the 25th percentile. For example, if Cigna's TSR is at the 66th percentile, under the formula, 148% of shares would be earned.

### Step 2 – Calculate Adjusted Income from Operations Growth Component

In determining the Shares Earned Percentage for the Adjusted Net Income from Operations Growth Component, the following matrix will be used. Management will make a recommendation to the PRC regarding the Shares Earned within the range. It is important to note that the maximum Shares Earned for each performance level is the top end of the range, but the PRC has downward discretion in each level to adjust the component value down to the lowest percentage of the range.

| Adjusted Income from Operations Growth [*] (Based on 2016 Actual) | Shares Earned (% of Shares Awarded) |
|---|---|
| Cumulative adjusted income from operations over the three-year period calculated assuming a compound annual growth rate of 14% to 17% | 160% - 200% |

15

| | |
|---|---|
| Cumulative adjusted income from operations over the three-year period calculated assuming a compound annual growth rate of 11% to 14% | 120%- 160% |
| Cumulative adjusted income from operations over the three-year period calculated assuming a compound annual growth rate of 7% to 11% | 80% - 120% |
| Cumulative adjusted income from operations over the three-year period calculated assuming a compound annual growth rate of 5% to 7% | 35% - 80% |

[*] The assumed compound annual growth rates are used to define dollar targets for each performance range. Achievement of the performance goal is measured in actual dollars, not percentage growth.

Step 3 - Determine the Total Shares Earned

The number of Shares Awarded to an award recipient for the Performance Period that was allocated to each Performance Measure Component is multiplied by the approved Shares Earned Percentage for that Component as follows:

| | | | Steps 1 and 2 | | Step 3 |
|---|---|---|---|---|---|
| Total Shares Awarded | x | 50% of Shares Awarded allocated to TSR Component | x | Shares Earned Percentage from Step 1 | = Number of Shares Earned for TSR Component |
| | x | 50% of Shares Awarded allocated to Adjusted Net Income from Operations Growth Component | x | Shares Earned Percentage from Step 2 | = Number of Shares Earned for Adjusted Net Income from Operations Growth Component |
| | | | | | Sum of this Column = Total Number of Shares Earned |

The number of Shares Earned for each Performance Measure Component are added together to determine total number of Shares Earned by the award recipient for the Performance Period. There will not be any fractional Shares Earned; the number of Shares Earned will be rounded following normal rounding rules. The total number of Shares Earned cannot exceed 200% of the Shares Awarded.

**H8X6S5J4**

**03/21/2017 11:39 AM U.S. Eastern Standard Time**

**ACCEPTED**